**LAW OFFICES OF BRYAN W. PEASE**
Bryan W. Pease (SBN 239139)
302 Washington St. #404
San Diego, CA 92103
Ph. (619) 723-0369
Email: bryan@bryanpease.com

**LAW OFFICES OF JOHN T. MAHER**
John T. Maher (NYS Bar No. 2357408)
105 E 122nd St.
New York, NY 10035
Ph. (646) 675-8909
Email: johntmaher@yahoo.com
*Pro hac vice* application pending

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETCONNECT RESCUE, INC., a Maryland nonprofit corporation; LUCKY PUP DOG RESCUE.COM, a California nonprofit corporation; SCDR, INC., d/b/a SECOND CHANCE DOG RESCUE, a California nonprofit corporation, and SARAH GONZALEZ, an individual, | Case No. 3:20-cv-00527-H-KSC Hon. Marilyn L. Huff Mag. Daniel E. Butcher |
| | **SECOND AMENDED COMPLAINT** |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| DAVID SALINAS, an individual; VERONICA SALINAS, an individual; RICHARD ROBLES PENA, an individual; VIRGO CASTRO ZUSA, a/k/a MARCO ANTONIO GARCIA, an individual; BRIAN MOHRFELD, | |

1

an individual; SELECT PUPPIES, )
INC., an Iowa corporation; RED )
ROCK ENTERPRISES OF UTAH, )
INC., a Utah corporation; THE PUPPY )
STORE, LLC, a Wyoming limited )
liability company; YELLOW STORE )
ENTERPRISES, LLC, a Wyoming )
limited liability company; NATIONAL )
CITY PUPPY, LLC, a California )
limited liability company; SOCAL )
PUPPY ADOPTIONS, INC., a )
California corporation; PET )
CONNECT RESCUE, INC., a )
Missouri corporation; ALYSIA )
ROTHMAN, an individual; RAY )
ROTHMAN, an individual; RICK )
GALLARDO, A/K/A RICKIE )
GALLARDO, an individual; 360 )
CLEAN N GO, LLC, a California )
limited liability company; THE )
FANCY PUPPY, LLC, a California )
limited liability company; THE )
PUPPY STORE LAS VEGAS, LLC, a )
Nevada limited liability company; )
PUPPIES 4 LESS, a business entity of )
form unknown; ANITA CHAVIRA, an )
individual; JOHN DUHAMMEL, an )
individual; JASON DUHAMMEL, )
a/k/a JASON HUIHAMMEL, an )
individual; and DOES 1-10, )
)
         Defendants. )
)

2

**SECOND AMENDED COMPLAINT**

## **INTRODUCTION**

1.      On January 1, 2019, California Health & Safety Code § 122354.5 took effect, banning the sale of non-rescue dogs, cats, and rabbits in retail pet stores. This impacted Defendants' business model of shipping in truckloads of designer breed, two-month old puppies from puppy mills in Iowa and Missouri, and selling them for thousands of dollars each in pet stores with third-party financing designed to facilitate impulse buys.

2.      Rather than comply with the law, Defendants herein set up a puppy laundering scheme wherein the same puppies from the same sources would be delivered in exactly the same way, but the labeling would simply be switched to claim that the puppies were now "rescues" and could therefore legally be sold in pet stores in California.

3.      In doing so, Defendants usurped the name of Plaintiff PETCONNECT RESCUE, INC., and created a fake rescue with the exact same name, except for a space between "Pet" and "Connect." Defendant PET CONNECT RESCUE, INC. exists only on paper to act as a pass-through entity covering up the true source of puppies sold in pet stores by Defendants.

4.      Plaintiff PETCONNECT RESCUE, INC. was created in the wake of Hurricane Katrina in 2005 to rescue and reunite pets and people, and is now a well established animal rescue that has been operating for over 15 years.

5.      Defendant PET CONNECT RESCUE, INC. has no physical location or phone number, and was set up in 2018--shortly before the California law took effect--by Defendant RAY ROTHMAN, who is a manager of SELECT PUPPIES, INC., one of the largest brokers of puppy mill puppies in the United States.

6.      State court judges in four cases brought by undersigned counsel that are currently pending in San Diego and Riverside counties have issued temporary restraining orders and preliminary injunctions prohibiting Defendants from selling puppies in pet stores in California, which had the effect of Defendants' California

3

1    stores shutting down.

2        7.    The present case seeks damages, restitution, and disgorgement of

3    profits from Defendants for the fraudulent scheme and misappropriation of

4    Plaintiff PETCONNECT RESCUE, INC.'s trademark to deceive the public.

5                                    **PARTIES**

6        8.    Plaintiff PETCONNECT RESCUE, INC. is a Maryland nonprofit

7    501(c)(3) organization founded in the wake of Hurricane Katrina in 2005 to rescue

8    and place animals in loving homes, a mission which has continued to this day. In

9    2019 alone, Plaintiff rescued 577 cats and 741 dogs.

10       9.    Plaintiff LUCKY PUP DOG RESCUE.COM is a California

11   501(c)(3) nonprofit organization which since 2010 has rescued dogs from

12   Southern California's highest kill shelters in the counties north of San Diego and

13   is made up of a dedicated team of volunteers, fosters, transporters and donors.

14       10.    Plaintiff SCDR, INC., d/b/a SECOND CHANCE DOG RESCUE, is

15   a California 501(c)(3) nonprofit organization dedicated to saving homeless dogs.

16   SDCR rescues, rehabilitates and re-homes dogs, primarily from local shelters, and

17   dogs from Baja California, Mexico. Once SCDR receives a dog, it provides

18   medical care, including spay and neuter, and any necessary rehabilitation. SDCR

19   was founded in 2008 and has rescued more than 8,000 dogs, placing them in

20   loving, safe, forever homes.

21       11.    Defendant DAVID SALINAS is an individual residing in Utah who

22   at all relevant times had substantial business activity in San Diego County.

23       12.    Defendant VERONICA SALINAS is an individual residing in Utah

24   who at all relevant times had substantial business activity in San Diego County.

25       13.    Defendant RICHARD ROBLES PENA is an individual whose

26   residence is currently unknown, and who at all relevant times had substantial

27   business activity in San Diego County.

28       14.    Defendant VIRGO CASTRO ZUSA is an individual whose residence

                                        4

                        **SECOND AMENDED COMPLAINT**

is currently unknown, and who at all relevant times had substantial business activity in San Diego County.

15.    Defendant BRIAN MOHRFELD is an individual residing in Iowa, and who at all relevant times had substantial business activity in San Diego County.

16.    Defendant SELECT PUPPIES, INC. is an Iowa corporation owned and operated by BRIAN MOHRFELD, which at all relevant times had substantial business activity in San Diego County.

