**PEASE LAW, APC**
Bryan W. Pease (SBN 239139)
3960 W. Point Loma Blvd., Ste. H-2562
San Diego, CA 92110
Ph. (619) 723-0369
Email: bryan@peaselaw.org

**LAW OFFICES OF JOHN T. MAHER**
John T. Maher (NYS Bar No. 2357408)
105 E 122nd St.
New York, NY 10035
Ph. (646) 675-8909
Email: johntmaher@yahoo.com
*Pro hac vice* application pending

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETCONNECT RESCUE, INC., a Maryland corporation; LUCKY PUP DOG RESCUE.COM, a California corporation, and SARAH GONZALEZ, an individual,<br><br>                    Plaintiffs,<br>          v.<br><br>DAVID SALINAS, an individual, et al,<br><br>                    Defendants. | Case No. 3:20-cv-00527-LL-DEB<br>Hon. Linda Lopez<br>Mag. Daniel E. Butcher<br><br>**EXPERT DECLARATION OF MINH P. DOAN** |

1

**EXPERT DECLARATION OF MINH P. DOAN**

I, Minh P. Doan, declare:

1. I am over the age of 18 years and competent to testify as a witness. I state the following of my own personal knowledge.

2. I am a Vice President at Analysis Group, Inc. ("AG"). AG provides economic, financial, and business strategy consulting to its clients and specializes in the interpretation of economic and financial data and the development of economic and financial models. AG consists of over 1,000 professionals who specialize in, among other things, the fields of economics, accounting, statistics, finance, and strategy consulting.

3. My primary responsibility at AG is to provide financial, economic, and damage quantification consulting services to clients. For 15 years, I have performed evaluations of economic damages in intellectual property, breach of contract, false advertising, class certification, and other general commercial litigation matters. I have directed analysis of lost sales, lost profits, unjust enrichment, reasonable royalties, price erosion damages, and economic criteria relevant to obtaining an injunction. The clients I have worked with cover a variety of industries including consumer products, computer hardware and software, mobile devices, medical devices, construction materials, automotive technology, internet services, financial services, oil and gas, among others.

4. I hold a B.A. in Economics and Mathematics from Berea College, a M.A in Economics from Northwestern University, and a M.S. in Actuarial Science from the University of Iowa. Attached as Exhibit A is a true and correct copy of my current resume and testimony experience. My business address is Analysis Group, Inc., Park Place Center, 2911 Turtle Creek Blvd., Suite 600, Dallas, Texas 75219.

5. I have been retained by counsel for PetConnect Rescue, Inc. ("PetConnect" or "Plaintiff") in the matter of *PetConnect Rescue, Inc. et al. v. David Salinas et al*. to analyze the appropriate amount of monetary compensation due to Plaintiff in the event of a finding of liability for the alleged infringement of Plaintiff's trademark. Defendants in this matter include, among others, Pet Connect Rescue, Inc. (i.e., same exact name as

Plaintiff, except for a space between "Pet" and "Connect), Ray Rothman, Alysia Rothman, Select Puppies, Inc., Brian Mohrfeld, David Salinas, Veronica Salinas, six retail pet stores owned by David and Veronica Salinas, as well as Puppies4Less, John Duhammel, Jason Duhammel, and Anita Chavira (collectively "Defendants"). Plaintiff believes Puppies4Less was owned by John Duhammel and Jason Duhammel.[1] John Duhammel also owned and operated Palm Desert Puppies.[2]

6. I submitted my initial report, the Expert Report of Minh P. Doan, on February 15, 2022 ("Doan Report"). In the Doan Report, I concluded that Defendants' gains resulting from the alleged trademark infringement included: (1) revenues/profits earned by Mr. Rothman associated with the transportation of Pet Connect puppies to retail stores and (2) revenues/profits earned by the Salinas Pet Stores associated with the retail sale of Pet Connect puppies. The opinions set forth in the Doan Report are unchanged and are incorporated by reference in this declaration. To the extent that additional information becomes available, I reserve the right to update and/or revise my opinions.

7. At the time of the Doan Report, I did not quantify any gains from sales of Pet Connect labeled puppies at the pet stores owned by John and Jason Duhammel. Since the issuance of the Doan Report, I have been asked to evaluate revenues/profits earned by the Duhammels' pet stores (i.e., Puppies4Less and Palm Desert Puppies) from sales of Pet Connect labeled puppies.[3]

8. Puppies provided by Defendant Pet Connect were delivered to the Duhammels' pet stores during the time period December 2018 through at least June 2020, as seen on invoices provided by Defendant Ray Rothman from his transport entity, RAK Transport, and acquisition and disposition reports provided by Pet Connect. Mr.

---

[1] Complaint, p. 8
[2] RAK Invoice Nos. 1064, 1075, and 1083.
[3] No financial information has been provided for Puppies4Less or Palm Dessert Puppies.

Rothman testified at his deposition that RAK Transport exists solely to transport puppies from Pet Connect. I understand Puppies4Less and Palm Desert Puppies then sold these puppies to consumers as rescue pets under the false and misleading Pet Connect Rescue name.