17.    Defendant RED ROCK ENTERPRISES OF UTAH, INC. is a Utah corporation owned and operated by DAVID SALINAS and VERONICA SALINAS.

18.    Defendant THE PUPPY STORE, LLC is a Wyoming limited liability company owned and operated by DAVID SALINAS and VERONICA SALINAS.

19.    Defendant YELLOW STORE ENTERPRISES, LLC is a Wyoming limited liability company owned and operated by DAVID SALINAS and VERONICA SALINAS.

20.    Defendant NATIONAL CITY PUPPY, LLC is a California limited liability company owned and operated by DAVID SALINAS and VERONICA SALINAS.

21.    Defendant SOCAL PUPPY ADOPTIONS, INC. is a California corporation that is the alter ego of DAVID SALINAS, VERONICA SALINAS, RICHARD ROBLES PENA, and VIRGO CASTRO ZUSA.

22.    Defendant PET CONNECT RESCUE, INC. is a Missouri corporation that is the alter ego of RAY ROTHMAN and ALYSIA ROTHMAN.

23.    Defendant ALYSIA ROTHMAN is an individual residing in Missouri who at all relevant times had substantial business activity in San Diego County.

24.    Defendant RAY ROTHMAN is an individual residing in Missouri

**SECOND AMENDED COMPLAINT**

who at all relevant times had substantial business activity in San Diego County.

25.     Defendant RICK GALLARDO, a/k/a RICKIE GALLARDO, is an individual believed to reside in Orange County, and who at all relevant times owned and operated a puppy store in Los Angeles County.

26.     Defendant 360 CLEAN N GO, LLC is a California limited liability company that is the alter ego of RICK GALLARDO.

27.     Defendant THE FANCY PUPPY, LLC is a California limited liability company owned and operated by DAVID SALINAS and VERONICA SALINAS.

28.     Defendant THE PUPPY STORE LAS VEGAS, LLC is a Nevada limited liability company owned and operated by DAVID SALINAS and VERONICA SALINAS.

29.     Defendant PUPPIES 4 LESS is a business entity of form unknown, which at all relevant times had a puppy store in Riverside County, and is the alter ego of JASON DUHAMMEL, a/k/a JASON HUIHAMMEL, JOHN DUHAMMEL, and ANITA CHAVIRA.

30.     Defendant ANITA CHAVIRA is an individual residing in Riverside County.

31.     Defendant JOHN DUHAMMEL is an individual residing in Riverside County.

32.     Defendant JASON DUHAMMEL, a/k/a JASON HUIHAMMEL, is an individual residing in Riverside County.

33.     The names and capacities of DOES 1-10 are unknown to Plaintiffs at this time, who therefore sues these fictitiously named Doe Defendants as DOES 1-10. Plaintiffs will seek leave to amend its complaint to add the names and capacities of these fictitiously named Doe Defendants when they are ascertained. Each fictitiously named Doe Defendant is responsible in some manner for the harm alleged herein and was at all relevant times acting as the agent of each other

6

---

**SECOND AMENDED COMPLAINT**

Defendant.

## JURISDICTION AND VENUE

34.     This Court has subject matter jurisdiction under 15 U.S.C. §§ 1051 *et seq.* (The Lanham Act).

35.     This Court also has subject matter jurisdiction over state law causes of action pursuant to 28 U.S.C. § 1367.

36.     Venue is proper in this district because many of the illegal puppy stores owned and operated by Defendants were located in this district, and many of the acts and omissions giving rise to liability took place in this district.

## FACTUAL ALLEGATIONS

37.     Defendants DAVID SALINAS and VERONICA SALINAS owned and operated, through a series of pass-through entities and shell corporations, the following puppy stores that remained open in California following enactment of Health & Safety Code § 122354.5 in 2019, selling puppies from puppy mills fraudulently labeled "rescues" from "Pet Connect Rescue": National City Puppy in National City, Broadway Puppies in Escondido, Pups & Pets in Santee, Hello Puppies in Temecula, and The Fancy Puppy in Corona, California (the "Salinas stores.")

38.     Defendants DAVID SALINAS and VERONICA SALINAS continue to own and operate other puppy stores in Utah and Nevada, which have also sold puppies mislabeled as being "rescues" from "Pet Connect Rescue."

39.     Defendant RICHARD ROBLES PENA was at all relevant times the general manager of the Salinas stores, as well as the puppy stores in Utah and Nevada also owned by DAVID SALINAS and VERONICA SALINAS.

40.     Defendant VIRGO CASTRO ZUSA, a/k/a MARCO ANTONIO GARCIA ("ZUSA"), is an individual whose residence is unknown, and is listed as the only managing member of YELLOW STORE ENTERPRISES, LLC, a pass-through entity owned by RED ROCK ENTERPRISES OF UTAH, INC., which is

7

owned by DAVID SALINAS and VERONICA SALINAS. ZUSA is believed to be a relative of VERONICA SALINAS. Because YELLOW STORE ENTERPRISES, LLC is formed in Wyoming, which does not require disclosure of its owners, ZUSA was listed as the managing member of this entity which owns the Salinas stores, in order to hide the identity of the true owners, who are DAVID SALINAS and VERONICA SALINAS.

41. Defendant RICK GALLARDO, a/k/a RICKIE GALLARDO ("GALLARDO") owned and operated a puppy store called "Puppy World" in Montebello, California through his alter ego company, 360 CLEAN N GO, LLC, which sold puppies fraudulently labeled "rescues" from "Pet Connect Rescue." Gallardo has since opened a new store in Arizona which was originally called "Puppy World Rescue," but is now simply called Puppy World again. GALLARDO continues to sell puppies mislabeled as being from "Pet Connect Rescue" at his Arizona store.

42. PUPPIES 4 LESS was the name of an illegal puppy store in Temecula that sold puppies fraudulently labeled "rescues" from "Pet Connect Rescue." The attorney who previously represented PUPPIES 4 LESS, Lara Abuzeid, is herself believed to be involved in the illegal puppy laundering scheme, having set up another fake rescue called "Bark Adoptions," which is the subject of a preliminary injunction in a different case. Attorney Abuzeid substituted out of the present case and claimed that PUPPIES 4 LESS was a d/b/a of an individual named ANITA CHAVIRA, who purportedly signed the substitution request and agreed to represent herself but has not been heard from since, including failing to appear at the early neutral evaluation conference and having an order to show cause issued against her, which she also failed to appear at, causing the Court to take the matter on submission as to what penalty should be imposed. However, Plaintiffs believe the true owners of PUPPIES 4 LESS were JOHN DUHAMMEL and JASON DUHAMMEL, a/k/a JASON HUIHAMMEL.