9. Based on Pet Connect's acquisition and disposition reports, from June 2019 through June 2020, Pet Connect provided 100 puppies to Puppies4Less. RAK Transport invoices also show that 19 Pet Connect puppies were delivered to Palm Desert Puppies from December 2018 through January 2019. In total, these records show that the Duhammels' pet stores received at least 119 Pet Connect labeled puppies.

10. As I have not been provided any financial data from the Duhammels' pet stores, I have relied upon data form the Salinas pet stores in order to estimate the revenues earned from sales of the Pet Connect labeled puppies at Puppies4Less and Palm Desert Puppies. The average sales price per puppy from the Salinas Pet Stores can serve as a reliable estimate of the average sales price at the Duhammels' pet stores, as the Salinas pet stores and the Duhammels' stores operated under the same business model (i.e., selling purported rescue dogs to consumers) and sourced puppies from the same entity (i.e., Pet Connect). I have estimated revenue by multiplying the number of puppies Puppies4Less and Palm Desert Puppies received from Pet Connect by the lowest average sales price from the Salinas Pet Stores in that respective year, which varied from $1,389 - $2,262 per puppy. Based on these estimates, the Duhammels, through their pet stores, earned $186,186 in revenue from sales of Pet Connect labeled puppies. I note that my estimation is conservative as eyewitnesses at Puppies4Less and Palm Desert Puppies documented retail prices of $2,500 - $3,800 per puppy.[4]

11. Based on RAK invoices, from December 2018 through January 2019, Palm Desert Puppies paid RAK $6,423 for the transportation of 19 Pet Connect puppies. I

---

[4] Declaration of Cara Fitts, signed March 28, 2020; Declaration of Andrea Cunningham, signed June 10, 2020; Declaration of Tiffani LoBue, signed March 31, 2022.

have not been provided any invoices for Puppies4Less. However, as discussed in the Doan Report, I estimated that RAK received fees of $683 per puppy for the transportation of puppies to California from April 1, 2019 through June 1, 2020. As I understand Puppies4Less is based in California, I have used this fee to estimate that Puppies4Less incurred costs of $68,300 for the delivery of 100 Pet Connect puppies.

12. Attached hereto as Exhibit B is my estimate of the profits earned by the Duhammels from sales of Pet Connect labeled puppies. Subtracting the costs incurred to obtain the Pet Connect puppies from the revenues earned results in profits of $111,463.

I declare under penalty of perjury the foregoing is true and correct.

Dated: 3/31/2022     By: _____*Minh P. Doan*_____
                         Minh P. Doan

5

**EXPERT DECLARATION OF MINH P. DOAN**

# Exhibit A

**ANALYSIS GROUP**

Main 1 214 523 1400   Fax 1 214 523 1401   AnalysisGroup.com
2911 Turtle Creek Boulevard   Suite 600   Dallas, TX   75219

## MINH P. DOAN
### Vice President

Phone: (214) 523-1445　　　　　　　　　　　　　　　　　　　　　2911 Turtle Creek Blvd
Fax: (214) 523-1401　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Suite 600
Email: minh.doan@analysisgroup.com　　　　　　　　　　　　　　　　Dallas, TX 75219

　　　　Ms. Doan specializes in the evaluation of economic damages in complex commercial disputes, including intellectual property, breach of contract, false advertising, class certification, loss of earnings, and antitrust.  Ms. Doan has extensive experience in developing damages models and determining lost sales, lost profits, unjust enrichment, reasonable royalties, and price erosion damages.  Ms. Doan has evaluated claims of irreparable economic injury and other economic criteria relevant to obtaining an injunction in patent infringement matters.  In class certification matters, Ms. Doan has expertise in assessing claims of class-wide economic injury and damages.  Ms. Doan has been recognized as among the top economic experts for IP matters by *Intellectual Asset Management* (IAM) in the IAM Patent 1000.  She is an associate in the Society of Actuaries and worked in pension actuarial consulting prior to joining Analysis Group.

## EDUCATION

| | |
|---|---|
| M.S., Actuarial Science | University of Iowa, December 2005 |
| M.A., Economics | Northwestern University, June 2003 |
| B.A., Mathematics and Economics | Berea College (*Summa Cum Laude*), May 2001 |

## PROFESSIONAL EXPERIENCE

Analysis Group, Inc., Dallas, TX
　　Vice President (January 2013 – present)
　　Manager (January 2011 – December 2012)
　　Associate (January 2008 – December 2010)
　　Senior Analyst (March 2007 – December 2007)

Watson Wyatt Worldwide, Chicago, IL
　　Actuarial Analyst (Retirement Practice)
　　January 2006 - March 2007

University of Iowa, Iowa City, IA
Department of Statistics and Actuarial Science
　　Teaching Assistant
　　September 2004 - December 2005

Northwestern University, Evanston, IL
Department of Economics
　　Teaching Assistant
　　September 2002 - June 2003