**SECOND AMENDED COMPLAINT**

43.     On January 24, 2020, San Diego Superior Court Judge Eddie Sturgeon issued a preliminary injunction against DAVID SALINAS and NATIONAL CITY PUPPY, LLC in *Animal Protection and Rescue League v. Salinas,* San Diego Superior Court Case No. 37-2019-00065377-CU-BT-CTL.

44.     On March 25, 2019, the Iowa Attorney General dismantled two other fake rescues, Rescue Pets Iowa and Hobo K9 Rescue of Britt, that had been supplying puppies to Defendants through Defendant PET CONNECT RESCUE, INC. (https://www.iowaattorneygeneral.gov/newsroom/puppy-mill-laundering-ring-rescue-settlement-california-chicago, last visited April 6, 2020.)

45.     The Iowa Attorney General's investigation found these two fake rescues transferred at least 3,600 dogs to entities in California, Illinois, Florida, Missouri and New Jersey from September 2016 to September 2019. They included Pomeranians, Shar-Peis, Alaskan Malamutes, Poodle-Yorkies and other high-priced purebred and designer breeds.

46.     On May 19, 2020, volunteer activists documented a delivery truck with an Iowa license plate dropping off puppies at Pups & Pets in Santee. The license plate traced back directly to SELECT PUPPPIES, INC. Defendants PET CONNECT RESCUE, INC., RAY ROTHMAN, and ALYSIA ROTHMAN later admitted in declarations that puppies labeled "Pet Connect Rescue" were delivered to stores in a truck owned by SELECT PUPPIES, INC., but claimed that they merely used this truck for transportation, and continued claiming the two-month old designer breed puppies being delivered on a weekly basis to be sold for thousands of dollars each were "rescues."

47.     On June 12, 2020, Riverside Superior Court Judge Angel Bermudez granted a temporary restraining order prohibiting PUPPIES 4 LESS from selling puppies in a pet store in violation of Health & Safety Code § 122354.5, causing the store to shut down. In granting the temporary restraining order, Judge Bermudez stated, "The reason for the Court's intervention would, of course, be

9

that the record shows that there was a methodology in place. That methodology was revised to provide for a circuitous distribution of dogs; that circumnavigation, if you will, has provided for the distribution of dogs that one has learned through the Iowa Attorney General's Office action, I should say, in court that results in what are labeled, quote, 'puppy mill,' end quote, dogs being distributed throughout the county via Iowa to Bark Options and Pet Connection Rescue, Inc."

48.     On June 18, 2020, Judge Sturgeon granted another preliminary injunction against DAVID SALINAS and his other stores in San Diego County, Broadway Puppies and Pups & Pets, as well as THE PUPPY STORE, LLC in *Companion Animal Protection Society v. Salinas,* San Diego Superior Court Case No. 37-2020-00004999-CU-BT-CTL. The preliminary injunction also ordered Defendant PET CONNECT RESCUE, INC. to stop doing business in the State of California unless it is compliant with California law. This had the effect of also causing the other two California stores owned by DAVID SALINAS to shut down, which were Hello Puppies in Temecula and The Fancy Puppy in Corona.

49.     Defendants SELECT PUPPIES, INC., BRIAN MOHRFELD, RAY ROTHMAN, ALYSIA ROTHMAN, and PET CONNECT RESCUE, INC. are continuing to engage in the exact same scheme in Chicago, which has a city ordinance similar to California Health & Safety Code § 122354.5, and possibly other jurisdictions as well. Accordingly, Plaintiff PETCONNECT RESCUE, INC. also seeks injunctive relief from this Court to enjoin these ongoing fraudulent misrepresentations and trademark violations.

## FIRST CAUSE OF ACTION
### Violation of Section 32 of the Lanham Act
### (Plaintiff PETCONNECT RESCUE, INC. against All Defendants)

50.     Plaintiffs reallege and incorporate by reference all previous allegations as is fully set forth herein.

51.     Plaintiff PETCONNECT RESCUE, INC.'s trademark, "PetConnect

**SECOND AMENDED COMPLAINT**

Rescue Where Animals Are One Step Closer to Home," (the "Trademark") is federally registered on the Principal Register that exists for distinctive marks. The mark is inherently distinctive, disclaiming exclusive rights only to the word "rescue" apart from the mark as a whole, and is associated in the mind of the public exclusively with Plaintiff PETCONNECT RESCUE, INC. A true and correct copy of the Trademark registration is attached hereto as Exhibit 1.

52.     The Trademark includes a portmanteau consisting of the descriptive terms "PET," "CONNECT," and "RESCUE," which Plaintiff PETCONNECT RESCUE, INC. combined in a unique manner which suggests the purpose and mission of its nonprofit charitable enterprise, which is connecting adoptable rescue pets with people to care for them.

53.     The Trademark has been duly registered with the United States Patent and Trademark Office as a service mark, and Plaintiff PETCONNECT RESCUE, INC. maintains exclusive use of the Trademark within international Classes 35, 36 and 45 which includes "Providing pet adoption services; Providing information about pet adoption; Providing an online searchable database featuring pet adoption organizations and pets available for adoption; Providing a web site featuring listings and photographs of pets available for adoption and related information concerning pet adoption."

54.     Defendants have used the registered Trademark without Plaintiff PETCONNECT RESCUE, INC.'s consent or authorization. Defendants' use, including the distribution and sale of puppies mislabeled with the Trademark in interstate commerce, has and is likely to cause confusion, mistake, and/or deception in the mind of consumers, leading them to believe that Defendants' products emanate or originate from Plaintiff PETCONNECT RESCUE, INC. or that Plaintiff PETCONNECT RESCUE, INC. has approved, sponsored or otherwise associated itself with Defendants or the puppies Defendants have sold, and/or causing them to subconsciously associate Plaintiff PETCONNECT

11

RESCUE, INC. with Defendants.

55.    Through Defendants' unauthorized use of the Trademark, Defendants are unfairly benefiting from Plaintiff PETCONNECT RESCUE, INC.'s advertising and promotion of, and the fame of, the Trademark. Defendants' unauthorized use of the Trademark has resulted in substantial and irreparable injury to the public, Plaintiff PETCONNECT RESCUE, INC., the Trademark, and Plaintiff PETCONNECT RESCUE, INC.'s business reputation and goodwill.

56.    Within the channels of trade and commerce for dogs, the Trademark is famous and has taken on a meaning recognizable to consumers, and a strong secondary meaning, as a recognizable source for obtaining or adopting or purchasing legitimate rescue dogs.

57.    At all relevant times Plaintiff PETCONNECT RESCUE, INC. made exclusive use of the Trademark in uninterrupted use in commerce since 2005, and prior to any such use by Defendants, and is the owner of all rights to the Trademark.

58.    Defendants' acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

59.    Defendants' acts have caused, and will continue to cause, irreparable injury to Plaintiff PETCONNECT RESCUE, INC.

60.    Plaintiff PETCONNECT RESCUE, INC. has no adequate remedy at law and is thus damaged in an amount not yet determined.