**PROFESSIONAL AFFILIATIONS**

Associate, Society of Actuaries

**ENGAGEMENTS DESIGNATED AS EXPERT[1]**

- *<u>California Expanded Metal Products Company and ClarkDietrich Building Systems</u> v. James Klein, BlazeFrame Industries, Ltd., and Safti-Seal, Inc (United States District Court, Western District Of Washington, Civil Action No. 2:18-cv-00659-JLR)*

    Retained as an economic expert for CEMCO (owner of the asserted patents) and ClarkDietrich (exclusive licensee of the asserted patents) to evaluate Plaintiffs' damages resulting from Defendants' infringement of patents related to head-of-wall fire blocking assemblies used in building construction. Evaluated Plaintiffs' lost profits and reasonable royalty damages. Submitted an expert report and provided deposition testimony. (2019)

- *Juli Forde v. <u>Nicka & Associates, Inc. and Greg Nicka</u> (429th Judicial District, Collin County, Texas, Cause No. 429-00062-2019)*

    Retained as an economic expert for a medical coding company to evaluate Plaintiff's claim as to the value of her alleged 5% ownership interest in the company and Plaintiff's calculation of claimed unpaid commissions. Submitted an expert report. (2020)

- *Acute Medical Services, LLC v. <u>Christian EMS d/b/a North Texas Regional EMS</u>, Jason Jones and James Lampe (16th Judicial District, Denton County, Texas, Cause No. 16-06836-16)*

    Retained as an economic expert for NTREMS, an emergency medical services company. NTREMS's former management team members were alleged to have misappropriated trade secrets, including client lists, in order to establish NTREMS to directly compete with plaintiff. Evaluate plaintiff's claimed lost profits and disgorgement of NTREMS's revenues and profits attributable to the alleged theft of trade secrets. Expert Designation. (2021)

- *Confidential Trade Secrets Matter, Pre-Litigation*

    Performed preliminary evaluation of claimed damages due to plaintiff in a trade secrets matter relating to the enzymatic process of turning supermarket food scraps into petfood and fertilizer. Calculated damages under two approaches: reasonable royalty and the alleged infringer's gains from an accelerated entry into the market. (2021)

- *<u>GCP Applied Technology Inc.</u> v. AVM Industries, Inc (United States District Court, Central District of California, Case No. 2:19-cv-07475-MWF-FFM)*

    Retained as an economic expert for GCP, owner of a patent relating to waterproofing membrane technology. Evaluate GCP's lost profits and reasonable royalty damages. Submitted an expert report and provided deposition testimony. (2021)

- *<u>GoPlus Corporation</u> v. Crown Equipment Corporation, d/b/a Crown Lift Trucks (United States District Court, Southern District of Georgia, Savannah Division, Civil Action No. 4:20-cv-00034-RSB-CLR)*

    Retained as an economic expert to evaluate GoPlus's monetary damages as a result of Crown's failure to satisfy its contractual obligations to provide shelving for GoPlus's Georgia warehouse that met sizing specifications and weight tolerances GoPlus communicated to Crown. Calculated several categories

---

[1] Clients are underlined.

of claimed damages: increased shipping costs for GoPlus products that were diverted from the Georgia warehouse to other GoPlus warehouses, increased labor expenses at the Georgia warehouse, direct and indirect costs associated with replacing the defective shelving. Submitted an expert report. (2021)

- *Woodard-CM, LLC v. Sunlord Leisure Products, Inc. d/b/a Patio Renaissance, Prestige International Investments Co., Ltd., Albert Lord f/k/a Ai Ping Luo, Sunrise Casual Furniture, Inc., Mark Gorr, Gorr & Associates, Inc., Justin Pfhal, and Phafl Enterprises, Inc. (United States District Court, Southern District of Florida, Miami Division, Civil Action No. 1:20-cv-23104-KMW)*

  Retained as an economic expert to rebut Woodard's claimed lost profits damages and disgorgement of Defendants' profits resulting from the breach of a settlement agreement entered into after a trademark infringement lawsuit Woodard filed against Sunlord. Woodard alleges that Sunlord and affiliated companies violated the settlement agreement by selling certain patio furniture products alleged to be substantially similar to Woodard's own product designs. Submitted an expert report. (2021)

## SELECTED CONSULTING ENGAGEMENTS

**Intellectual Property: Patent Infringement**

- Assisted in the evaluation of claimed damages of a water balloon manufacturer who brought suit against a competitor. The competitor started selling the third generation of allegedly infringing products after the first two generations of products were subject to injunctions. Evaluated lost profits damages and reasonable royalty damages in the alternative. Evaluated price erosion damages on the sales that would have been made absent the alleged infringement as well as the sales that were actually made while market prices were influenced by the alleged infringement. Also assessed plaintiff's claimed damages as a result of defendant's false advertising of its products.

- Assisted in evaluating from an economic perspective whether a permanent injunction was warranted in a patent infringement lawsuit between two competitors in three-dimensional, machine-vision based railroad tie inspection services. Evaluated whether plaintiff was likely to suffer significant and long-term economic injury for which monetary damages were inadequate. Determined plaintiff's claimed lost profits from the projects that had been lost to the defendant.