61.    The harm to Plaintiff resulting from Defendants' unlawful acts is irreparable, continuing and not fully compensable by money damages.

62.    Based on Defendants' activities, Plaintiff PETCONNECT RESCUE, INC. reasonably believes that Defendants intend to continue unlawfully using its name and Trademark.

63.    Plaintiff PETCONNECT RESCUE, INC. is also entitled to a judgment from this Court awarding Plaintiff damages equal to three times the

12

amount of the damages it has suffered as a result of Defendants' acts or, in the alternative, statutory damages as the Court considers just, pursuant to 15 U.S.C. § 1117.

64.    Plaintiff PETCONNECT RESCUE, INC. is further entitled to all profits obtained by Defendants' misappropriation of Plaintiff's trademark.

**SECOND CAUSE OF ACTION**

**Violation of Section 43(a) of the Lanham Act**

**(Plaintiff PETCONNECT RESCUE, INC. against All Defendants)**

65.    Plaintiffs reallege and incorporate by reference all previous allegations as is fully set forth herein.

66.    Defendants, in connection with their sale of puppies that Defendants fraudulently label as "rescues," have used in commerce the words "Pet Connect Rescue" as a false designation of origin, a false and misleading description of fact, and a false and misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff PETCONNECT RESCUE, INC., or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Plaintiff PETCONNECT RESCUE, INC.

67.    Defendants' use of the term "PET CONNECT RESCUE" is intended to imply or confer false legitimacy as to the source or origin of puppy mill puppies sold to consumers as rescued dogs in need of homes, and to confer a false association between Defendants and a legitimate animal rescue organization.

68.    Defendants' use of the Plaintiff's PETCONNECT RESCUE name and Trademark in the same or similar channels of trade and commerce is without permission, justification, license or authority. Defendants' use of the Trademark is intended to deceive consumers as to the true nature and origin of the goods Defendants sell or derive profit, i.e. the puppy mill puppies mislabeled as rescue dogs in need of homes.

13

69.     Defendants, in connection with their advertisement and sale of puppies that Defendants fraudulently label as "rescues," are using variations upon the Defendant's name and mark, "PETCONNECT RESCUE."

70.     In so doing, Defendants used and traded upon the PETCONNECT RESCUE mark and its associated goodwill in order to present a false designation of origin of their goods, a false and misleading description of fact as to the status of the dogs as "rescues," which is intended to, and is likely to, cause actual or implied confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff PETCONNECT RESCUE, INC.

71.     This false designation was intended to and did, deceive consumers as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Plaintiff PETCONNECT RESCUE, INC.

72.     In some instances, Defendants traded off the confusion they inflicted upon consumers by referring customers and potential customers directly to Plaintiff PETCONNECT RESCUE's website and phone number as proof of the legitimacy of Defendants' enterprise.

73.     Defendant PET CONNECT RESCUE, INC.'s website was constructed and designed in bath faith, in order to deceive and confuse consumers, and to steer them to the Defendants' associated businesses by means of a willful misuse of the Trademark.

74.     Plaintiff PETCONNECT RESCUE, INC. has been, and continues to be, harmed by the foregoing acts which have disparaged, diluted and impaired its name and reputation by means of the false association that Defendants have claimed with Plaintiff PETCONNECT RESCUE, INC.

75.     Consumers have been harmed and continue to be harmed by Defendants' attempt to usurp the PETCONNECT RESCUE name, Trademark, and associated goodwill and use it as part of their illegal scheme to evade California law and similar laws in other jurisdictions, such as Chicago. This harm

14

is ongoing and will continue unabated unless enjoined by the Court.

76.     Defendants, in their commercial advertising or promotion, are misrepresenting the nature, characteristics, qualities, or geographic origin of their goods, services, and commercial activities by means of usurping the Plaintiff's trade name and mark.

77.     Defendants, in commercial advertising or promotion, are misrepresenting the nature, characteristics, qualities, or geographic origin of their goods, services, and commercial activities.

78.     Defendants' conduct constitutes false designation of origin and false connection in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

79.     Defendants' violation of 15 U.S.C. § 1125(a) is knowing, intentional, willful and deliberate. The knowing, intentional, willful and deliberate nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

80.     The harm to Plaintiff PETCONNECT RESCUE, INC. resulting from Defendants' unlawful acts is irreparable, continuing, and not fully compensable by money damages.

81.     Based on Defendants' activities, Plaintiff PETCONNECT RESCUE, INC. reasonably believes that Defendants intend to continue unlawfully using its trade name and mark.

82.     Moreover, Plaintiff is also entitled to a judgment from this Court awarding Plaintiff PETCONNECT RESCUE, INC. damages equal to three times the amount of the damages it has suffered as a result of Defendants' acts or, in the alternative, statutory damages as the Court considers just, pursuant to 15 U.S.C.§1117.

/ / /

/ / /

/ / /

15

**SECOND AMENDED COMPLAINT**

**THIRD CAUSE OF ACTION**

**Violation of Lanham Act – Trademark and/or Service Mark Dilution**

**(Plaintiff PETCONNECT RESCUE, INC. against all Defendants)**

83.     Plaintiffs reallege and incorporate by reference all previous allegations as if fully set forth herein.

84.     As a result of the duration and extent of use of the PETCONNECT RESCUE mark, the duration and extent of the advertising, media and publicity of the mark, and the charitable nature of Plaintiff's nonprofit work placing rescued animals, Plaintiff's mark has achieved an extensive degree of distinctiveness and is a famous trademark among consumers seeking to adopt rescued animals.

85.     The PETCONNECT RESCUE trademark is famous, as that term is used in 15 U.S.C. § 1125(c), and it was famous before Defendants' use of them and variations of the trademarks in commerce. This fame is based on, among other things, the inherent distinctiveness and federal registration of the trademark as well as the extensive and exclusive national use, advertising, promotion, and recognition of them.

86.     Defendants' use of the PETCONNECT RESCUE, INC. service mark and/or Trademark, and variations thereof, in commerce has caused and is likely to cause dilution by blurring or dilution by tarnishment of the trademark.

87.     Defendants' acts constitute dilution by blurring and dilution by tarnishment in violation of 15 U.S.C. § 1125(c), entitling Plaintiff PETCONNECT RESCUE, INC. to relief.

88.     Defendants have unfairly profited from their conduct.

89.     Defendants' unauthorized use of Plaintiff's mark has diluted and continues to dilute the distinctive quality of and reputation associated with the mark.

90.     Defendants' acts of Trademark and/or service mark dilution are willful, wanton, intentional and deliberate.

16

---

**SECOND AMENDED COMPLAINT**

91.     The harm to Plaintiff resulting from Defendant's acts is irreparable, continuing, and not fully compensable by money damages.