- Assisted in an economic analysis to determine whether a permanent injunction was appropriate in a patent infringement matter relating to the use of drag reducing agents in heavy crude oil to facilitate the transportation of heavy crude oil through pipelines. Performed assessments of irreparable economic injury, inadequacy of monetary remedies, and balance of hardships under *eBay* framework. Evaluated a monetary remedy due to plaintiff absent an injunction.

- Participated in evaluating damages claimed by the plaintiff as a result of the alleged patent infringement by seven defendants regarding a technology that claims to protect Linux-based servers against certain types of denial-of-service attacks. Evaluated the negotiating positions of plaintiff and defendants, including factors common across defendants as well as factors specific to each defendant. Analyses included determining the costs incurred by each defendant associated with implementing non-infringing alternatives. Assisted in evaluating plaintiff's damages expert report with regard to the claimed royalty payment structure, claimed royalty base, claimed royalty rate, and reasonableness checks performed by the opposing expert.

- Assisted in the evaluation of claimed reasonable royalty damages in a patent infringement matter in which a major e-commerce retailer was accused of infringing patents relating to sales force automation by offering automated online product recommendations. Analyses demonstrated that plaintiffs'

- damages and marketing experts overstated the defendant's revenues allegedly attributable to the accused recommendation features. Further demonstrated that plaintiff's damages expert opined to an incorrect royalty payment structure and overstated claimed royalty rate.

- Assisted in economic analyses relating to the amount to be paid by an enterprise resource planning software company for violating an injunction order prohibiting licensing or servicing of procurement software products that infringed plaintiff's patent. Analyses included an assessment of defendant's gains from failing to comply with the injunction. Assisted in evaluating analyses proffered by defendant's rebuttal damages expert, including rebutting a reasonable royalty analysis and analyses of the appropriate profit margin to be used for disgorgement purposes.

- Plaintiff, a manufacturer of hunting products, sued another manufacturer for the alleged infringement of two patents regarding spinning wing duck decoys. Assisted in evaluating plaintiff's lost profits, reasonable royalty, and future damages. Analyses included evaluating the *Panduit* conditions, determining the products plaintiff would have sold in the absence of the alleged infringement, deriving plaintiff's adjusted market share, determining incremental profitability, and calculating lost profits on lost unit sales. In addition to the patent infringement claims, plaintiff asserted that defendant falsely marked its products with expired patents. Evaluated the number of false marking-related offenses based upon different scenarios.

- A major search/content provider was alleged to infringe a patent related to a certain method of bid management used in paid search engines. Assisted in performing research regarding the evolution of sponsored search auctions; evaluating defendant's license agreements related to online advertising technology and their comparability to the hypothetical license in this case; analyzing the indicators of value for the patent-in-suit (such as licensing offers and plaintiff's sale of membership interest); and assessing defendant's own innovations regarding its sponsored search business model.

- A major manufacturer of portable digital music and video players was alleged to infringe two patents related to the playlist and podcast features. Assisted in evaluating plaintiff's apportionment of the claimed operating profits associated with the accused products to the accused features, including assessing the applicability of various survey results and performing reasonableness tests. Constructed the negotiating positions in a hypothetical licensor / licensee negotiation, including the plaintiff's sale attempts regarding the patents-in-suit, the factors contributing to the commercial success of the accused products unrelated to the patents-in-suit, the incremental benefits of the patents-in-suit over existing technologies, and the product risks and economic uncertainty at the time of the hypothetical negotiation.

- Assisted in evaluating plaintiff's royalty damages claim against three automobile manufacturers related to two patents that allegedly cover the integration of portable electronic devices (e.g., MP3 players) to a vehicle's sound system. Analyzed company-specific and iPod interface-related license agreements, determined the purchase costs of allegedly infringing vehicle components, and evaluated industry surveys regarding iPod integration. Developed alternative damages estimates under various findings by the trier-of-fact.

- In a patent infringement matter relating to the initiation of virtual private networks, participated in the evaluation of claimed royalty damages asserted against a major software manufacturer for allegedly incorporating the patented technology into its software applications. Analyzed valuations of the patented technology around the time of the hypothetical negotiation, the drivers of demand for the software applications allegedly embodying the patents-in-suit, and the parties' patent licensing approaches. Analyzed the three factors outlined in *Cornell University v. Hewlett-Packard* to determine if the application of the Entire Market Value Rule would be warranted. Analyzed the four factors

- enumerated in *eBay Inc. v. MercExchange* to determine if an injunction against the accused products would be warranted.

- Participated in evaluating damages claimed by the plaintiff as a result of the alleged patent infringement by three defendants (i.e., two major banks and an information technology outsourcing company) of a technology relating to check imaging, processing, and storage.  Assisted in the development of an alternative damages estimate based upon analyzing the plaintiff's financial performance and commercialization efforts around the time of the hypothetical negotiation, the Defendants' investments and net benefits associated with image enablement, the respective economic contributions of the parties to the successful commercialization of the accused instrumentalities, and the *Georgia-Pacific* factors.  Determined the costs associated with implementing non-infringing alternatives.