92.     Based on Defendants' activities, Plaintiff reasonably believes that Defendants intend to continue unlawfully using the mark.

93.     Defendants have damaged the goodwill associated with the PETCONNECT RESCUE, INC. service mark and/or Trademark, and they will continue to cause irreparable harm.

94.     Defendants' unlawful acts have damaged Plaintiff and will continue to cause damage and irreparable injury to Plaintiff unless enjoined by this Court. As such, Plaintiff is entitled to a preliminary and permanent injunction pursuant to 15 U.S.C. § 1116(a).

95.     Because Defendants acted willfully, Plaintiff is also entitled to a judgment from this Court awarding Plaintiff damages equal to three times the amount of the damages it suffered as a result of Defendants' unlawful acts or, in the alternative, statutory damages as the Court considers just, pursuant to 15 U.S.C. § 1117.

96.     This is an exceptional case, making Plaintiff eligible for an award of attorneys' fees pursuant to 15 U.S.C. § 1117.

### FOURTH CAUSE OF ACTION

### Violation of Lanham Act Section 43(a)

### (LUCKY PUP DOG RESCUE.COM and SCDR, INC., d/b/a SECOND CHANCE DOG RESCUE, against All Defendants)

97.     Plaintiffs reallege and incorporate by reference all previous allegations as is fully set forth herein.

98.     Defendants created SOCAL PUPPY ADOPTIONS, INC. as yet another pass-through entity to launder puppy mill puppies fraudulently labeled "rescues," when the "Pet Connect Rescue" name came under scrutiny.

99.      The website for SOCAL PUPPY ADOPTIONS, INC.,

17

socalpuppyadoptions.org, which is essentially a copycat of the fake PET CONNECT RESCUE, INC.'s website, pcriusa.org, complete with similar stock art and the same generic language, makes the claim, "We support our local shelters with donations." The site then lists a number of *legitimate* animal rescue organizations and shelters, which previously included "Lucky Pup Dog Rescue of San Diego" prior to the present case being filed, which has been deleted since the filing of this lawsuit. The site also currently lists, "Second Chance Dog Rescue."

100.   Plaintiff LUCKY PUP DOG RESCUE.COM uses the names "Lucky Pup Dog Rescue" and "Lucky Pup Dog Rescue of San Diego" in its mailings and communication and is the owner of the "LUCKY PUP DOG RESCUE" mark and domain name by virtue of its prior use in trade and commerce.

101.   Plaintiff LUCKY PUP DOG RESCUE.COM has used its name and mark for over 10 years and is the sole owner of the exclusive name, right, title and interest in the Lucky Pup Dog Rescue name and mark.

102.   Plaintiff SCDR, INC., d/b/a SECOND CHANCE DOG RESCUE, uses the names "Second Chance Dog Rescue" in its mailings and communication and is the owner of the "Second Chance Dog Rescue" mark and domain name by virtue of its prior use in trade and commerce.

103.   Plaintiff SCDR, INC. has used its name and mark for over 12 years and is the sole owner of the exclusive name, right, title and interest in the Second Chance Dog Rescue name and mark.

104.   Plaintiff LUCKY PUP DOG RESCUE.COM's and SCDR, INC.'s names are distinctive marks that are associated with Plaintiffs and exclusively identify their respective businesses, products, and services.

105.   Defendants' use in commerce of Plaintiff LUCKY PUP DOG RESCUE.COM's and SCDR, INC.'s names, marks, and variations thereof, has and continues to cause confusion, or to cause mistake, or to deceive the public that Defendants' goods and services are authorized, sponsored, or approved by, or are

**SECOND AMENDED COMPLAINT**

affiliated with, Plaintiffs.

106.   Defendants' acts constitute trademark infringement of Plaintiff LUCKY PUP DOG RESCUE.COM's and SCDR, INC.'s marks, as well as false designation of origin, in violation of 15 U.S.C. § 1125(a), entitling Plaintiffs to relief.

107.   Defendants have unfairly profited from their conduct.

108.   By reason of the above-described acts of Defendants, Plaintiff LUCKY PUP DOG RESCUE.COM and SCDR, INC. have suffered damage to the goodwill associated with Plaintiffs' names and marks.

109.   Plaintiff LUCKY PUP DOG RESCUE.COM and SCDR, INC. have been, and continue to be, irreparably harmed by the foregoing acts which have disparaged, diluted and impaired their names and reputation by means of the false association that Defendants have claimed with LUCKY PUP DOG RESCUE.COM and SCDR, INC. This harm is ongoing as to SCDR, INC.

110.   Defendants' use of the Plaintiff's names and marks in commerce is without permission, justification, license or authority. Defendants' use of the LUCKY PUP DOG RESCUE.COM and SCDR, INC. names and marks are intended to deceive consumers as to the true nature and origin of the goods Defendants sell or derive profit from, i.e. the puppy mill puppies mislabeled as rescue dogs in need of homes, and to confer a false association between Defendants and legitimate animal rescue organizations.

111.   Plaintiff LUCKY PUP DOG RESCUE.COM is the only "Lucky Pup Dog Rescue of San Diego" and is thus the entity referred to on Defendants' website as stated above.

112.   Plaintiff SCDR, INC., d/b/a SECOND CHANCE DOG RESCUE, is the only "Second Chance Dog Rescue," and is thus the entity referred to on Defendants' website as stated above.

113.   Plaintiff LUCKY PUP DOG RESCUE.COM has no financial  or

19

other relationship with Defendants, has never received any "donations" from Defendants, and disapproves of Defendants' actions in selling puppy mill dogs fraudulently labeled as "rescues," violating California law, deceiving the public, and hijacking the trade names, marks and goodwill of legitimate nonprofit animal rescue organizations such as Plaintiff's to perpetrate Defendants' fraudulent scheme.

114.   Plaintiff SCDR, INC. in the past apparently received a single $100 "donation" from SOCAL PUPPY ADOPTIONS, INC., which was apparently deposited without realizing who it was from. The "donation" did not come with any disclaimer or indication that Defendants would use the transaction to hijack Plaintiff's name and use it to claim affiliation with a legitimate animal rescue to cover up Defendants' illegal puppy laundering scheme.

115.   Defendants used and traded upon the LUCKY PUP DOG RESCUE.COM and SCDR, INC. names and marks as part of their scheme to create and present a false designation of origin of their goods, a false and misleading description of fact as to the status of the dogs as "rescues", which is intended to, and is likely to, cause actual or implied confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiffs.

116.   This false designation and association was intended to and did deceive consumers as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by LUCKY PUP DOG RESCUE.COM and SCDR, INC.

117.   Defendants, in commercial advertising or promotion, are misrepresenting the nature, characteristics, qualities, or geographic origin of their goods, services, and commercial activities by means of usurping the Plaintiffs' names and marks.