- Plaintiff, the owner of a patent related to a technology involving tire pressure monitoring system ("TPMS"), sued two automobile manufacturers for alleged patent infringement.  Evaluated the claimed historical and future reasonable royalty damages presented by the opposing expert.  One of the factors at issue was the federal mandate for vehicles to use TPMS and customer demand for TPMS prior to the federal mandate.  Assessed the royalty payment structure proffered by the plaintiff in light of the variations in TPMS purchase costs and the licensing approach generally used in the automobile industry.  Analyzed numerous license agreements produced by defendants in the case.

- A medical device manufacturer brought suit against three medical device manufacturers and a supplier for the alleged infringement of a technology relating to blood glucose monitoring devices.  Performed incremental profitability analysis, analyzed sales and market share data, and conducted market and industry research.  Conducted *Panduit* factor analysis and *Georgia-Pacific* factor analysis.  Calculated lost profits and reasonable royalty damages suffered by the plaintiff under different infringement findings.

- Assisted in the evaluation of reasonable royalty damages in a patent infringement matter involving flash drive technology.  Analysis included market research, review of license agreements, and calculation of accused product sales under various potential damages scenarios.  Assisted in *Georgia Pacific* factor analysis and determination of important negotiating positions in a hypothetical licensor / licensee negotiation.

- Assisted in evaluating damages suffered by the plaintiff as a result of the alleged infringement of the defendant relating to a technology concerning status feedback in home lighting control systems.  Analyzed various surveys of home lighting control system manufacturers, dealers, and end-users.  Used these surveys as inputs into the derivation of alleged infringing sales and market share data.  Analyzed plaintiff's competitors, pricing patterns, productive capacity, and geographic coverage in support of the lost profits claim.  Performed data analysis on a large database consisting of sales orders of accused products, identified ancillary sales, and calculated lost profits and royalty damages under multiple potential damages scenarios.

- Assisted in the evaluation of plaintiff's lost profits and reasonable royalty damages relating to DVR technology.  Analysis included an assessment of plaintiff's sales of DVR products and subscriptions in the absence of the infringement during the stay of the permanent injunction.  Performed an incremental revenue and cost analysis.  Assisted in the determination of a post-verdict royalty rate based upon the evidence and arguments found material to the granting of the injunction and the change in the parties' bargaining positions.  Also assisted in the evaluation of the damages the plaintiff sustained from the defendant's failure to comply with the court-mandated injunction.

- Plaintiff, the holder of a patent concerning six-degree-of-freedom control technology in the video game industry, sued a major video game system manufacturer for the alleged infringement of its patent. Assisted in the evaluation of plaintiff's claimed reasonable royalty damages. Conducted market and industry research, performed *Georgia-Pacific* factor analysis, evaluated plaintiff's royalty damages analysis, and provided an alternative royalty damages analysis. Also assisted in the evaluation of a post-trial reasonable royalty rate.

**Intellectual Property: Trademark Infringement**

- Assisted in quantifying economic damages due to plaintiff in a trademark infringement matter, including defendant's sales and profits attributable to the wrongful conduct and plaintiff's corrective advertising expenses to address confusion caused by the trademark infringement.

- Worked with defendants in a trademark and unfair competition litigation involving transcatheter prosthetic heart valve products. Assisted in the evaluation of claimed damages quantified under different approaches: loss of goodwill and harm to reputation, corrective advertising; and defendant's sales.

**Intellectual Property: Trade Secrets Misappropriation**

- Plaintiff claims that defendant, a competitor in aerospace extrusion manufacturing, misappropriated certain trade secrets relating to the process of manufacturing stretch form spar chords used in constructing wings of airplanes. Assisted in the evaluation of plaintiff's claimed monetary remedies: lost profits damages associated with lost sales to a major customer, price erosion damages on retained sales, unjust enrichment, and reasonable royalty damages.

- A mortgage origination company alleges that two former employees breached the non-solicitation provisions in their employment agreements and induced dozens of employees to join a competing company. Assisted in quantifying appropriate damages and/or remedies that compensate plaintiff for the alleged breaches of contract, wrongful solicitation of employees, misappropriation of confidential consumer loan data, and other legal theories.

**Intellectual Property: Copyright Infringement**

- In a suit brought by a software development and consulting company against a healthcare technology company for alleged copyright infringement, evaluated plaintiff's lost profits from defendant's reverse engineering and disgorgement of defendant's profits associated with usage of plaintiff's software. Supervised a team of professionals in analyzing numerous software licensing contracts between the plaintiff and its customers as benchmarks to evaluate the reasonableness of the plaintiff's contract with the defendant in the absence of the alleged wrongful conduct. Utilized a number of pricing options that were offered by plaintiff to defendant to determine plaintiff's lost maintenance and consulting revenues.