118.   Defendants' violation of 15 U.S.C. § 1125(a) was knowing,

20

intentional, willful and deliberate. The knowing, intentional, willful and deliberate nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

119.   Plaintiff LUCKY PUP DOG RESCUE.COM and SCDR, INC. have been, and continue to be, irreparably harmed by the foregoing acts which have disparaged, diluted and impaired their names and reputations by means of the false association that Defendants have claimed with LUCKY PUP DOG RESCUE.COM and SCDR, INC. This harm is ongoing.

120.   Plaintiff LUCKY PUP DOG RESCUE.COM and SCDR, INC. are entitled to recover Defendants' profits, Plaintiffs' actual damages, and to have their damages trebled under 15 U.S.C. § 1117(a).

121.   This is an exceptional case, making Plaintiffs eligible for an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

**FIFTH CAUSE OF ACTION**

**Unfair Business Practices – California state law claim**

**(All Plaintiffs against All Defendants)**

122.   Plaintiffs reallege and incorporate by reference all previous allegations as is fully set forth herein.

123.   California's Unfair Competition Law ("UCL"), Business & Professions Code sections 17200, *et seq*., prohibits businesses from engaging in unlawful, fraudulent, or unfair business practices.

124.   An action based on Section 17200 to redress an unlawful business practice borrows violations of other laws and treats them as a violation of Section 17200. In other words, a business practice is "unlawful" under Section 17200 when it violates another federal, state or local law. The violated law that serves as a basis for a UCL claim is referred to as a "predicate" law.

125.   Business and Professions Code § 17203 allows any party who has lost money or property as a result of unlawful, fraudulent, or unfair business

21

1   practices to ask a court to enjoin such practices.

2   126.   Through their unlawful, fraudulent, and unfair business practices,

3   Defendants, and each of them, have forced Plaintiffs to divert their limited

4   organizational resources, including staff time, to responding to members of the

5   public who were deceived by Defendants, and each of them, into believing

6   puppies sold by Defendants are "rescue puppies" from "Pet Connect Rescue."

7   127.   Defendants' unlawful, fraudulent, and unfair puppy laundering

8   scheme as detailed in this complaint both frustrates the organizational Plaintiffs'

9   core mission of rescuing animals and impedes the organizations' ability to expend

10  valuable time and resources to promote their missions to further animal protection.

11  128.   As a party "who has suffered injury in fact and has lost money or

12  property as a result of …unfair competition," all Plaintiffs have standing under

13  Business and Professions Code section 17204 to enjoin Defendants' unlawful

14  conduct.

15  129.   California Health & Safety Code § 122354.5(a) provides:

16  A pet store operator shall not sell a live dog, cat, or rabbit in a pet store
    unless the dog, cat, or rabbit was obtained from a public animal control
17  agency or shelter, society for the prevention of cruelty to animals shelter,
    humane society shelter, or rescue group that is in a cooperative agreement
18  with at least one private or public shelter pursuant to Section 31108, 31752,
    or 31753 of the Food and Agricultural Code.
19
20
21  130.   Subsection (f) provides:

22  For purposes of this section, a "rescue group" is an organization that is tax
    exempt under Section 501I(3) of the Internal Revenue Code, and that does
23  not obtain animals from breeders or brokers for compensation.

24
25  131.   Additionally, neither Defendant PET CONNECT RESCUE, INC. nor

26  SOCAL PUPPY ADOPTIONS, INC. are legitimately tax exempt under Section

27  501(c)(3) of the Internal Revenue Code because they do not meet the requirements

28  for such organizations. Among other things, Defendant PET CONNECT

22

**SECOND AMENDED COMPLAINT**

RESCUE, INC. and SOCAL PUPPY ADOPTIONS, INC. do not have disinterested boards, and their revenue goes to the private inurement of individual Defendants.

132.   Both Defendants PET CONNECT RESCUE, INC. and SOCAL PUPPY ADOPTIONS, INC. obtain animals from breeders or brokers for compensation.

133.   Neither Defendants PET CONNECT RESCUE, INC. nor SOCAL PUPPY ADOPTIONS, INC. have ever rescued a single animal from any shelter.

134.   Defendants are all deliberately, knowingly, and unlawfully continuing to sell puppies in pet stores obtained from breeders or brokers for compensation in violation of the laws of other jurisdictions, now that Defendants' California stores have been shut down by state court injunctions.

135.   On information or belief, all Defendants are knowingly and willfully acting as accomplices to all other Defendants to evade various laws and defraud consumers into believing they are "adopting" a "rescue" animal, when in fact their purchases are supporting the puppy mill industry of which Defendants are a part.

136.   Defendants, and each of them, are misleading consumers and unlawfully interfering with the efforts of bona fide rescue groups and animal shelters, including Plaintiff's own legitimate nonprofit efforts, to seek homes for stray and abandoned animals, which also causes economic harm to Plaintiff through frustration of Plaintiffs' mission and diversion of Plaintiffs' organizational resources.

137.   Instead of spending their limited resources rescuing and placing animals, Plaintiff PETCONNECT RESCUE, INC. must spend significant organizational resources on explaining to the public that the animals for sale in Defendants' stores are not "rescues" and are not from Plaintiff or any other legitimate nonprofit organization or shelter, but are instead falsely advertised and illegally sourced from puppy mills and breeders.

23

138.   On information or belief, all of the Defendants, both independently and collectively, have violated and are continuing to violate Health and Safety Code § 122354.5 by knowingly participating in and profiting from Defendants' unlawful scheme to sell puppy mill puppies in pet stores and falsely advertise to the public that the puppies are "rescues" from a shelter, PETCONNECT RESCUE, INC., or other legitimate rescue operation.

139.   Defendants, and each of them, have engaged in acts or practices that constitute unfair competition, as that term is defined in section 17200, *et seq*. of the Business & Professions Code.

140.   Defendants, and each of them, have violated, are violating, and plan to continue to violate Business & Professions Code §§ 17200, *et seq*. through their unlawful business acts and practices, which violate Health and Safety Code § 122354.5, other consumer protection laws, and similar laws in other jurisdictions.

141.   Defendants are also routinely engaged in committing felony fraud in violation of Penal Code § 484 by falsely labeling the purebred and designer puppies they sell as being "rescues" and selling them for thousands of dollars each.

142.   Defendants, and each of them, have independently and collectively engaged in and will continue to engage in and will continue to engage in the unlawful and unfair business practices through the illegal sale of puppies in pet stores obtained from puppy mills as set forth in this complaint unless specifically enjoined from doing so by this Court.