**Intellectual Property: Trade Dress Infringement**

- Assisted in the evaluation of compensatory damages suffered by a major mattress manufacturer due to a rival's alleged infringement of its trade dress and design patents. Analyses demonstrated a causal connection between defendant's alleged infringement and plaintiff's lost sales and lost profits. Analyses included an assessment of the defendant's profits earned through the infringement and an evaluation of plaintiff's lost profits and reasonable royalty damages.

**Intellectual Property: Commercial Success**

- Assisted in preparing a rebuttal declaration to the U.S. Patent and Trademark Office relating to the claimed commercial success of intrusion prevention systems ("IPS") asserted to practice a patent undergoing an Inter Partes reexamination. In determining that an economic nexus had not been established between the claimed teachings of the patent and the commercial success of stand-alone IPS products, analyses included evaluating the features not claimed by the patent at issue and the economic factors unrelated to the claimed invention that contribute to the commercial success of stand-alone IPS products.

**Antitrust**

- Work with a manufacturer of single-serve brewers and coffee pods in antitrust litigation filed by two competitors, a distributor, direct purchasers, and indirect purchasers. The alleged anticompetitive practices include monopoly leveraging, exclusionary conduct, illegal tying, abuse of market power, among other categories of claims. Led a case team in evaluating claimed damages, including alleged overcharges and lost profits damages from lost sales and increased costs of production.

- Plaintiff, a major airline, sued a travel technology company that operates a global distribution system ("GDS") for allegedly anticompetitive behavior relating to the provision of booking services to travel agencies. Led a case team in evaluating multiple components of plaintiff's damages claim, including claimed lost profits resulting from defendant's actions to allegedly impede the rollout of a competing technology for booking services, contractual restrictions that prevent the airline from offering targeted discounts to price sensitive customers, allegedly retaliatory booking fee increases, and the biasing of computer screens of travel agencies. Demonstrated the flaws in plaintiff's claimed damages models.

- Assisted in evaluating plaintiff's economic liability arguments an antitrust matter regarding plaintiff's claim that defendant monopolized or attempted to monopolize the business of manufacturing, selling and distributing magnetic brakes, components for magnetic brakes and magnetic braking systems for amusement park rides. Also assisted in evaluating claimed antitrust damages, including assumptions underlying opposing expert's damages model and economic causal connection between the alleged wrongful conduct and claimed losses.

**Breach of Contract**

- Assisted in evaluating economic damages suffered by a global distribution system operator as a result of a major airline company's breach of the confidentiality provision in its distribution agreement. At issue was the defendant's disclosure of confidential pricing information during plaintiff's contract negotiations with other major airline customers. Analyses included evaluating the impact of defendant's disclosure on pricing and other terms negotiated in the affected contracts. Assisted in determining plaintiff's lost revenues and lost profits due to defendant's disclosure.

- In a breach of contract matter involving alleged improper use of confidential information, performed an evaluation of plaintiff's claimed lost income calculation and lost corporate value calculation. Evaluated the clamed comparable company used in the market approach for assessing corporate value.

- Assisted in the evaluation of plaintiff's economic damages arising from the alleged wrongful termination of a workers' compensation insurance contract. Plaintiff – a provider of integrated workers' compensation insurance and payroll services – contended that its fronting company's alleged wrongful termination of a Managing General Agency Agreement negatively affected its ability to underwrite new business, causing harm to its revenues and business value. Assisted in the development of two approaches to quantify damages: a lost profits approach and a valuation approach. Under the

*Minh P. Doan, page 8*

lost profits approach, analyses included conducting research of the workers' compensation insurance market and insurance premium rate trend in California, analyzing customer retention data, and determining Plaintiff's lost profits from lost customers. Under the valuation approach, analyses included identifying comparable companies, evaluating selected financial variables for the relevant comparable companies, and assessing plaintiff's value in the absence of defendant's alleged wrongful conduct and comparing it to plaintiff's actual value.

- Assisted in evaluating plaintiff's damages claim in a breach of contract matter relating to the alleged disruption of a direct-response television campaign. Plaintiff, a golf equipment manufacturing company, claimed that the reserve requirement in a merchant credit card processing contract prevented it from continuing its marketing and advertising objectives. Analysis of various financial metrics and trends demonstrated that plaintiff's expert failed to take into account alternative reasons for plaintiff's declining financial performance. Analyses included evaluating the life cycle of direct response television and assessing the growth of comparable golf equipment manufacturing companies during the claimed damage period.

**Class Certification**

- Assisted in evaluating claimed injury and damages in a class action matter involving 5-hour Energy products. Plaintiffs allege that the products are misleadingly marketed as providing (five) hours of energy and containing "beneficial ingredients." Performed analyses to demonstrate the lack of an economic causal link between the challenged claims and economic injury as asserted by plaintiffs given (a) substantial repeat purchasing activity, (b) a variety of a factors influencing purchasing decision, and (c) varying beliefs regarding the challenged claims, and (d) significant variation in actual prices paid for the products. Demonstrated that Plaintiffs' claimed "energy underfill" damages did not have an appropriate nexus to the challenged claims and did not adequately account for the value that putative class members received from the challenged products. Class certification was denied.