143.   Defendants have also failed to disclose the true origin and age of the puppies prior to sale by not posting a properly filled out and truthful "cage card" for consumers to read prior to purchase. Cage cards are required pursuant to the Animal Welfare Act's implementing regulations which require USDA-licensed breeders and dealers to keep records on all dogs and cats in their possession. (9 CFR § 2.75(a)(1)). This failure to post a truthful cage card, which requires both

24

the name of the breeder and the date of birth of the puppy, is part of Defendants' fraudulent scheme and is designed to deceive consumers by preventing them from learning the true origin of the puppies.

144.   Defendants, and each of them, have also violated federal law by failing to keep USDA APHIS Form 7005, "Record of Acquisition of Dogs and Cats on Hand."

145.   Plaintiffs seek an injunction against all Defendants from continuing to run an illegal puppy laundering scheme to sell puppy mill puppies to consumers at retail pet stores by fraudulently labeling, representing, advertising, marketing and selling these puppies as "rescues."

146.   Plaintiffs have been harmed by the actions Defendants in fraudulently labeling, representing, advertising, marketing and selling puppy mill puppies as "rescues," all in direct violation of California law.

147.   Plaintiff SARAH GONZALEZ purchased a puppy labeled "Pet Connect Rescue" from a since closed store called "Town Puppies" in Temecula on December 15, 2019 for $2,007.27.

148.   Plaintiff GONZALEZ was specifically seeking out a rescue puppy from a shelter or animal rescue and would never support puppy mills or mass breeding operations.

149.   The puppy purchased by Plaintiff came with paperwork stating the source was PET CONNECT RESCUE, INC.

150.   On information or belief, PET CONNECT RESCUE, INC. is a fake nonprofit set up by RAY ROTHMAN and ALYSIA ROTHMAN to launder puppies from the same puppy mill sources in Missouri that have always supplied the stores run by Defendants, and to fraudulently label them as "rescues."

151.   Plaintiff GONZALEZ is entitled to restitution and disgorgement from Defendants PET CONNECT RESCUE, INC., RAY ROTHMAN, ALYSIA ROTHMAN, SELECT PUPPIES, INC., and BRIAN MOHRFELD.

25

**SECOND AMENDED COMPLAINT**

1

## SIXTH CAUSE OF ACTION

## Consumer Legal Remedies Act – California State Law Claim

## (SARAH GONZALEZ against PET CONNECT RESCUE, INC., RAY ROTHMAN, ALYSIA ROTHMAN, SELECT PUPPIES, INC., and BRIAN MOHRFELD, INC.)

152.    Plaintiffs reallege and incorporate by reference all previous allegations as is fully set forth herein.

153.    The Consumer Legal Remedies Act ("CLRA"), Civil Code § 1750, *et seq.*, prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer" which includes, but are not limited to:

a.      "Misrepresenting the source, sponsorship, approval, or certification of services"

b.      "Representing that services have approval, characteristics, benefits that they do not have or that a person has an approval, status, that he or she does not have."

c.      "Representing that services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

d.      "Advertising services with intent not to sell them as advertised."

e.      "Representing that a transaction confers or involves rights, remedies, that it does not have or involve";

f.      "Representing that the consumer will receive economic benefit, contingent on an event to occur subsequent to the consummation of the transaction"; and

g.      "inserting an unconscionable provision in the contract."

154.    As set forth herein, Defendants, and each of them, have misrepresented to consumers in California, including Plaintiff, that Defendants are

26

selling "rescue puppies" when in fact they are selling puppies from puppy mills.

155.   Defendants' advertisements and representations are false and misleading in a material respect and are directed at and misleading to reasonable consumers who may suffer the same fate as Plaintiff.

156.   At all times during which Defendants made the above-referenced representations to Plaintiff and to the public, Defendants knew that they were false and misleading.

157.   Plaintiff reasonably relied upon and were deceived by Defendants' false and misleading advertising and paid money to Defendants to obtain puppies Defendants falsely claimed were "rescued."

158.   Plaintiff Sarah Gonzalez is entitled to damages from Defendants PET CONNECT RESCUE, INC., RAY ROTHMAN, ALYSIA ROTHMAN, SELECT PUPPIES, INC., and BRIAN MOHRFELD.

## SEVENTH CAUSE OF ACTION

### Fraudulent Deceit – California state law claim

### (SARAH GONZALEZ against PET CONNECT RESCUE, INC., RAY ROTHMAN, ALYSIA ROTHMAN, SELECT PUPPIES, INC., and BRIAN MOHRFELD)

159.   Plaintiff realleges and incorporates by reference all previous allegations as is fully set forth herein.

160.   Defendants made false representations and concealed material facts about the puppies Defendants are selling and engaged in deceptive practices before, during, and after the sale of a puppy to Plaintiff GONZALEZ.

161.   Defendants made said representations and concealed material information with knowledge of their falsity or without sufficient knowledge on the subject to warrant a representation, and with the intent to induce Plaintiff to act on it.

162.   Defendants falsely and fraudulently represented to Plaintiff

27

1   GONZALEZ that Defendants were providing "rescue puppies."

2   163.   On information or belief, Defendants' representations were false. The

3   true facts were as follows: Defendants were unlawfully selling puppies in a pet

4   store obtained from breeders or brokers for compensation in violation of

5   California law.

6   164.   On information or belief, when Defendants made these

7   representations, Defendants knew them to be false, and made these representations

8   with the intent to defraud and deceive Plaintiff, and with intent to induce Plaintiff

9   to purchase a puppy.

10   165.   Plaintiff believed the representations and relied on the truth of them

11   in purchasing a puppy. Plaintiff would not have purchased the puppy had it not

12   been for the fraudulent deceit.

13   166.   The reliance by Plaintiff was justified because Defendants were in a

14   position of advantage with respect to knowledge of facts concerning where the

15   puppies came from, Defendants, and each of them, falsely and fraudulently

16   represented to Plaintiff that they were selling "rescue puppies."

17   167.   As a proximate result of Defendants' fraudulent deceit and the facts

18   herein alleged, Plaintiff purchased a puppy which she believed was a "rescue

19   puppy," but instead was from a puppy mill, and incurred thousands of dollars in

20   veterinary bills due to illnesses caused by the poor conditions in which the puppy

21   was bred, transported, and stored prior to sale.

22   168.   Defendants, and each of them, acted with malice and fraud,

23   intentionally deceiving Plaintiff, as Defendants do all of Defendants' customers,

24   into believing they are purchasing a "rescue" animal, solely so that Defendants

25   can continue to profit from selling puppy mill puppies in violation of California

26   law. Such despicable conduct entitles Plaintiff to punitive damages against

27   Defendants PET CONNECT RESCUE, INC., RAY ROTHMAN, ALYSIA

28   ROTHMAN, SELECT PUPPIES, INC., and BRIAN MOHRFELD, jointly and

**SECOND AMENDED COMPLAINT**

severally.