- Plaintiffs allege to have paid a premium for Monster energy drinks as a result of various allegedly misleading on-label statements. Assisted in performing analyses to show the lack of a market-determined price premium, including showing that there was no discernible decrease in wholesale and retail prices of the challenged products following the removal of certain claims at issue. Evaluated Plaintiffs' conjoint survey from an economic perspective and found that the conjoint survey yields willingness-to-pay values that are unreasonably high relative to actual market prices of the challenged products. Class certification was denied.

- In a putative class action lawsuit, a beverages company was alleged to have misled consumers and caused them economic injury by marketing certain beverages as "All Natural" when they contained high fructose corn syrup. Assisted in evaluating Plaintiffs' position that standard economic analyses could be employed to quantify the alleged economic injury on a class-wide basis. Performed analyses of Nielsen retail sales data and demonstrated that wide variations existed in the beverages' retail prices across distribution outlets, across geographic areas, and across the time periods considered. Also demonstrated that promotional discounts and coupons significantly impact the actual prices paid by the putative class members. Reviewed product and marketing materials and assisted in the identification of benchmark products. A comparison of the average retail prices of the "All Natural" beverages to identified benchmark products did not provide economic evidence that the "All Natural" beverages possessed a systematic price premium as a result of the "All Natural" labeling. Class certification was denied.

- Led a case team in evaluating plaintiffs' use of a conjoint analysis and a hedonic regression to calculation claimed price premium in a consumer class action matter involving ovens equipped with a

self-cleaning feature. Class certification was denied, citing reasons consistent with the team's analyses that plaintiffs' conjoint analysis failed to adequately address supply-side considerations and plaintiffs' regression could not economically isolate the price impact of the challenged feature from certain non-challenged features and benefits of at-issue ovens.

- Assisted in evaluating plaintiffs' position that the alleged economic injury suffered by putative class members could be quantified on a class-wide basis for claimed false advertising related to label statements that sunscreen ingredients were naturally sourced. Analyses demonstrated that the plaintiffs' expert's proposed hedonic regression model used an improperly defined market, mis-categorized relevant product claims, and used an incomplete list of relevant control attributes for sunscreen products. Analyses further demonstrated that the plaintiffs' proposed damages models could not isolate a claimed price premium attributable to the alleged wrongful conduct from a price premium that may have existed for a correct interpretation of the challenged label statements. Class certification was denied.

- Assisted in evaluating plaintiffs' position that the claimed economic injury suffered by putative class members could be quantified on a class-wide basis for claimed under-filling of canned tuna products. Analyses of the plaintiffs' historical testing records over the putative class period demonstrated both the lack of under-filling in numerous testing samples from the putative class period, as well as variation in the amount of under-filling in particular testing samples from the putative class period, demonstrating the lack of economic injury and the lack of ability to quantify economic injury using common proof.

- Assisted in evaluating plaintiffs' position that claimed economic injury suffered by putative class members could be quantified on a class-wide basis for claimed false advertising relating to label statements on baby shampoo products claiming to use a natural oat formula. Assisted in performing before-and-after comparisons and benchmark product comparisons to demonstrate the likely lack of claimed price premiums associated with the challenged claims. Also assisted in evaluating plaintiffs' damages expert's proposed hedonic regression. Analyses demonstrated that the proposed regression suffered from numerous flaws, including mis-categorization of relevant product attributes, omission of relevant product attributes, and incomplete or inaccurate data.

- Assisted in evaluating plaintiffs' position that the claimed economic injury suffered by putative class members could be quantified on a class-wide basis in a matter relating to anti-aging skin care products marketed as preventing and repairing signs of aging "in just one week." Assisted in demonstrating that the approaches proposed by the opposing expert to calculate class-wide damages would not yield reliable or relevant estimates of the alleged harm suffered by individual putative class members. Arguments presented included that the large number of repeat buyers, the wide variations in the retail prices associated with the accused products, and the wide variations in the retail price differences relative to other anti-aging products would prevent a reliable calculation of putative class members' damages on a class-wide basis. Class certification was denied.

- In a putative class action lawsuit involving a food company, three products are alleged to be mislabeled: cooking sprays, canned tomato products, and hot cocoa products. Assisted in evaluating the common proof approaches proposed by the opposing expert to calculate a Class-wide monetary recovery, including restitution, restitutionary disgorgement, benefit of the bargain rule, and proportion of sales allegedly attributable to challenged claims. Assisted in demonstrating that calculation of monetary recovery for putative class members absent individualized analyses into (a) reasons for purchase, (b) the specific prices paid for the Challenged Products, (c) the specific prices of the alternative products, and (d) whether the Challenged Product purchased bore the Challenged Claims would not be reliable from an economic perspective. Class certification was denied.