## EIGHTH CAUSE OF ACTION

### Accounting

### (Plaintiff PETCONNECT RESCUE, INC., LUCKY PUP DOG RESCUE.COM, and SCDR, INC., d/b/a SECOND CHANCE DOG RESCUE, against all Defendants)

169.   Plaintiffs reallege and incorporate by reference all previous allegations as if fully set forth herein.

170.   Defendants have never accounted to Plaintiffs for the sales of puppy mill puppies made using Plaintiffs' names and marks.

171.   As a result of the foregoing, Plaintiffs are also are uncertain as to how much their names and marks have been used in commerce under false pretenses for the purpose of violation of California law and to deceive consumers.

172.   Defendants' unlawful conduct constitutes deceptive, fraudulent and wrongful conduct.

173.   By virtue of their wrongful conduct, Defendants have illegally received money and profits that rightfully belong to Plaintiffs.

174.   Defendants hold the illegally received money and profits garnered from their unauthorized conduct in the form of bank accounts, real property or personal property that can be located and traced.

175.   By reason of the foregoing Plaintiffs have suffered great damage not fully measurable in monetary terms and will continue to suffer such irreparable damage unless Defendants are enjoined and restrained from such unlawful conduct.

176.   By reason of the foregoing Plaintiffs have suffered great damage not fully measurable in monetary terms and will continue to suffer such irreparable damage.

177.   Defendants have made and will make profits that equitably belong to

Plaintiffs.

178.   Plaintiffs are entitled to, and demand, an accounting to determine the profits made by the Defendants and the damages suffered by the Plaintiffs due to Defendants' unlawful infringement of Plaintiffs' protected marks and trade names.

179.   Plaintiffs are entitled to an accounting from Defendants because the amount of money due to Plaintiffs is presently unknown to Plaintiffs and cannot be ascertained without a detailed accounting provided by Defendants of the precise amount of revenues and profits that were illegally obtained by Defendants on the basis of their illegal, infringing and dilutive use of the Plaintiffs' names and marks.

**NINTH CAUSE OF ACTION**

**Trademark Infringement and Unfair Competition in Violation of California Common Law**

**(Plaintiffs PETCONNECT RESCUE, INC., LUCKY PUP DOG RESCUE.COM, and SCDR, INC., d/b/a/ SECOND CHANCE DOG RESCUE, against All Defendants)**

180.   Plaintiffs reallege and incorporate by reference all previous allegations as if fully set forth herein.

181.   Defendants have engaged in trademark infringement, unfair competition and false advertising in violation of the common law of the State of California.

182.   Defendant's acts have caused, and will continue to cause, irreparable injury to Plaintiffs. Plaintiffs have no adequate remedy at law and are thus damaged in an amount not yet determined.

**TENTH CAUSE OF ACTION**

**Federal false advertising in violation of Section 43(a) of the Lanham Act**

**(All Plaintiffs against All Defendants)**

183.   Plaintiffs reallege and incorporate by reference all previous

30

allegations as if fully set forth herein.

184.   In carrying out their illegal and fraudulent puppy laundering scheme, Defendants herein made false or misleading statements that they are selling "rescue puppies."

185.   Consumers were actually deceived, including Plaintiff SARAH GONZALEZ. Defendants' statements also had a tendency to deceive a substantial portion of the intended audience.

186.   Defendants' deception is material in that it is likely to influence purchasing decisions, including influencing Plaintiff GONZALEZ to purchase a puppy.

187.   The puppies sold by Defendants travel in interstate commerce.

188.   Defendants' false advertising has injured and is likely to continue injuring all Plaintiffs.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendants as follows:

1.      For a temporary restraining order, preliminary injunction, and permanent injunction on behalf of PETCONNECT RESCUE, INC. enjoining Defendants from misusing its Trademark to sell puppies;

2.      For a temporary restraining order, preliminary injunction, and permanent injunction on behalf of LUCKY PUP DOG RESCUE.COM and SCDR, INC., d/b/a/ SECOND CHANCE DOG RESCUE, enjoining Defendants from using the names "Lucky Pup Dog Rescue" or "Second Chance Dog Rescue" on their websites, or falsely advertising affiliation, sponsorship, or approval, of or with Lucky Pup Dog Rescue or Second Chance Dog Rescue;

3.      For damages to be proven at trial;

4.      For restitution and disgorgement as allowed by law;

5.      For judgment that Defendants:

31

a.  have infringed the PETCONNECT RESCUE, INC. Trademark in violation of Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(a);

b.  have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

c.  have violated Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c);

d.  have engaged in trademark infringement in violation of the common law of the State of California; and

6.  That a preliminary and permanent injunction be issued enjoining and restraining Defendants and their officers, agents, servants, employees and attorneys and all those in active concert or participation with them, from:

a.  Using the PETCONNECT RESCUE, INC. Trademark or any other reproduction, counterfeit, copy or colorable imitation of the Trademark on or in connection with any goods or services;

b.  Engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure Plaintiffs' business reputation or dilute the famous and distinctive qualities of the Trademark, including through the unauthorized use of the Trademark in providing puppies;

c.  Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the public, or individual consumers, to believe that any puppies distributed by Defendants are in any manner associated or connected with Plaintiffs, or are sold, manufactured, licensed, sponsored, approved, or authorized by Plaintiffs;

d.  Using any simulation, reproduction, counterfeit, copy or colorable imitation of Plaintiffs' trademarks in connection with the promotion, advertisement, display, sale, offer for sale, manufacture, production, importation, circulation, or distribution of any puppies;

e.  Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of

32

circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (i) through (vi).

7.     For an award to Plaintiffs of (a) the damages suffered by Plaintiffs, trebled; (b) all profits that Defendants have derived while using the Plaintiffs' trademarks, trebled; (c) costs and attorneys' fees to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117;

8.     For an order that Defendants be ordered to account for and disgorge to Plaintiffs all amounts by which Defendants have been unjustly enriched by reason of the unlawful acts complained of;

9.     For an award determining that Plaintiffs be awarded an amount sufficient to reimburse Plaintiffs for the costs of corrective advertising;

10.    For reasonable attorneys' fees on all causes of action as provided by, *inter alia,* 15 U.S.C. § 1117(a) and California Code of Civil Procedure § 1021.5;

11.    For costs of suit incurred herein;

12.    For pre- and post-judgment interest; and

13.    That this Court award Plaintiffs such other and further relief as the Court deems just and proper.


Dated: November 9, 2020          By:    /s/ Bryan W. Pease
                                        Bryan W. Pease, Esq.
                                        Attorney for Plaintiffs


## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all causes of action for which a right to a trial by jury exists.


Dated: November 9, 2020          By:    /s/ Bryan W. Pease
                                        Bryan W. Pease, Esq.
                                        Attorney for Plaintiffs

33

**SECOND AMENDED COMPLAINT**