- Assisted in evaluating plaintiff's position that the claimed economic injury suffered by putative class members could be quantified on a class-wide basis in a matter relating to margarita products marketed as "All Natural" when they contained the preservative sodium benzoate. Assisted in demonstrating that the "price premium" approach proposed by the opposing expert to calculate class-wide damages would not yield a reliable or relevant estimate of the alleged harm suffered by individual putative class members. Arguments presented included that the wide variations in the retail prices associated with the accused products, variations in putative class members' reasons for purchase, and variations in putative class members' opinions regarding sodium benzoate would prevent a reliable calculation of putative class members' damages on a class-wide basis. Class certification was denied.

- Assisted in evaluating Plaintiffs' position that the claimed economic injury allegedly suffered by putative Class members could be quantified on a class-wide basis in a matter relating to the issuance of a special assessment fee by a timeshare vacation club. Assisted in demonstrating that potential damages-related conflicts were likely to arise among putative Class members (including among the Named Plaintiffs) – making Class-wide proof an unreliable measure of economic injury for each putative Class member. Also assisted in demonstrating that evaluating claimed damages on a Class-wide basis would result in potentially awarding damages to putative Class members who suffered no injury.

- <u>Other Matters</u>.  Evaluated Plaintiffs' position that the economic injury allegedly suffered by putative class members could be quantified on a class-wide basis in class action lawsuits involving other consumer products, including (a) antibacterial hand soaps, (b) automobiles, (c) cereals, (d) colon health probiotic capsules, (e) orange juice products, (f) soft drinks, (g) pest control solutions, (h) complimentary services associated with eyeglass purchases, (i) tires, and (j) wet wipes.

**Loss of Earnings**

- Evaluated plaintiffs' claim that the alleged wrongful conduct of the defendants caused plaintiffs to lose their medical privileges in pediatric neurosurgery at a hospital and sustain past and future reduction in earnings. Analyzed financial data of the doctors' medical practice, the earnings life-cycle of physicians, and other potentially mitigating factors.

- Evaluated the claimed lost earnings suffered by a cardiologist as a result of the alleged wrongful termination of his privileges at a hospital. Analysis included evaluating the revenue growth of plaintiff's medical practice relative to claimed lost earnings, preparing critiques of plaintiff's expert's lost earnings damages model, and calculating alternative damages figures.

**PRESENTATIONS**

- "Tying Damages to Theory of Liability in Price-Premium Class Actions" (as part of "Consumer Class Action Litigation: Tips & Strategies for Your Firm in 2020 and Beyond" panel), The Knowledge Group, September 15, 2020

**HONORS**

- IAM Patent 1000: The World's Leading Patent Professionals, 2021 edition

# Exhibit B

**Estimated Profits Earned by the Duhammels' Stores**
**From Sales of Pet Connect Labeled Puppies at Puppies4Less and Palm Desert Puppy**
*2018 – 2020*

|  |  | 2018 | 2019 | 2020 | Total |
|---|---|---:|---:|---:|---:|
| **Number of Pet Connect Puppies Received from RAK** | | | | | |
| Palm Desert Puppy | [1] | 13 | 6 | 0 | 19 |
| Puppies4Less | [2] | 0 | 9 | 91 | 100 |
| **Estimated Revenue from Sales of Pet Connect Puppies** | | | | | |
| Palm Desert Puppy[a] | [3],[4] | $ 25,857 | $ 13,572 | $ - | $ 39,429 |
| Puppies4Less[a] | [3],[4] | $ - | $ 20,358 | $ 126,399 | $ 146,757 |
| **Estimated Fees Paid to RAK for Pet Connect Puppies** | | | | | |
| Palm Desert Puppy | [1] | $ 1,365 | $ 5,058 | $ - | $ 6,423 |
| Puppies4Less[b] | [5] | $ - | $ 6,147 | $ 62,153 | $ 68,300 |
| **Estimated Profits from Sales of Pet Connect Puppies** | | | | | |
| Palm Desert Puppy | | $ 24,492 | $ 8,514 | $ - | $ 33,006 |
| Puppies4Less | | $ - | $ 14,211 | $ 64,246 | $ 78,457 |
| **Total Profits** | | **$ 24,492** | **$ 22,725** | **$ 64,246** | **$ 111,463** |

**Notes:**

(a) As I have not been provided any financial data from the Duhammels' pet stores, I have estimated revenue by multiplying the number of puppies Puppies4Less and Palm Desert Puppies received from Pet Connect each year by the lowest average sales price from the Salinas Pet Stores for that respective year.  The following average sales prices were used each year: (i) in 2018, the lowest average sales price was $1,989 at Hello Puppies; (ii) in 2019, the lowest average sales price was $2,262 at Hello Puppies; (iii) in 2020, the lowest average sales price was $1,389 at National City Puppy.

(b) According to the Acquisition and Disposition Reports provided by Pet Connect, Puppies4Less (Temecula Puppies) received 9 puppies in 2019 and 91 puppies in 2020.  To estimate the fees paid by Puppies4Less to RAK for the transportation of the puppies, I have multiplied the number of puppies by the average fee paid to RAK per puppy in California, or $683.

**Sources:**
[1] Doan Exhibit 1.
[2] Doan Exhibit 3.
[3] Doan Exhibit 5.
[4] Doan Exhibit 7A.
[5] Doan Exhibit 2.