UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETCONNECT RESCUE, INC. et al.,<br><br>                                  Plaintiffs,<br><br>v.<br><br>DAVID SALINAS et al.,<br><br>                                  Defendants. | Case No.:  20-CV-00527-RSH-DEB<br><br>**ORDER (1) DENYING PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT; (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; (3) DENYING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST JASON DUHAMMEL; AND (4) OVERRULING DEFENDANTS' EVIDENTIARY OBJECTIONS**<br><br>**[ECF Nos. 224–28, 248, 254, 258]** |

This case arises from the alleged importation and sale of non-rescue dogs at California pet stores by Defendants, in violation of California Health & Safety Code § 122354.5. Plaintiffs PetConnect Rescue, Inc. ("PetConnect"), Lucky Pup Dog Rescue.com ("Lucky Pup"), and SCDR, Inc. d/b/a Second Chance Dog Rescue ("SCDR")

(collectively, "Organizational Plaintiffs") are three nonprofit animal rescue organizations that claim Defendants infringed on Plaintiffs' names and marks to disguise the sale of non-rescue dogs and bolster Defendants' reputations. *See* ECF No. 93 ¶¶ 1–3, 98–116. Plaintiff Sarah Gonzalez is an individual consumer alleging that she was defrauded into purchasing a non-rescue puppy from Defendants. *Id.* ¶ 147–50.

Defendants Brian Mohrfeld, Select Puppies, Inc., Pet Connect Rescue, Alysia Rothman, Ray Rothman, David Salinas, Veronica Salinas, Richard Pena, Virgo Castro Zusa, Yellow Store Enterprises, LLC, The Puppy Store, LLC, National City Puppy, LLC, The Fancy Puppy, LLC, The Puppy Store Las Vegas, LLC, and SoCal Puppy Adoptions, Inc. (collectively "Moving Defendants") move for summary judgment on all claims in the Second Amended Complaint as well as on their applicable affirmative defenses. ECF Nos. 225–28. In response, Plaintiffs have filed a Cross Motion for Summary Judgment as to all Defendants remaining in this case. ECF No. 248. These motions have been briefed. *See* ECF Nos. 253–58, 265–66. Also pending are Plaintiffs' Motion for Default Judgment against Defendant Jason Duhammel (ECF No. 224) and Moving Defendants various evidentiary objections to Plaintiffs' Statement of Facts (ECF No. 254-1; ECF No. 254-2; ECF No. 258-1).

For the reasons discussed below, the Court grants in part and denies in part Moving Defendants' Motions for Summary Judgment; denies Plaintiffs' Cross Motion for Summary Judgment; denies Plaintiffs' Motion for Default Judgment; and overrules Moving Defendants' evidentiary objections.

/ / /

/ / /

/ / /

/ / /

/ / /

# I.    Procedural History[1]

On March 20, 2020, Plaintiff PetConnect filed this action against Defendants David Salinas, Veronica Salinas, Richard Robles Pena, The Puppy Store, LLC, Yellow Store Enterprises, LLC, SoCal Puppy Adoptions, Inc., Pet Connect Rescue, Inc., Alysia Rothman, Ray Rothman, Jase Shamore, Critters and Pets/Furry and Feather, LLC; Rickie Gallardo; and 360 Clean N Go, LLC. ECF No. 1 at 2. Plaintiff PetConnect brought three claims for unfair business practices, trade libel, and negligence in its original Complaint, and simultaneously moved *ex parte* for a temporary restraining order. *See* ECF Nos. 1, 3.

On April 3, 2020, Defendants moved to dismiss Plaintiff PetConnect's Complaint, claiming that PetConnect failed to satisfy the requirements for diversity jurisdiction. *See* ECF Nos. 10, 14–15. Shortly thereafter, Plaintiff PetConnect filed an amended complaint, adding Plaintiffs Lucky Pup and Gonzalez, 17 additional Defendants, and federal causes of action under the Lanham Act. ECF No. 16. Because Plaintiffs' First Amended Complaint superseded the original complaint, the Court denied Defendants' motions to dismiss as moot. ECF No. 18 at 2.

In April and May 2020, several Defendants moved to dismiss and/or strike sections of the FAC. *See* ECF No. 27, 31, 33, 38–44. The Court denied all the motions. ECF No.

---

[1]    This procedural history does not include the full state court proceedings involving Plaintiffs' counsel and some of the Moving Defendants. *See Companion Animal Protection Society v. Salinas*, Case No. 37-2020-00004999-CU-BT-CTL, Superior Court of California, County of San Diego (2020); *Animal Protection and Rescue League, Inc. v. Salinas*, Case No. 37-2019-00065377-CU-BT-CTL, Superior Court of California, County of San Diego (2019). The Superior Court granted injunctions in both cases. In *Companion Animal Protection Society*, the court granted a temporary restraining order prohibiting David Salinas, National City Puppy, LLC, Broadway Puppies, Pups & Pets, and The Puppy Store, LLC from selling any puppies in San Diego, and prohibiting Pet Connect Rescue from doing business in California. *See* ECF. No. 248-14, Ex. 46. In *Animal Protection and Rescue League*, the court granted a preliminary injunction prohibiting David Salinas and National City Puppy, LLC from selling dogs and puppies in National City, California. *See id.*, Ex. 47.

48, 54. On May 20, 2020, the Court also denied Plaintiff PetConnect's request for a temporary restraining order. ECF No. 36.

On November 9, 2020, Plaintiffs moved for, and were granted, leave to file a Second Amended Complaint ("SAC"). *See* ECF Nos. 85, 91. The SAC, which is the operative pleading, added Plaintiff SCDR and Defendants Brian Mohrfeld, Select Puppies, Inc. ("Select" or "Select Puppies"), Red Rock Enterprises of Utah, Inc., Anita Chavira, and John Duhammel. ECF No. 93. Several Defendants previously named in the FAC were removed.[2]

The SAC brought nine causes of action for trademark infringement, dilution, and false advertising under the Lanham Act; unfair business practices under California's Unfair Competition Law; violation of California's Consumer Legal Remedies Act ("CLRA"); fraudulent deceit; and trademark infringement, unfair competition, and false advertising under California common law.[3] *Id.* On January 20, 2021, several Defendants filed their Answers, each asserting 42 affirmative defenses. ECF Nos. 96–103.

On May 3, 2021, the Parties filed a joint motion to dismiss Defendant Rickie Gallardo and 360 Clean N Go, LLC, informing the Court that a settlement had been reached. ECF No. 120. The Court subsequently dismissed these Defendants from the instant action without prejudice. ECF No. 121.

_____

[2] On October 30, 2020, the Court dismissed Defendants Jase Shamore, Ryan Lorenz, Critters and Pets/Furry and Feather, LLC, and Life7, LLC, upon the parties' joint motion to dismiss. *See* ECF Nos. 83–84. The SAC also removed as Defendants Trevor Duggan, Cindy Lee Duhamell, Josh Anguino, Broadway Puppies, Pups & Pets, Villaggio Family Pets, Town Puppies, and Temecula Puppies. *See* ECF No. 93.

[3] The claim styled as Plaintiffs' "Eighth Cause of Action"—brought by Organizational Plaintiffs against all Defendants—is for accounting. ECF No. 93 at p. 29. However, the claim for an accounting is an equitable remedy, rather than a cause of action. *See Nguyen v. JP Morgan Chase Bank*, No. Bo. SACV11-01908, 2012 WL 13019941, at *4 (C.D. Cal. Apr. 16, 2012) ("Courts in California generally classify an accounting as a remedy and not a cause of action."); *see also First Pac. Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1125 (9th Cir. 2000) ("The remedy sought here is an equitable one, an accounting.").

On September 17, 2021, Defendants Mohrfeld and Select moved to dismiss all claims asserted against them in the SAC. ECF No. 137. After a hearing (*see* ECF No. 158), the Court denied the motion on November 8, 2021, noting that the arguments presented were better suited for a summary judgment motion when the record is more fully developed. ECF No. 159. Mohrfeld and Select filed their Answer to the SAC on December 7, 2021, asserting 42 affirmative defenses. ECF No. 174.

On February 14, 2022, Plaintiffs Lucky Pup and SCDR moved to dismiss their claims against Mohrfeld and Select. ECF No. 206. The Court granted Plaintiffs' motion. ECF No. 207.

On April 22, 2022, Moving Defendants filed their four pending Motions for Summary Judgment. ECF Nos. 225–28. On May 23, 2022, Plaintiffs filed the pending Cross Motion for Summary Judgment and Combined Opposition to Defendants' Summary Judgment Motions. ECF No. 248.

On January 12, 2023, the Court held a hearing (the "Hearing") on the pending Motions for Summary Judgment and Cross-Motion for Summary Judgment. *See* ECF No. 281. The motions were then taken under submission. *Id.*

## II.   Background

### A.   Organizational Plaintiffs

Plaintiff PetConnect, a Maryland nonprofit 501(c)(3) organization, was founded in the wake of Hurricane Katrina in 2005 to rescue pets and reunite them with their families. ECF No. 225-4 at pp. 28–29. It has since been operating as an animal rescue organization for over 16 years, serving Washington, D.C., Maryland, and Virginia. *Id.* at pp. 28–30. Throughout this time, Plaintiff PetConnect marketed itself through various channels, including the radio, television, newspapers, magazines brochures, and merchandise. *Id.* at pp. 38–39. Plaintiff PetConnect has also gained a social media presence through its accounts on Facebook, Instagram, and Twitter. *Id.* at p. 43.

5

Plaintiff PetConnect's founder and board member, Lizette Chanock, oversees the primarily volunteer-based organization. *Id.* at pp. 23–24.[4] In her deposition, Chanock testified that Plaintiff PetConnect has rescued and placed thousands of animals locally, but she could not recall that it ever placed any dogs in California. *Id.* at p. 34. Plaintiff PetConnect began receiving numerous calls from individuals complaining about Defendant Pet Connect, believing the two corporations to be the same. *See id.* at pp. 68–70. Chanock testified that she "found out about the whole thing" because individuals were contacting Plaintiff PetConnect based on information they saw or received at certain pet stores. *Id.* at p. 68. Some callers expressed anger toward Plaintiff PetConnect for selling dogs from breeders. *See id.* at 69–70. Chanock's testimony distinguishes Plaintiff PetConnect's practice of "rescu[ing] dogs and cats from shelters that are high risk of euthanasia" from animals provided by "puppy mills."[5] *See id.* at 24–25, 65.

---

[4]    Exhibit D of Defendants Mohrfeld and Select contain excerpts from Chanock's deposition transcript. *See* ECF No. 225-4, Ex. D. Because the transcript pages are not numbered, the Court refers to the page number generated by CM/ECF.

[5]    When passing AB 485, which added § 122354.5 to California's Health & Safety Code, the legislature defined "puppy mills" as follows:

> "Puppy Mills" or "Kitty Factories" are common terms for large commercial breeding facilities that mass produce animals for sale at retail markets. It is estimated that there are 10,000 puppy mills in the United States. These are separate from other types of breeders who produce a smaller quantity of animals and typically in California do not sell directly to retail pet outlets; however, there are no restrictions on pet stores as to where they can acquire animals for retail sale. Mass produced, commercial animal breeders are typically scrutinized for their treatment of the animals including producing sick animals, inhumane treatment, and providing abhorrent living conditions. This bill aims to limit the sales of animals in California that are from "puppy mills," "kitten factories" or other commercial breeding facilities and to help ensure that available shelter animals are a source of animal sales.

Assembly Floor Analysis for AB-485, California Legislative Information (Sep. 13, 2017), https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201

1    Plaintiff PetConnect owns three of the federal trademarks at issue in this case: a
2    standard character mark for "PETCONNECT RESCUE WHERE ANIMALS ARE ONE
3    STEP CLOSER TO HOME" (Reg. No. 6040306) registered on April 28, 2020; a standard
4    character mark for "PETCONNECT RESCUE" (Reg. No. 6581377) registered on
5    December 7, 2021; and a logo incorporating the name "PETCONNECT RESCUE" (Reg.
6    No. 6581378) registered on December 7, 2021.[6] ECF No. 226-5 at p. 95; ECF Nos. 248-
7    14, Exs. 38–39.

8    Plaintiff Lucky Pup, a California nonprofit 501(c)(3) organization founded in 2010,
9    rescues dogs from high-kill shelters in Southern California. ECF No. 248-8 ¶ 2. Lucky Pup
10   used the names "Lucky Pup Dog Rescue" and "Lucky Pup Dog Rescue of San Diego" in
11   its mailings, communications, and website. *Id.* ¶ 6. Defendant SoCal Puppy Adoptions,
12   Inc. ("SoCal Puppy") listed "Lucky Pup Dog Rescue of San Diego" as one of the
13   organizations SoCal Puppy supported with donations. *Id.* ¶ 5. According to founder and
14   board member Christine Haslet, Lucky Pup has never received donations from SoCal
15   Puppy or any of the other Defendants. *Id.* ¶ 15.

16   Plaintiff SCDR is a California nonprofit 501(c)(3) organization founded in 2008 that
17   rescues, rehabilitates, and rehomes dogs from local shelters and from Baja California,
18   Mexico. ECF No. 248-4 ¶ 2. SCDR's Board President, Linda Acosta, stated in a declaration
19   that SCDR used its name and mark ("Second Chance Dog Rescue") for over 14 years. *Id.*
20   ¶ 7.

21   / / /
22   / / /
23   / / /
24   / / /

25
26   _____
27   720180AB485#.
     [6]    All three marks were registered after the instant action was originally filed in March
28   2020. The registration of the latter two marks postdates the SAC.

1   **B.     Plaintiff Gonzalez**

2       On December 15, 2019, Plaintiff Gonzalez purchased a puppy for her family from a

3   pet store called "Town Puppies" in Temecula, California for $2,000.27.[7] ECF No. 248-6

4   ¶ 2. The puppy, later named Charlie, was a pug-beagle mix (also known as a "puggle").

5   ECF No. 225-4, Ex. E (Gonzalez Dep.) at pp. 159–60. Gonzalez testified that an employee

6   of Town Puppies told her that Charlie was a rescue, and the information displayed on

7   Charlie's cage (known as a "cage card") stated that he was from "Pet Connect Rescue."

8   ECF No. 225-4 at pp. 164, 166.

9       Although Gonzalez and her family were "looking into a rescue dog," she

10  acknowledged she was not looking to purchase to a dog that specifically came from

11  Plaintiff PetConnect or any other rescue organization. *Id.* at pp. 160–61, 166–67. In a

12  declaration accompanying Plaintiffs' Cross Motion for Summary Judgment, Gonzalez

13  represented that seeing the name "Pet Connect Rescue" made her "feel good about the

14  purchase, as the name sounded like a reputable rescue organization," and the name was

15  "part of what made [her] decide to make this purchase." ECF No. 248-6 ¶ 4.

16      A couple weeks after purchase, Charlie became severely ill, causing Gonzalez to

17  spend over a thousand dollars on veterinarian visits and treatment.[8] *See* ECF No. 225-4 at

18  p. 169; ECF No. 248-6 ¶¶ 5, 11. Gonzalez testified that Charlie suffered from pneumonia,

19  ear problems, worms, allergies, and limping. *Id.* at pp. 170, 175. As of January 2022,

20  Charlie no longer had these health issues. ECF No. 225-4 at p. 175.

21

22

23

24  [7]     Gonzalez testified that she thought the price was "a little high," and she spoke with
25  an employee of Town Puppies regarding this issue. ECF No. 225-4 at p. 168. Gonzalez
26  could not recall the explanation that the employee provided.
    [8]     During her deposition, taken in January 2022, Gonzalez estimated that she had spent
27  $5,000 on veterinarian bills. ECF No. 225-4 at p. 156. In a subsequent declaration dated
    May 13, 2022, she stated that veterinarian bills totaled $1,682.98 as of February 2022. ECF
28  No. 248-6 ¶¶ 5, 11.

Gonzalez returned to Town Puppies and informed the store that Charlie was sick. *Id.* at p. 170. She testified that the store told her to "file a claim with their insurance," and she did not seek to return Charlie because her family had grown attached to him. *Id.* In her declaration, Gonzalez stated that she also sent an email to initiate a claim and received a response from Demetrius Shoemaker (also known as Demetrius Shamore, a former defendant in this case) on December 27, 2019. ECF No. 248-6 ¶ 7. Shamore told Gonzalez that she would get $330.89 in store credit. *Id.* ¶ 9.

Gonzalez then emailed Plaintiff PetConnect, believing it was the rescue organization that provided Charlie. ECF No. 225-4 at 170. She testified that she found Plaintiff PetConnect's email address by searching on Google for the name she saw on Charlie's cage. *Id.* at pp. 171–72. Plaintiff PetConnect responded to her email, and Gonzalez learned that Plaintiff PetConnect did not have any involvement with Town Puppies or Charlie. *See id.* at p. 171; ECF No. 248-6 ¶ 12.

### C.    Defendants Alysia Rothman, Ray Rothman, and Pet Connect Rescue, Inc.

Defendants Alysia and Ray Rothman own and operate Pet Connect Rescue, Inc. ("Pet Connect"), a 501(c)(3) nonprofit corporation based in Missouri (collectively "Rothman Defendants"). ECF No. 225-4, Ex. B ¶ 2. Ray Rothman (hereinafter "Rothman") is both the president and a board member, and Alysia Rothman, his wife, is another board member. ECF No. 225-4 at p. 198; ECF No. 226-4 ¶ 1; ECF No. 228-8 ¶ 1. Pet Connect was created and incorporated on or around January 26, 2018 and began providing puppies to retail stores later that year.[9] *See* ECF No. 225-4, Ex. A ¶ 9; ECF No. 258-3 ¶ 7.

In a declaration, Rothman represented that all dogs obtained by Defendant Pet Connect, including Charlie, were rescue dogs and that retail stores paid the shipping costs for the dogs. *See* ECF No. 228-8 ¶ 3; ECF No. 258-3 ¶ 5. He stated that he chose the name "Pet Connect Rescue, Inc." "simply because [he] liked it" and no other entity was using

---

[9]    Rothman testified in his deposition that Defendant Pet Connect was "started in 2018," and its first rescue was in February 2018. ECF No. 225-4 at 9. 198.

the name in Missouri. ECF No. 228-8 ¶ 6; ECF No. 258-3 ¶ 8. He represented that he never heard of Plaintiff PetConnect prior to being sued. *Id.*

Rothman testified in his deposition that people do not adopt animals directly from Defendant Pet Connect, nor does it ever take physical possession of animals. ECF No. 248-14, Ex. 50 ("Rothman Dep.") at 17:16–18, 18:3–6. Instead, Defendant Pet Connect "match[ed] people with rescue animals." *Id.* at 18:1–2. When Plaintiffs' counsel asked Rothman about the puppies Defendant Pet Connect received, Rothman described them as "rescues" because they were "donated"—*i.e.*, Defendant PetConnect did not pay for these puppies because they were "unsellable, or something to that effect." ECF No. 225-4 at p. 205. In 2019 and 2020, Defendant Pet Connect provided animals directly to pet stores in California.[10] Rothman Dep. at 23:11–15. Defendant Pet Connect is no longer in operation and presently exists only for the purposes of the pending litigation. ECF No. 258-1 ¶ 51. While in operation, Defendant Pet Connect provided thousands of puppies to pet stores.[11] ECF No. 218-1 at 480–1767 (A&D Reports).

Rothman also owns and operates two trucking companies for the shipping of dogs: RAR Transport ("RAR") and RAK Transport ("RAK"). ECF No. 228-8 ¶ 5; Rothman Dep. at 27:1–5. RAR owns the vans that transports the dogs, and RAK is a transport brokerage company that "set[s] up the deliveries." Rothman Dep. at 30:1–6. RAK charged pet stores a fee for its transportation services, and Rothman would receive a part of the profits. *Id.* at 30:20–22, 109:1–4. Rothman denied, however, that there was any payment for the puppies themselves. *Id.* 107:16–108:2.

---

[10]     Defendant Pet Connect provided puppies for a limited time in early 2019 through an organization called Bark Adoptions, and then directly to California pet stores in 2019. ECF No. 258-3 ¶ 10. Rothman further clarified in a declaration that Defendant Pet Connect did not have "a physical presence in California." ECF No. 258-3 ¶ 4.

[11]     Plaintiffs represent that Rothman Defendants sold a total of 7,414 puppies to pet stores labeled "Pet Connect Rescue" from April 1, 2019 to April 22, 2021. ECF No. 248-1 at 13.

In addition to his work related to Pet Connect, RAR, and RAK, Rothman is the manager of Select. *Id.* at 71:19–24. Rothman testified that RAK would contact Select regarding the availability of vans to transport dogs. *Id.* at 74:25–75:5.

### D.    Salinas Defendants

Defendants David and Veronica Salinas are the sole owners of Defendant Red Rock Enterprises of Utah, Inc. ("Red Rock"), which owns Defendant Yellow Store Enterprises, LLC ("Yellow Store"), the owner of several Defendant entities that operate pet stores in Southern California.[12] ECF No. 258-1 ¶¶ 1–2; *see* ECF No. 248-13, Exs. 1–2. Defendant Richard Robles Pena, the manager of Yellow Store, operated all the stores and was responsible for procuring puppies for sale, including from Defendant Pet Connect. ECF No. 258-1 ¶¶ 3, 54; ECF No. 258-4 ¶ 2. Defendant Virgo Castro Zusa is the Managing Member of Yellow Store. ECF No. 258-1 ¶ 104. Plaintiffs allege that these Defendants (collectively "Salinas Defendants") worked with Rothman Defendants to sell non-rescue puppies mislabeled as "rescues" from "Pet Connect Rescue." ECF No. 93 at p. 7.

Notably, three email chains exchanged between David Salinas (hereinafter "Salinas") and Rothman in early 2020 reference payment amounts or invoices. *See* ECF No. 248-13, Exs. 5, 15, 18. On January 21, 2020, Rothman wrote to David Salinas:

> Here are the amounts we are running today.
> Let me know if there are any problems.
>
> Fancy 1/6 invoice for $15732
> National 1/6 invoice for $9885
> Hello 1/6 invoice for $15778
> Broadway 1/6 invoice for $15340
> Pups 1/6 $17319

---

[12]    Defendant Yellow Store owns Defendants National City Puppy, LLC, The Fancy Puppy, LLC, and The Puppy Store Las Vegas, LLC. *See* ECF No. 248-13, Ex. 2; ECF No. 228-5 ¶ 2. The now-closed pet stores include The Puppy Store, LLC; National City Puppy in National City; Broadway Puppies in Escondido; Pups & Pets in Santee; Hello Puppies in Temecula; and Fancy Puppy in Corona (collectively, the "Pet Stores"). *See* ECF No. 228-5 ¶ 2; ECF No. 248-13, Ex. 2; ECF No. 227-1 at 2; ECF No. 248-13, Ex. 28.

ECF No. 248-13, Ex. 5.

On March 4, 2020, Salinas wrote to Rothman: "We currently have 6 pups with Parvo . . . what's going on???? Please deep clean and if we can get a discount on the next shipment that would be helpful." ECF No. 248-13, Ex. 15. The following day, Rothman responded, "David we have been seeing a few cases here and here. This time of year it seems to be higher. I will get you a good discount on the last two week invoices." *Id.*

On April 2, 2020, Rothman provided Salinas the following information in an email with the subject line, "Re: Totals for this week":

Broadway
3/9 $10415
3/16 $9685

Hello
3/9 $10625
3/16 $11325

Fancy
3/9 $10025
3/16 $15600

Pups
3/9 $10880
3/16 $12085

ECF No. 248-13, Ex. 18.

Salinas Defendants confirm that Salinas and his employees helped Defendant Pet Connect draft its brochure, referred it to incorporators, and helped obtain the required cooperative agreements from shelters and other rescue organizations on behalf of Pet Connect. ECF No. 258-2 ¶ 3; *see* ECF No. 248-13, Exs. 6–7, 9–10, 14, 19–22. However, Salinas Defendants deny that they purchased puppies from Defendant Pet Connect. *See id.* ¶ 2; *see also* ECF No. 228-5 ¶ 4. Rather, Salinas represents in a declaration that Defendant Rothman emailed him "shipping charges" for RAK Transport LLC to deliver puppies to Yellow Store retail stores. ECF No. 258-2 ¶ 2.

**E.     Mohrfeld and Select**

Defendant Mohrfeld is the owner and sole shareholder of Select, an Iowa entity created in 2019 that employs between 30 to 40 people. *See* ECF No. 225-4, Ex. A ¶¶ 2, 5; ECF No. 248-14, Ex. 51 ("Mohrfeld Dep.") at 11:8–10, 47:15–17. In a declaration, Mohrfeld describes Select as a broker of dogs that buys and sells dogs for a profit.[13] ECF No. 225-4, Ex. A ¶ 3. It is neither a breeder nor a rescue organization. *Id.* Although Select has vehicles for delivery and transportation of dogs, Mohrfeld states that is not Select's primary business. *Id.* Mohrfeld does not work at Select full-time but checks on the status and progress of the business. *Id.* He does not buy, sell, or ship dogs in his individual capacity. *Id.* ¶ 6. In his deposition, Mohrfeld testified that Select operates from a building, where puppies are brought in from breeders on Tuesday and shipped out on Friday or Saturday. Mohrfeld Dep. at 11:14–12:8.

Mohrfeld hired Rothman in August 2019 to act as a manager and oversee the employees and accounting for Select.[14] ECF No. 225-4, Ex. A ¶ 8; ECF No. 225-4 at p. 209; ECF No. 258-3 ¶ 11. Mohrfeld testified in his deposition that Rothman was "in charge on how the company runs." *Id.* at 20:25–21:1. For example, Rothman was able to use Select's trucks without authorization from anyone else and make purchases on Select's behalf. *See id.* at 23:3–18, 64:3–5. Rothman testified in his deposition that Defendant Pet Connect would place animals on vehicles rented from Select. Rothman Dep. 71:9–18, 74:12–21.

---

[13]     Mohrfeld stated that some dogs Select receives that have medical issues or are "unsaleable" are given away. ECF No. 225-4, Ex. A ¶ 3.

[14]     Prior to Select, Mohrfeld owned a company called Choice Puppies. Mohrfeld Dep. 17:8–12. When Choice Puppies went out of business, Mohrfeld started Select. *Id.* Rothman previously worked as a manager at Choice Puppies, and part of his job there was to sell puppies. *See* Rothman Dep. 47:15–24. Rothman testified that he was "let go" from Choice Puppies around June 2019, before it shut down. ECF No. 225-4 at p. 200. He began working for Select a couple weeks later. *Id.* at p. 208.

Mohrfeld stated in his declaration that he was unaware that Rothman owned Defendant Pet Connect at the time Rothman began working for Select. ECF No. 225-4, Ex. A ¶ 9. Neither Mohrfeld nor Select hold any interest in Defendant Pet Connect. *Id.* Mohrfeld also stated that he had never heard of Plaintiff PetConnect before his involvement in the instant action. *Id.* ¶ 7.

Select tracked the dogs it bought and sold using Acquisition and Disposition ("A&D") Reports. *Id.* ¶ 12. According to Mohrfeld and Rothman, none of these reports contained Plaintiffs' trademarks, tradenames, or any derivation of them.[15] *Id.* ¶¶ 11–12; ECF No. 225-4, Ex. B ¶ 6. Rothman further stated in a declaration that his "review or those A&D Reports . . . confirmed that Select has never directly sold or donated any dogs" to Defendant Pet Connect, or any pet stores in California. ECF No. 225-4, Ex. B ¶¶ 7–8.

### F.    SoCal Puppy Adoptions, Inc.

Defendant SoCal Puppy Adoptions, Inc. ("SoCal Puppy") is a California nonprofit corporation founded in January 2019 that has since ceased operations due to the COVID-19 pandemic. ECF No. 228-3 ¶¶ 1, 3; *see* ECF No. 248-13, Ex. 27.[16] As of February 2019, the Chief Executive Officer ("CEO") was David Salinas; the Secretary was Veronica Salinas; and the Chief Financial Officer was Mauricio Chamat. *See* ECF No. 248-13, Ex. 11. In February 2020, the corporation information was amended to substitute Richard Pena as the CEO and Julia Munoz as the Secretary. *See* ECF No. 248-13, Ex. 12.

SoCal Puppy represented on its website, socalpuppyadoptions.org, and on flyers that it was an "open admission animal rescue" and "supported our local shelters with

---

[15]    Defendants note that all A&D Reports since Select's inception have been produced but were not attached to Mohfeld's Motion for Summary Judgment given their volume of almost 5,000 pages. *See* ECF No. 225-4, Ex. A ¶ 12. In their declarations, Mohrfeld and Rothman represent that they have reviewed and performed a word search on the computer of these reports. *See id.*; ECF No. 225-4, Ex. B ¶ 6.

[16]    The Business License Certificate, issued by the City of Escondido, California, identifies Richard Pena and Julia Munoz as the owners/officers. ECF No. 248-13, Ex. 27.

donations." ECF No. 248-7 at pp. 3, 7; *see* ECF No. 248-13, Ex. 26. In March 2020, SoCal Puppy gave a $100 donation each to Plaintiffs Lucky Pup and SCDR. *Id.* ¶ 5; ECF No. 248-4 ¶ 14. The SoCal Puppy website identified Lucky Pup and SCDR as recipients of these donations, under the header, "We support our local shelters with donations." ECF No. 228-3 ¶ 5; ECF No. 248-7 ¶ 9. However, Plaintiff Lucky Pup denied that it ever received a donation, and SCDR later returned $100 to SoCal Puppy. *Id.*; ECF No. 248-8 ¶ 15.

In a letter accompanying the refunded amount dated April 10, 2020, Plaintiff SCDR wrote that the $100 was initially deposited because "[t]he check purported to be a legitimate charitable donation." ECF No. 248-4, Ex. 1. SCDR explained that the amount was being refunded because "[t]here is no possibility that [SCDR] would ever accept nor affiliate with anyone who sells dogs in a commercial setting or for personal financial gain." *Id.* SCDR further demanded that SoCal Puppy "immediately remove from all communications including websites and electronic media, any reference to [SCDR]" and stated that SCDR did not authorize the use of its name or logo to anyone. *Id.* However, SCDR represents that SoCal Puppy continued to list SCDR on its website until December 2020, even at the time the SAC was filed. ECF No. 248-4 ¶ 17. The website has since been removed. ECF No. 248-4 ¶ 4.

The President of SoCal Puppy, Jose Roman Garcia, stated in a declaration that SoCal Puppy was only able to place four rescue dogs during the period it was operating. *Id.* ¶ 3. Garcia further represented that SoCal Puppy had no relationship with the Rothman Defendants, financial or otherwise, and never paid compensation to breeders or brokers for these dogs. *Id.* ¶¶ 3–4.

## III.   Legal Standard for Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The movant always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden by: (1) presenting evidence that negates an essential element of the nonmoving party's case; or (2) demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id*. at 322–23.

If the movant fails to discharge its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970). If the moving party meets its initial burden, however, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 242, 252). Rather, the nonmoving party must "go beyond the pleadings" and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). It is not the job of the Court "to scour the record in search of a genuine issue of triable fact." *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir.1995)).

On summary judgment, the Court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255. Further, when the parties file cross-motions for summary judgment, the district court must consider all of the

evidence submitted in support of both motions to evaluate whether a genuine issue of material fact exists precluding summary judgment for either party. *See The Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1135 (9th Cir. 2001). "The filing of cross-motions for summary judgment does not mean that material facts are undisputed, and the denial of one motion does not necessarily require the granting of the other." *Congdon v. Uber Techs., Inc.*, 291 F. Supp. 3d 1012, 1020 (N.D. Cal. 2018) (citing *Regents of Univ. of Calif. v. Micro Therapeutics, Inc.*, 507 F.Supp.2d 1074, 1077–78 (N.D. Cal. 2007)).

## IV.    Plaintiffs' Cross Motion for Summary Judgment

As an initial matter, Plaintiffs' Cross Motion for Summary Judgment contains almost no legal argument. ECF No. 248. Plaintiffs instead provide over 25 pages of background and generic legal standards pertaining to the Lanham Act, leaving the Court to connect the facts to their various claims. *See* ECF No. 248-1. The Court cannot "manufacture arguments" for the Plaintiffs, nor is it obligated to hunt for them in the briefs. *See Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (declining to address claims that were not accompanied by legal argument). The Court therefore summarily denies Plaintiffs' Cross Motion for Summary Judgment (ECF No 248) and turns to the merits of Moving Defendants' Motions for Summary Judgment.

## V.    Plaintiff PetConnect's Trademark Infringement Claim

In Plaintiffs' first cause of action, Plaintiff PetConnect alleges all Defendants violated section 32 of the Lanham Act by infringing on its mark "PETCONNECT RESCUE WHERE ANIMALS ARE ONE STEP CLOSER TO HOME" (the "Slogan Mark").[17] *See* ECF No. 93 at pp. 10, 13. Moving Defendants seek summary judgment on Plaintiff PetConnect's section 32 claim, arguing that that they never used the Slogan Mark. *See* ECF No. 225-1 at 4, 7; ECF No. 226-1 at 6; ECF No. 227-1 at 6–7; ECF No. 228-1 at

---

[17]    The Slogan Mark is the only registered trademark identified in the SAC. *See* ECF No. 93 ¶ 51.

5–6. For the reasons discussed below, the Court grants summary judgment in favor of Defendants Mohrfeld, Select, and SoCal Puppy, and denies summary judgment as to Rothman Defendants and Salinas Defendants.

### A.  Section 32 of the Lanham Act

"The Lanham Act was intended to make actionable the deceptive and misleading use of marks and to protect persons engaged in commerce against unfair competition." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767–68 (1992) (internal edits and quotation marks omitted). Section 32 of the Lanham Act prohibits the use in commerce of a registered mark without the registrant's consent. *See* 15 U.S.C. § 1114. Liability under this section is established if (1) a plaintiff owns a "valid and protectable" trademark and (2) a defendant "subsequently and without authorization used a similar mark likely to cause consumer confusion, deception or mistake." *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1072 (C.D. Cal. 2004) (citing *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1046, 1046–53 (9th Cir. 1999)). A mark is "deemed to be in use in commerce . . . when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services." 15 U.S.C. § 1127 ("use in commerce" definition (2)). As applied to goods (or in this case, puppies and dogs), use in commerce requires that the mark be "(A) placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and (B) the goods are sold or transported in commerce." 15 U.S.C. § 1127 ("use in commerce" definition (1)(A)–(B)).

### B.  Valid and Protectable Mark

Validity of the trademark is a threshold question since "[a] necessary concomitant to proving infringement is, of course, having a valid trademark; there can be no infringement of an invalid mark." *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th

Cir. 2002). "Although the plaintiff in a trademark action bears the ultimate burden of proof that his or her mark is valid, federal registration provides 'prima facie evidence' of the mark's validity and entitles the plaintiff to a 'strong presumption' that the mark is a protectable mark." *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010) (citing 15 U.S.C. §§ 1057(b), 1115(a) and *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 604 (9th Cir. 2005)). If a plaintiff establishes that a mark has been properly registered, the burden shifts to the defendant to show by a preponderance of the evidence that the mark is not protectable. *Id.* (citing *Tie Tech*, 296 F.3d at 783).

Here, the certificate of registration for Plaintiff Petconnect's Slogan Mark (ECF No. 226-5 at p. 95) constitutes prima facie evidence of its validity. *Zobmondo Ent.*, 602 F.3d 1108, 1115 (9th Cir. 2010) ("[T]he presumption of validity is a strong one, and the burden on the defendant necessary to overcome that presumption at summary judgment is heavy."). Moving Defendants do not challenge the validity or protectability of the Slogan.

### C.    Defendants' Use of the Slogan Mark

Instead, Moving Defendants argue that (1) they did not use the Slogan Mark and/or that (2) they only used the terms "Pet Connect Rescue, Inc." and "PCRI," which Plaintiff PetConnect does not own. *See* ECF No. 225-1 at 4, 7; ECF No. 226-1 at 6; ECF No. 227-1 at 6–7; ECF No. 228-1 at 5–6. Indeed, there is no dispute that Moving Defendants never used the Slogan Mark in its exact form. The issue here, as in many trademark infringement cases, is the resemblance to a registered mark. "[A]s a general rule, . . . exact similitude is not required to constitute an infringement or to entitle the complaining party to protection." *G. Heileman Brewing Co. v. Indep. Brewing Co.*, 191 F. 489, 494 (9th Cir. 1911); *see* 15 U.S.C. § 1114. Thus, to the extent Rothman Defendants and Salinas Defendants argue that there is no liability because they only used the terms "Pet Connect Rescue, Inc." and "PCRI," the Court is unpersuaded. *See* ECF No. 226-1 at 6; ECF No. 227-1 at 6. The question is whether Rothman Defendants and Salinas Defendants' use of the mark "Pet

20-CV-00527-RSH-DEB

Connect Rescue, Inc" was "likely to cause consumer confusion, deception, or mistake." *See Phillip Morris*, 352 F. Supp. 2d at 1072.

Moving Defendants who did not use the Slogan Mark or a similar mark, however, cannot be liable for infringement. As discussed below, the Court concludes that Defendant SoCal Puppy has not used the Slogan Mark, "Pet Connect Rescue, Inc.," or any variation thereof, in the manner proscribed by the Lanham Act. Further, there is insufficient evidence that Mohrfeld or Select may be vicariously liable.

### 1. *SoCal Puppy*

Although Plaintiff PetConnect alleges a section 32 claim against all Defendants, ECF No. 93 at p. 10, there is no evidence that Defendant SoCal Puppy ever used the Slogan Mark or another similar mark. The brief discussion of SoCal Puppy in Plaintiffs Cross Motion for Summary Judgment and Combined Opposition only discuss use of Plaintiffs Lucky Pup and SCDR's marks. *See* ECF No. 248-1 at 18–19. Further, at the Hearing, Plaintiffs were unable to identify how SoCal Puppy infringed on the Slogan Mark. In fact, Plaintiffs appeared to concede that there is no evidence against SoCal Puppy with respect to Plaintiff PetConnect's claims for trademark infringement, false designation of origin, and dilution. SoCal Puppy thus demonstrates the absence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a).

Accordingly, the Court grants summary judgment as to Plaintiff PetConnect's first, second, and third causes of action in favor of Defendant SoCal Puppy.

### 2. *Mohrfeld and Select*

As for Defendants Mohrfeld and Select, Plaintiffs do not allege these Defendants infringed on Plaintiff PetConnect's mark directly.[18] Plaintiffs confirmed at the Hearing that

---

[18]     In Plaintiffs' reply to Defendants Mohrfeld and Select's Opposition to Cross Motion for Summary Judgment, Plaintiffs argue for the first time that "Select actively misappropriated Plaintiff's trademark to sell puppies." ECF No. 266 at 2. The sole evidence of use appears to be the notation of "Pet Connect Rescue Inc." as the "Pet Source" on various internal A&D Reports. *See id.* at 2–8. Plaintiffs fail to discuss how this constitutes

their Lanham Act claims against Mohrfeld arose solely under a *respondeat superior* theory because there is no evidence of direct action by him. *See* ECF No. 248-1 at 18. In other words, Plaintiffs claim that Mohrfeld and Select, of which Mohrfeld is the sole owner, are responsible for the actions of their employee, Rothman. *See* ECF No 248-1 at 17–18.

"Vicarious liability under the Lanham Act requires 'a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties[,] or exercise joint ownership or control over the infringing product.'" *Routt v. Amazon.com, Inc.*, 584 F. App'x 713, 716 (9th Cir. 2014) (quoting *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007)) (alteration in original); *see Spicy Beer Mix, Inc. v. New Castle Beverage, Inc.*, No. CV1400720SJOJEMX, 2014 WL 12573409, at *7 (C.D. Cal. Oct. 10, 2014) (discussing vicarious liability for an authorized agent or employee's Lanham Act violation). Although the Ninth Circuit has not expressly defined what constitutes sufficient control, it has found that a financial or contractual relationship, without more, is not enough. *See Perfect 10*, 494 F.3d at 808 (finding that a "financial partnership" between defendants and infringing websites, where defendants processed payments to those websites and collected the usual processing fees, did not establish "symbiotic" relationship or "joint ownership or control"); *Gibson Brands, Inc. v. Viacom Int'l, Inc.*, 640 F. App'x 677, 678 (9th Cir. 2016) ("[T]he [licensing] agreement does not reveal a relationship of control over the actual infringing activity, which would constitute evidence of vicarious liability.") (internal quotation marks omitted).

Courts in this circuit have held that for vicarious liability to attach, the defendant must have "control such as to stop the infringing activity." *Mophie, Inc. v. Shah*, No.

---

"use in commerce" under the Lanham Act or whether there was any likelihood of confusion. The Court thus declines to consider this argument. *See Lane v. Dep't of Interior*, 523 F.3d 1128, 1140 (9th Cir. 2008) (noting that consideration of an argument first raised in a reply brief is discretionary).

SACV1301321DMGJEMX, 2014 WL 10988339, at *4 (C.D. Cal. July 24, 2014) (citing *Perfect 10*, 494 F.3d at 804–05, 808). *See Life Alert Emergency Response, Inc. v. LifeWatch, Inc.*, 601 F. App'x 469, 473 (9th Cir. 2015) (finding that telemarketers and sellers working on behalf of defendant would "have no reason" to infringe on competitor's trademark if defendant terminated its relationship under the telemarking services and purchase agreements). But "mere ability to withdraw a financial 'carrot' does not create the 'stick' of 'right and ability to control' that vicarious infringement requires." *See Perfect 10*, 494 F.3d at 804 (discussing vicarious liability in the copyright context but applying the same reasoning to vicarious trademark infringement).

Further, "the shared control must extend in some way to the infringed intellectual property itself." *Y.Y.G.M. SA v. Redbubble, Inc.*, No. 219CV04618RGKJPR, 2020 WL 3984528, at *9 (C.D. Cal. July 10, 2020) (holding that a defendant's "control of the raw materials and background processes . . . is insufficient to impose vicarious liability without some indication that [the defendant] exercised control over the appearance and content of the infringing products themselves."). *Cf. Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089, 1107 (N.D. Cal. 2021) ("[G]iven the level of control exercised over the physical product and Redbubble's role in selecting and directing the [infringing] fulfiller, a reasonable jury could find Redbubble liable for the fulfillers' actions.); *Robinson v. Delicious Vinyl Recs. Inc.*, No. CV 13-4111-CAS PLAX, 2013 WL 3983014, at *6 (C.D. Cal. Aug. 1, 2013), *order clarified on other grounds*, No. CV134111CASPLAX, 2013 WL 12119735 (C.D. Cal. Sept. 24, 2013) (finding likely liability where defendant "directly engages" third parties to promote the allegedly infringing trademark and "appears to have complete control over the content of all promotional materials").

In moving for summary judgment, Mohrfeld and Select cite declarations and deposition testimony indicating that Rothman's duties did not include creating or operating other entities. *See* ECF No. 225-1 at 14. Rather, Rothman was hired to oversee employees and accounting. *See* ECF No. 225-4, Ex. A ¶ 8; ECF No. 225-4, Ex. B ¶ 3; ECF No. 225-4 at p. 209. Rothman created Defendant Pet Connect in January 2018, several months

before he began working at Select in August 2019. *See* ECF No. 225-4, Ex. A ¶¶ 8–9; ECF No. 225-4 at pp. 214–15; ECF No. 258-3 ¶ 11. Mohrfeld stated in a declaration that he was unaware of Rothman's operation of Defendant Pet Connect at the time of hiring, and that neither Mohrfeld nor Select hold any interest Defendant Pet Connect.[19] *See* ECF No. 225-4, Ex. A ¶ 9. Given this showing, the burden shifts to Plaintiffs to "designate specific facts showing there is a genuine issue for trial." *See Celotex*, 477 U.S. at 324.

Plaintiffs fail to meet their burden here. They neither allege nor argue that Mohrfeld, Select, and Rothman have an actual or apparent partnership, authority to bind one another in transactions with third parties, or exercise joint ownership or control over the allegedly infringing Defendant Pet Connect. *See Perfect 10*, 494 F.3d at 807. Although there are facts that indicate that Rothman, as manager of Select, had authority to bind Select in certain transactions with third parties, this does not mean Select could bind Rothman. Further, Plaintiffs fail to rebut Mohrfeld or Select's showing that they did not exercise control over Defendant Pet Connect's creation, promotion, or operation. Notably, there is no evidence that Mohrfeld or Select had the ability to stop the alleged infringement. The Court thus concludes that no reasonable jury could find Mohrfeld or Select vicariously liable for Rothman Defendants' alleged infringement of Plaintiff PetConnect's trademark.

Accordingly, on Plaintiff PetConnect's first cause of action, the Court grants summary judgment in favor of Mohrfeld and Select. Because Plaintiff PetConnect's remaining Lanham Act claims against them are also based on vicarious liability, the Court grants summary judgment in favor of Mohrfeld and Select on Plaintiffs' second cause of action for false designation of origin and third cause of action for trademark dilution.

/ / /

/ / /

---

[19]    The Parties do not dispute that Defendant Pet Connect is owned solely by Alysia and Ray Rothman, and that it was created before Select was incorporated and before Rothman began working at Select. *See* ECF No. 276 at 7.

1

**D.    Likelihood of Confusion**

2     Rothman Defendants and Salinas Defendants admit that they used the term "Pet

3 Connect Rescue, Inc.," which Plaintiffs allege infringes on the Slogan Mark. *See* ECF No.

4 226-1 at 6; ECF No. 227-1 at 6. Liability therefore turns on whether the marks are

5 "sufficiently similar that confusion can be expected." *See AMF, Inc. v. Sleekcraft Boats*,

6 599 F.2d 341, 348 (9th Cir. 1979); *see also KP Permanent Make-Up*, 408 F.3d at 608

7 ("Likelihood of confusion exists when consumers viewing the mark would probably

8 assume that the goods it represents are associated with the source of a different product

9 identified by a similar mark.").

10     The Ninth Circuit has developed eight factors (known as the *Sleekcraft* factors)

11 relevant to evaluating the likelihood of confusion: "(1) the strength of the mark; (2) the

12 proximity of the goods; (3) the similarity of the marks; (4) evidence of actual confusion;

13 (5) the marketing channels used; (6) the type of goods and the degree of care likely to be

14 exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the

15 likelihood of expansion of the product lines." *See Sleekcraft*, 599 F.2d at 348–49. These

16 factors are non-exhaustive and applied flexibly. *See Network Automation, Inc. v. Advanced

17 Sys. Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011).

18     Here, neither Moving Defendants nor Plaintiffs address how the *Sleekcraft* factors

19 apply to the facts of this case. *See* ECF No. 226-1; ECF No. 227-1; ECF No. 248-1. Given

20 the highly fact-intensive nature of the *Sleekcraft* inquiry and the Ninth Circuit's warning

21 against granting summary judgment on "likelihood of confusion," the Court concludes that

22 this issue is properly one for the jury. *See Rearden LLC v. Rearden Commerce, Inc.*, 683

23 F.3d 1190, 1210 (9th Cir. 2012) ("[S]ummary judgment on 'likelihood of confusion'

24 grounds is generally disfavored."); *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894,

25 901–02 (9th Cir. 2002) ("We have cautioned that district courts should grant summary

26 judgment motions regarding the likelihood of confusion sparingly, as careful assessment

27 of the pertinent factors that go into determining likelihood of confusion usually requires a

28

full record.") *overruled on other grounds by Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859 (9th Cir. 2020).

Accordingly, the Court denies summary judgment for Rothman Defendants and Salinas Defendants on Plaintiff PetConnect's first cause of action for trademark infringement.

## VI.   Plaintiff PetConnect's False Designation of Origin Claim

In the second cause of action, Plaintiff PetConnect brings a claim against all Defendants under section 43(a) of the Lanham Act for false designation of origin. ECF No. 93 at p. 13. Plaintiff PetConnect alleges that "Defendants, in connection with their sale of puppies that Defendants fraudulently label[ed] as 'rescues,' have used in commerce the words 'Pet Connect Rescue' as a false designation of origin, a false and misleading description of fact, and a false and misleading representation of fact . . . ." *Id.* Plaintiff PetConnect claims that Defendants' use of the words caused confusion with respect to its own mark "PetConnect Rescue."[20] ECF No. 248-1 at 20. Moving Defendants again argue that all of Plaintiff PetConnect's Lanham Act claims fail because Moving Defendants never used the trademark allegedly owned by Plaintiff PetConnect. *See* ECF No. 225-1 at 4–5; ECF No. 226-1 at 6; ECF No. 227-1 at 6; ECF No. 228-1 at 6.

The Court previously granted summary judgment in favor of Defendants Mohrfeld, Select, and SoCal Puppy above, so Plaintiffs' second cause of action remains against Rothman Defendants, Salinas Defendants, and non-moving Defendants only. For the reasons discussed below, the Court denies Rothman Defendants and Salinas Defendants' Motions for Summary Judgment on Plaintiff PetConnect's false designation of origin claim.

---

[20]   Plaintiff PetConnect's mark, "PETCONNECT RESCUE" (Reg. No. 6581377) and a logo incorporating the name "PETCONNECT RESCUE" (Reg. No. 6581378), were registered on December 7, 2021—almost one year after the SAC was filed on December 30, 2020. *See* ECF No. 93; ECF Nos. 248-14, Exs. 38–39.

**A.      False Designation of Origin Under Section 43(a)(1)(A) of the Lanham Act**

Section 43(a)(1)(A) includes two bases of liability: false designation of origin (also called "false association"), § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B). *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) (citing *Waits v. Frito–Lay, Inc.*, 978 F.2d 1093, 1108 (9th Cir. 1992)); *Zamfir v. Casperlabs, LLC*, 528 F. Supp. 3d 1136, 1143 n.5 (S.D. Cal. 2021) (noting that "[c]ourts have recognized that a false designation and false association claim are essentially synonymous"). Plaintiff PetConnect alleges both.[21] The Court first addresses its false designation of origin claim, which is the basis of Plaintiffs' second cause of action. *See* ECF No. 93 at ¶¶ 66–67.

The Ninth Circuit has held that a false designation of origin claim under section 43(a)(1)(A) requires proof that defendants "(1) use[d] in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services." *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007). The "core element" is the "likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products." *Id.* (quoting *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir.2007)).

Further, associative confusion "may arise not only where a consumer purchases a product thinking it is another, but also where there may be a mistake as to the sponsorship, quality or association of a product." *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1384 (9th Cir. 1987). *See also Lindy Pen Co., Inc. v. Bic Pen Corp.*, 725 F.2d 1240, 1246 (9th Cir.1984) ("[T]he test for likelihood of confusion in this circuit is broader, embracing confusion as to the association between the goods or sponsorship of the allegedly infringing goods."); *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991) ("Likelihood of confusion will be found whenever

---

[21]      Plaintiff PetConnect's false advertising claim is set forth in Plaintiffs' tenth cause of action, discussed separately further below. *See* ECF No. 93 ¶ 66.

consumers are likely to assume that a mark is associated with another source or sponsor because of similarities between the two marks."); *Charles Schwab & Co., Inc. v. Hibernia Bank*, 665 F. Supp. 800, 804 (N.D. Cal. 1987) ("[T]hus, when speaking of a 'likelihood of confusion,' this denotes any type of confusion, including: confusion of source; confusion of affiliation; confusion of connection; or confusion of sponsorship.").

### B.    Defendants' Use

As with the section 32 claim above, Rothman Defendants and Salinas Defendants argue that there is no liability because they only used the terms "Pet Connect Rescue, Inc." and "PCRI," which they contend Plaintiff PetConnect does not own the exclusive rights to use. ECF No. 226-1 at 6; ECF No. 227-1 at 6. The Court disagrees that Plaintiffs need to establish that they had exclusive rights to "Pet Connect Rescue, Inc." or "PCRI" to bring a false designation of origin claim. *See* 5 McCarthy on Trademarks and Unfair Competition § 27:13 (5th ed.) (noting that section 43(a)(1)(A) does not explicitly require that the plaintiff be the owner of a protectable mark). Further, the Court declines to distinguish between Rothman Defendants and Salinas Defendants' use of "Pet Connect Rescue, Inc." and the term "Pet Connect Rescue," which Plaintiffs specified in the SAC.[22] *See* ECF No. 93 ¶¶ 67–69. The Lanham Act proscribes the use of "*any* word, false designation of origin, false or misleading description, or representation of fact" that is "likely to cause confusion," 15 U.S.C. § 1125(a)(1) (emphasis added), and it is clear on its face that Defendants' "Pet Connect Rescue, Inc." mark incorporates the term "Pet Connect Rescue."

### C.    Likelihood of Confusion

Once again, liability turns on whether there is likelihood of confusion, and the Parties have failed to brief this fact-intensive issue. For the same reasons discussed in the

---

[22]    In a declaration, Salinas stated that Defendant retail stores "were required to identify 'Pet Connect' or 'PCRI' on . . . cage cards." ECF No. 258-2 ¶ 5. This indicates that, at least in some instances, the term "Pet Connect" was also being used.

1    Section above, the Court denies summary judgment as to Rothman Defendants and Salinas

2    Defendants on Plaintiff PetConnect's second cause of action.

3    **VII.  Plaintiff PetConnect's Dilution Claim**

4            In the third cause of action set forth in the SAC, Plaintiff PetConnect asserts a

5    trademark dilution claim against all Defendants. *See* ECF No. 93 at ¶¶ 83–96. Plaintiff

6    PetConnect alleges that its "PETCONNECT RESCUE" trademark has "achieved an

7    extensive degree of distinctiveness" and is famous "among consumers seeking to adopt

8    rescued animals." *Id.* ¶ 84. Moving Defendants argue that Plaintiff PetConnect's mark is

9    not sufficiently famous. *See* ECF No. 226-1 at 7; ECF No. 227-1 at 7. The Court agrees.

10           The Ninth Circuit has explained that "[d]ilution is a cause of action invented and

11   reserved for a select class of marks—those marks with such powerful consumer

12   associations that even non-competing uses can impinge on their value." *Avery Dennison*

13   *Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999). To prevail on a dilution claim, a

14   plaintiff must show that (1) the mark is famous and distinctive; (2) the defendant is making

15   use of the mark in commerce; (3) the defendant's use began after the mark became famous;

16   and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by

17   tarnishment. 15 U.S.C. § 1125(c)(1); *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th

18   Cir. 2008).

19           The Trademark Dilution Revision Act of 2006 ("TDRA") defines fame as being

20   "widely recognized by the general consuming public of the United States as a designation

21   of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). In

22   determining whether a mark possesses the requisite degree of recognition, courts may

23   consider (1) the duration, extent, and geographic reach of advertising and publicity of the

24   mark; (2) the amount, volume, and geographic extent of sales of goods or services offered

25   under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark

26   was registered on a principal register. 15 U.S.C. § 1125(c)(2)(A)(i)–(iv).

27           The standard for satisfying the famousness element of protection is a high one. *See*

28   *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 870 (9th Cir. 2020). A mark

must be "truly prominent and renowned." *Avery Dennison*, 189 F.3d at 875 (quoting *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 46 (1st Cir.1998)). In other words, the mark should be "a household name." *Blumenthal Distrib.*, 963 F.3d at 870 (citing *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911 (9th Cir. 2002)). Examples of famous marks include "TIFFANY," "POLAROID," "ROLLS ROYCE," "KODAK," "CENTURY 21" and "OSCAR" (of the Motion Picture Academy). *See Fruit of the Loom, Inc. v. Girouard*, 994 F.2d 1359, 1362–63 (9th Cir. 1993). *See also Dahon North America v. Hon*, 2012 WL 1413681 (April 24, 2012 C.D. Cal.) ("Trademark dilution claims are restricted to truly famous marks, such as Budweiser beer, Camel cigarettes, and Barbie dolls."). The Ninth Circuit has explained that "surveys showing that a large percentage of the general public recognizes the brand, press accounts about the popularity of the brand, or pop-culture references involving the brand would provide evidence of fame." *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 912 (9th Cir. 2002) *superseded by statute*, Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125; *see Blumenthal Distrib.*, 963 F.3d at 870–71 (affirming its reasoning in *Thane* in the context of the TDRA).

Here, Plaintiff PetConnect did not provide any survey evidence to rebut Moving Defendants' showing that its mark was not sufficiently famous. Instead, Plaintiff PetConnect argues that its "PetConnect Rescue" mark has "attained national fame and recognition" because it was featured in various "news pieces."[23] ECF No. 265 at 3. To

---

[23] Plaintiff PetConnect also provides the number of pet adoptions it facilitated per year from 2015 to 2020 and a cursory list of media exposure its mark purportedly had on television, radio, magazines, and social media. *See* ECF No. 224-2 at 243–45. In her deposition, Chanock testified she was on Fox News several times and PetConnect had "exposure" on CBS and Time Magazine. ECF No. 225-4 at p. 40. Plaintiffs provide no additional details regarding this media exposure it received and fail to explain how these demonstrate "national fame and recognition."

In Plaintiffs' Motion for Default Judgment against Jason Duhammel, they also cite a music video created in 2009 for Plaintiff PetConnect called "Lemme Be Your Friend" as "[a]nother example of the famousness of the PetConnect Rescue name and trademark." ECF No. 224-2 ¶ 8. That video was uploaded over 11 years ago and has accumulated less

support this claim, Plaintiffs have submitted articles that are related to the allegations underlying this case, the instant litigation itself, or animal rescues and nonprofits generally.[24] *See* ECF No. 224-2 at pp. 246–438. Many of these are duplicate articles published by various media outlets; recently published between 2019 and 2021; and mention Plaintiff PetConnect only in passing. *See id*. Based on these "news pieces" alone, the Court concludes no reasonable jury could find that Plaintiff PetConnect's mark is "widely recognized by the general consuming public." *See* 15 U.S.C. § 1125(c)(2)(A). Further, "incidental media coverage" alone is insufficient to establish that a mark is famous. *See Thane Int'l*, 305 F.3d at 912 ("Many products receive broad incidental media coverage. Such promotion does not lead to the conclusion that their trademarks have become a part of the collective national consciousness.").

Because Plaintiff PetConnect cannot establish the famousness element, it cannot prevail on its dilution claim, and the Court does not reach the remaining factors. Accordingly, the Court grants summary judgment in favor of Moving Defendants on Plaintiff PetConnect's dilution claim, and this cause of action is dismissed as to all Defendants.

## VIII.  Plaintiffs Lucky Pup and SCDR's Trademark Infringement Claim

In Plaintiffs' fourth cause of action, Plaintiffs Lucky Pup and SCDR bring a claim under section 43(a) of the Lanham Act against all Defendants for trademark infringement of their unregistered marks. ECF No. 93 at pp. 17–21. However, Lucky Pup and SCDR

---

than 3,000 views. *See* Noel Paul Stookey, *LEMME BE YOUR FRIEND*, YouTube (Apr. 13, 2011), https://www.youtube.com/watch?v=MPMA75_RmB4 (last visited February 14, 2023). Moreover, Plaintiff PetConnect's name and its website only appear in the several seconds of the video. *See id.* The Court does not find that this supports Plaintiffs' claim that the PetConnect mark is famous.

[24]    The Court overrules Moving Defendants' hearsay objection to these articles. *See* ECF No. 258-1 at 33. These articles are not being offered or considered for the truth of the matter asserted. Rather, the Court considers them only to the extent they indicate that Plaintiff PetConnect was featured in the news or media.

have only alleged and presented facts as to how their mark was allegedly infringed by Defendant SoCal Puppy. *See* ECF No. 93 at pp. 17–21. The Court therefore considers Lucky Pup and SCDR's claim as to Defendant SoCal Puppy only and grants summary judgment in favor of Rothman Defendants and Salinas Defendants.[25]

The Ninth Circuit has held that plaintiffs may pursue an infringement action for unregistered marks under section 43(a) of the Lanham Act. *See AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 689 (9th Cir. 2022) (stating that a plaintiff must show, among other elements, ownership of a valid, protectable mark). *See also Scott & Addison, LLC v. Pinkblush.com*, No. 8:20-CV-01160-SB-DFM, 2021 WL 3579413, at *1 (C.D. Cal. Apr. 5, 2021) (recognizing a "[s]ection 43(a) false designation of origin claim . . . , with regard to unregistered marks, as the equivalent of a claim for trademark infringement") (quoting *SMC Promotions, Inc. v. SMC Promotions*, 355 F. Supp. 2d 1127, 1133 (C.D. Cal. 2005). Further, the same elements required to prove trademark infringement under section 32(a) apply to an infringement claim under section 43(a).[26] *See id.* As set forth above, liability is established if (1) a plaintiff owns a "valid and protectable" trademark and (2) the defendant "used a similar mark likely to cause consumer confusion, deception or mistake." *Phillip Morris*, 352 F. Supp. 2d at 1072. *See Brookfield*, 174 F.3d at 1046; *Scott & Addison*, 2021 WL 3579413, at *1.

Although Defendant SoCal Puppy does not dispute that it listed Lucky Pup and SCDR's marks on its website,[27] SoCal Puppy questions, without providing any argument, whether Lucky Pup and SCDR marks are valid and protectable. *See* ECF No. 228-1 at 7–

---

[25]    Plaintiffs Lucky Pup and SCDR's claims against Defendants Mohrfeld and Select have already been voluntarily dismissed. *See* ECF Nos. 206–07.

[26]    Unlike section 32, however, section 43(a) does not require that the mark be registered. *See Brookfield*, 174 F.3d at 1046 n.8.

[27]    SoCal Puppy states that it "praised Lucky Pup and SCDR's names by giving them donations and making note of it on its webpage." ECF No. 228-1 at 7. Lucky Pup denies ever receiving this donation. *See* ECF No. 248-8 ¶ 15.

8. Further, SoCal Puppy does not address the likelihood of confusion inquiry.[28] In a single sentence, it notes that "Plaintiffs performed no survey in this matter." *Id.* at 5. But a lack of survey evidence, by itself, does not establish an absence of confusion. *See Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1041 (C.D. Cal. 1998) (noting that "[s]urvey evidence is not required to establish likelihood of confusion, but it is often the most persuasive evidence").

Merely denying Plaintiffs' allegations is not enough to prevail on summary judgment. *See Muhammad v. Cardoza*, No. C-87-5933 EFL, 1993 WL 169288, at *4 (N.D. Cal. May 10, 1993) (citing *Ross v. Int'l Bd. of Elec. Workers*, 544 F.2d 1022, 1025 (9th Cir. 1976)). The Court therefore denies summary judgment as to Defendant SoCal Puppy on Plaintiffs' fourth cause of action.

## IX.   Federal False Advertising Claim

In Plaintiffs' tenth cause of action, Plaintiffs bring against all Defendants a false advertising claim under section 43(a)(1)(B) of the Lanham Act. ECF No. 93 at p. 30. Moving Defendants contend that they never advertised using Plaintiffs' marks to influence consumers to buy Moving Defendants' dogs. *See* ECF No. 225-1 at 21–22; ECF No. 226-1 at 7; ECF No. 227-1 at 7; ECF No. 228-1 at 7. Moving Defendants also argue that there is no evidence that any representations they made constitute "commercial advertising or promotion." *See id.*

For the reasons below, the Court grants summary judgment in favor of Moving Defendants as to Plaintiff Gonzalez's false advertising claim and dismisses that cause of action as to all Defendants. The Court also grants summary judgment in favor of all Defendants as to Plaintiff Lucky Pup and SCDR's false advertising claim. On the

---

[28]   SoCal Puppy provides the legal standard but fails to demonstrate an absence of a genuine issue of material fact. *See* ECF No. 228-1 at 5. *See also* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 323 (emphasizing that the party seeking judgment "always bears the initial responsibility of informing the district of the basis for its motion").

remaining false advertising claim of Plaintiff PetConnect, the Court grants in part and denies in part Rothman Defendants and Salinas Defendants' motions for summary judgment, and grants summary judgment in favor of Mohrfeld, Select, and SoCal Puppy.

### A. False Advertising Under Section 43(a)(1)(B) of the Lanham Act

The elements of a false advertising claim under section 43(a)(1)(B) of the Lanham Act are (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers. *Allergan USA, Inc. v. Prescribers Choice, Inc.*, 364 F. Supp. 3d 1089, 1109–10 (C.D. Cal. 2019) (citing *Southland Sod Farms*, 108 F.3d at 1139).

Further, section 43(a)(1)(B) prohibits any person from misrepresenting their own or another person's goods or services in commercial advertising or promotion. *See Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114–15 (9th Cir. 2021) (citing 15 U.S.C. § 1125(a)(1)(B)). Commercial advertising or promotion, in turn, is defined as (1) commercial speech; (2) by a defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy the defendant's goods or services; (4) that is disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry. *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1054 (9th Cir. 2008) (citing *Coastal Abstract Serv.*, 173 F.3d at 735).

A plaintiff asserting a false advertising claim must also establish that its injury (1) is within the "zone of interests" protected by the Lanham Act and (2) was proximately caused

by defendant's violation of the Lanham Act. *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, 552 F. Supp. 3d 901, 913 (N.D. Cal. 2021) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–32 (2014)). To come within the "zone of interests," a plaintiff must suffer "an injury to a commercial interest in reputation or sales." *Id.* To demonstrate proximate cause, a plaintiff must show "economic or reputation injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.*

### B.   Plaintiff Gonzalez

Upon review of the Parties' briefing and the record cited, the Court cannot identify any evidence that Plaintiff Gonzalez, a consumer, suffered an injury to her "commercial interest in reputation or sales" when she purchased Charlie. *See id.* at 913. Without such an injury, Plaintiff Gonzalez cannot establish that her injury is within the "zone of interests" and thus lacks standing to bring a federal false advertising claim under the Lanham Act. *See id.*; *see also Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 165 F. Supp. 3d 937, 946 (S.D. Cal. 2016) (noting that "an allegation a consumer or business was misled into purchasing disappointing or inferior products" did not fall within the "zone of interest").

Accordingly, the Court grants summary judgment in favor of Moving Defendants as to Plaintiff Gonzalez's false advertising claim and dismisses her tenth cause of action against all Defendants.

### C.   Plaintiff PetConnect

Plaintiffs claimed in the SAC that Defendants "made false or misleading statements that they are selling 'rescue puppies,'" ECF No. 93 ¶ 184, but failed to specify exactly which statements were at issue as to each Defendant. At the Hearing, Plaintiffs, through their counsel, clarified that their false advertising claim is based on (1) the cage cards displayed at Defendants' retail pet stores; (2) verbal representations made by pet store employees that the puppies sold were from "Pet Connect Rescue"; and (3) Defendant Pet Connect's website. Moving Defendants, for their part, offer a conclusory denial that any of their alleged statements constitute commercial advertising or promotion. *See* ECF No. 225-

1 at 21–22; ECF No. 226-1 at 7; ECF No. 227-1 at 7; ECF No. 228-1 at 7. Based on the three categories of statements Plaintiffs identified at the Hearing, Organizational Plaintiffs' false advertising claim only relates to Plaintiff PetConnect.[29] The Court addresses each category of statements in turn.

### 1. *Cage Cards*

As an initial matter, the record before the Court indicates that, of the Moving Defendants, only Salinas Defendants placed cage cards in retail pet stores.[30] Salinas Defendants do not dispute that the cage cards were placed "on puppy kennel crates to identify the source of the puppies being sold." *See* ECF No. 258-1 ¶ 56. It is further undisputed that National City Puppy had signs prominently displayed on the puppy cages that stated, "Rescue Org: Pet Connect," and that retail stores displayed the name "Pet Connect Rescue," along with the breed and price, on cages for puppies obtained from Defendant Pet Connect. *See* ECF No 258-1 ¶¶ 44. 106; ECF No. 258-1 ¶¶ 44, 106. Salinas Defendants disagreed at the Hearing that the cage cards constitute commercial advertising or promotion. *See* ECF No. 277-1 at 7.

"[T]he law is not always clear about what type of speech qualifies as commercial speech." *Exeltis USA Inc. v. First Databank, Inc.*, 520 F. Supp. 3d 1225, 1229 (N.D. Cal. 2021) (citing *United States v. Schiff*, 379 F.3d 621, 626 (9th Cir. 2004)) (internal quotation marks omitted). Rather, the "commercial speech analysis is fact-driven," and courts "try to

---

[29]   At the Hearing, Plaintiffs did not argue that any of alleged statements were related to Plaintiffs Lucky Pup or SCDR. Nor do Plaintiffs specify in any of their briefs that Lucky Pup or SCDR were injured or likely to be injured by the three categories of statements above. There is no allegation that the cage cards, verbal statements by pet store employees, or Defendant Pet Connect's website ever referenced Plaintiffs Lucky Pup or SCDR.

[30]   The Court concludes there is no evidence that Rothman Defendants, Mohrfeld, Select, or SoCal Puppy displayed cage cards in retail pet stores. Nor is there evidence that any of these Defendants are vicariously liable for Salinas Defendants' alleged placement of the cage cards. Plaintiffs do not argue to the contrary. In fact, the facts cited in Plaintiffs' briefing about labeling on cages pertained only to Salinas Defendants and non-moving Defendant Puppies4Less. *See* ECF No. 248-1 at 14, 16.

give effect to a common-sense distinction between commercial speech and other varieties of speech." *Id.* (citing *Ariix*, 985 F.3d at 1115) (quotations omitted). "Where the facts present a close question," the Supreme Court has identified three non-exhaustive factors for courts to consider as part of the commercial speech analysis: (1) whether the speech is an advertisement; (2) whether the speech refers to a particular product; and (3) whether the speaker has an economic motivation for publication. *See Ariix*, 985 F.3d at 1115–16 (citing *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66–68 (1983)). These factors are "important guideposts, but they are not dispositive." *Id.* at 1116; *see Katzkin Leather, Inc. v. Nissan N. Am., Inc.*, No. CV05-0971RGKFMOX, 2005 WL 3593999, at *3 (C.D. Cal. Dec. 22, 2005) ("[A]ll three factors do not need to be present to conclude that particular statements constitute commercial speech.").

Applying these factors, the Court concludes that there is a triable issue as to whether the cage cards constitute commercial speech.[31] The economic motivation factor "asks whether the speaker acted *primarily* out of economic motivation, not simply whether the speaker had *any* economic motivation." *Ariix*, 985 F.3d at 1116. On one hand, Salinas Defendants aver that they had zero economic motivation for displaying the cage cards. ECF No. 258-1 ¶¶ 55–56. On the other, Plaintiffs contend that the entire purpose of displaying

---

[31] Neither side appears to materially dispute that the cage cards are in advertising format. Speech in advertising format is "speech about a product or service by a person who is offering that product or service at a price, directed to persons who may want, and be willing to pay for, that product or service." *Katzkin Leather*, 2005 WL 3593999, at *3 (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 960–61 (Cal. 2002)). The pet stores, owned and operated by Salinas Defendants, displayed cage cards informing potential consumers about the age and source of puppies for sale. *See* ECF No. 258-1 ¶ 44. This information was presented in conjunction with the puppies' breed and price. *See id.* ¶ 106.

Nor is there any dispute that the cage card refers to the puppies for sale at the pet stores. To the extent Plaintiffs argue that the labeling of the puppies during transport— before the puppies were made available to consumers at the pet store—constitutes false advertising, the Court is unpersuaded. The Court fails to see how consumers could be influenced to buy the puppies based on labeling that they did not see or were not meant to see. *See Ariix*, 985 F.3d at 1115.

1   the cage cards with the name "Pet Connect Rescue" was to sell non-rescue dogs for a profit
2   under the guise of a legitimate rescue name. ECF No. 248-1. The question of economic
3   motivation thus involves credibility determinations that must be made by the trier of fact.

4       Even assuming that the cage cards constitute commercial speech, the Court
5   concludes that there remains a triable issue as to whether the cage cards were disseminated
6   sufficiently to the relevant purchasing public. *See Newcal Indus.*, 513 F.3d at 1054. "To be
7   'sufficiently disseminated,' the actions must be 'part of an organized campaign to penetrate
8   the relevant market,' which typically involves 'widespread dissemination within the
9   relevant industry.'" *Ariix*, 985 F.3d at 1121 (quoting *Fashion Boutique of Short Hills, Inc.*
10  *v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002)).

11      In moving for summary judgment, Salinas Defendants merely state that Plaintiffs
12  "have no evidence" that Salinas Defendants' representations constitute commercial
13  advertising or promotion.[32] *See* ECF No. 277-1 at 7. Salinas Defendants do not point to
14  any evidence that demonstrates the absence of a genuine issue of material fact.

15      The Court is not satisfied Salinas Defendants have met their burden under Rule 56.
16  *See* Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 328 (1986) (White, J., concurring)
17  ("It is not enough to move for summary judgment without supporting the motion in any
18  way or with a conclusory assertion that the plaintiff has no evidence to prove his case.").
19  Therefore, on Plaintiffs' false advertising claim based on the cage cards, the Court denies
20  summary judgment as to Salinas Defendants and grants summary judgment in favor of
21  Rothman Defendants, Mohrfeld, Select, and SoCal Puppy.
22  / / /

---

[32]     To the extent Salinas Defendants argue in its objections to Plaintiffs' Statement of
Facts that the cage cards do not qualify as commercial advertisement because the disclosure
of the name "Pet Connect" or "PCRI" was a legal requirement, this argument is not
properly before the Court. *See* ECF No. 258-1 ¶¶ 55–56. Salinas Defendants failed to brief
the issue or cite any authority holding that such a statement, by its nature, cannot be
commercial speech.

## 2. *Verbal Representations Made by Pet Store Employees*

At the Hearing, Plaintiffs claimed that various pet store employees made verbal representations to buyers that certain puppies were from "Pet Connect Rescue." Plaintiff did not specify the pet store employees, and instead, generally referred the Court to their Statement of Facts. *See* ECF No. 248-2. Based on this representation, Plaintiffs' allegations are limited to employees at pet stores owned or operated by Salinas Defendants.[33]

Although "oral statements can constitute commercial advertising or promotion," there remains a factual dispute as to whether the specific statements made by Salinas Defendants' employees constituted "commercial speech" or was sufficiently disseminated to the relevant purchasing public. *See Maximum Availability Ltd. v. Vision Sols., Inc.*, No. CV 10-1488-GW(RZX), 2011 WL 13176820, at *9 (C.D. Cal. Dec. 12, 2011). Once again, Salinas Defendants' only argument is a conclusory statement that Plaintiffs "have no evidence" that Salinas Defendants' representations constitute commercial advertising or promotion. *See* ECF No. 227-1 at 7. As before, the Court concludes this is insufficient to prevail on summary judgment.

Accordingly, on Plaintiffs' false advertising claim based on the verbal representations of pet store employees, the Court denies summary judgment as to Salinas Defendants and grants summary judgment in favor of Rothman Defendants, Mohrfeld, Select, and SoCal Puppy.

## 3. *Defendant Pet Connect's Website*

At the Hearing, Plaintiffs represented that their false advertising claim was also based on statements from Defendant Pet Connect's website. In their Cross Motion for

---

[33]     It is undisputed Rothman Defendants, Mohrfeld, and Select did not own or operate any pet stores. *See* Rothman Dep. at 17:16–18, 18:3–6; Mohrfeld Dep. at 11:14–12:8; ECF No. 225-4, Ex. A ¶ 3. *See also* ECF No. 225-1 at 10. As such, they cannot be liable, either directly or vicariously, for the verbal representations made by any pet store employees. Further, there is no evidence before the Court that SoCal Puppy's employees made any verbal representations that the source of their puppies was "Pet Connect Rescue."

Summary Judgment and Combined Opposition, Plaintiffs identify two parts of Defendant Pet Connect's website as false statements:

(1)   Pet Connect Rescue Inc. is a 501(c)3 non-profit organization located in Joplin, Mo and is operating an open admission animal rescue for care, assistance for other pet organizations, and pet homing partners which ultimately find homes for all pets. PCRI is committed to the goal that no adoptable or treatable pet should be euthanized if the pet can be adopted into a suitable home or transferred to an approved Pet Homing Partner organization. Our focus is always finding a positive homing effort for all pets. We provide solutions that make a long-lasting difference.

(2)   How do we obtain our Pets
We work with many sources throughout the U.S.A. Starting from families with accidental litters, unexpected life style changes, unwanted pets, strays, breed defects, shelters, surrenders, other rescue groups, and seized pets are only a small part of how we obtain our pets. If you or your organization needs help to find a permanent home for a pet then please contact us so we can connect you with one of our Pet Homing Partners. Working with each other as a team makes the difference.

ECF No. 248-1 at 7–8; *see* ECF No. 248-13, Ex. 4. Plaintiffs argue that these statements are false because (1) Defendant Pet Connect existed solely to provide puppies for retail sale; (2) people never directly adopted animals from Defendant Pet Connect; (3) Defendant Pet Connect never took physical possession of any animals; and (4) each puppy from Defendant Pet Connect had a breeder and broker source. *See* ECF No. 248-1 at 8.

Rothman Defendants do not dispute the second and third facts, but they dispute that Defendant Pet Connect ever sold puppies or that each of its puppies had a breeder and broker source. *See* ECF No. 258-1 ¶¶ 53, 103. Plaintiffs cite to documents, including email communications between Rothman and Salinas that reference invoices and discounts in relation to puppies. *See, e.g.*, ECF No. 248-13, Exs. 5, 15, 18. Moving Defendants contend, based on the deposition testimony of Rothman and Salinas, that these were solely "shipping" costs and not for the puppies themselves. *See, e.g.*, ECF No. 228-8 ¶ 3; ECF No. 258-2 ¶ 2; ECF No. 258-3 ¶ 5; Rothman Dep. at 107:16–108:2. On summary judgment,

the conflicting inferences from this evidence must be resolved in Plaintiffs' favor as the non-moving party, and any credibility determination must be reserved for the jury. *See Anderson*, 477 U.S. at 255; *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000) ("If conflicting inferences may be drawn from the facts, the case must go to the jury.").

Given that there is a genuine dispute of material fact as to whether Defendant Pet Connect's website contained a "false statement of fact," the Court finds that summary judgment is not appropriate for Rothman Defendants and does not reach the remaining elements of the false advertising claim. *See Southland Sod Farms*, 108 F.3d at 1139.

However, there is no argument or evidence that Salinas Defendants, Mohrfeld, Select, or SoCal Puppy were involved in the creation of Defendant Pet Connect's website. Also, for the same reasons discussed with regard to Plaintiff Pet Connect's trademark infringement claim, vicarious liability does not attach to Mohrfeld and Select for Rothman's alleged false advertisement.[34]

---

[34] Some courts have held that common law principles of agency apply in section 43(a) cases. Most notably, the Third Circuit in *American Telephone & Telegraph Co. v. Winback & Conserve Program ("AT&T")*, held that the district court "properly held that agency principles apply to the instant dispute," reasoning that section 43(a) "parallels state tort law and is derived from tort common law." 42 F.3d 1421, 1430–31, 1434 (3d Cir. 1994). *See* 5 McCarthy on Trademarks and Unfair Competition § 27:52 (5th ed.) (discussing *AT&T*). The *AT&T* court further recognized that applying agency law raises the additional question of whether federal or state common law applies. *See id.* at 1434 n.16.

The Court, however, need not decide these various issues now. In their combined opposition to Moving Defendants' motions for summary judgment (ECF No. 248), Plaintiffs fail to address whether Rothman's creation or operation of Defendant Pet Connect's website was within the scope of his employment at Select. *See Novalk, LLC v. Sedgwick*, No. 3:21-CV-973-BEN-LL, 2021 WL 4125999, at *4 (S.D. Cal. Sept. 9, 2021) ("Where the non-moving party fails to address an argument raised by the moving party in the opposition brief, the Court may consider any arguments unaddressed by the non-moving party as waived.").

Accordingly, on Plaintiffs' false advertising claim based on Defendant Pet Connect's website, the Court denies summary judgment as to Rothman Defendants and grants summary judgment in favor of Salinas Defendants, Mohrfeld, Select, and SoCal Puppy.

## X.    California State Law Claims

### A.    Unfair Competition Law Claim

All Plaintiffs allege in their fifth cause of action that Defendants violated California's Unfair Competition Law ("UCL"), which prohibits "any unlawful, unfair or fraudulent business act or practice." and any "unfair, deceptive, untrue, or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200. Its coverage is "sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotation marks omitted). *See De La Torre v. CashCall, Inc.*, 5 Cal. 5th 966, 980 (2018) ("By prohibiting unlawful practices, [the UCL] borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.") (internal quotation marks omitted).

Each of the three "prongs" under the UCL—(1) unlawful, (2) unfair, and (3) fraudulent—creates an independent theory of liability. *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 643 (N.D. Cal. 2021) (citing *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017)). Plaintiffs allege a violation of the UCL under all three prongs and identify several violations of state and federal law. *See* ECF No. 93 ¶¶ 122–151. However, Moving Defendants do not address each of these alleged violations. In moving for summary judgment, Moving Defendants argue that they did not violate Health & Safety Code § 122354.5(a), which prohibits the sale of non-rescue dogs. The Court therefore limits its discussion to Moving Defendants' alleged violation of this provision.

At the time the conduct complained of occurred, the Health & Safety Code provided, in relevant part:

> A pet store operator shall not sell a live dog, cat, or rabbit in a pet store unless the animal was obtained from a public animal control agency or shelter, society for the prevention of cruelty to animals shelter, humane society shelter, or rescue group that is in a cooperative agreement with at least one private or public shelter pursuant to Section 31108, 31752, or 31753 of the Food and Agricultural Code.

Cal. Health & Safety Code § 122354.5(a) (2019). The Code further defines "rescue group" as "an organization that is tax exempt under Section 501(c)(3) of the Internal Revenue Code, and that does not obtain animals from breeders or brokers for compensation." *Id.* § 122354.5(j).

### 1. *Pet Store Operator*

As an initial matter, the Court addresses whether this statute applies to Defendants.[35] The provision above restricts the sale of non-rescue dogs by "pet store operators." The Code defines "pet store" as "a retail establishment open to the public and selling or offering

---

[35] To the extent Moving Defendants argue that Plaintiffs' unfair business practices claim is moot "because Health & Safety Code § 122354.5 (effective January 1, 2019), was repealed and replaced by Health & Safety Code § 122354.5 (effective January 1, 2021)," the Court is unpersuaded. ECF No. 226-1 at 8. In support of this argument, Moving Defendant cite *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1514 (9th Cir. 1994), in which the Ninth Circuit held that the plaintiff's claim was moot due to the repeal of the statute and regulations at issue. However, *Native Village* has since been overruled by *Board of Trustees of Glazing Health & Welfare Trust v. Chambers*, 941 F.3d 1195 (9th Cir. 2019).

In *Chambers*, the Ninth Circuit instructed that courts "should presume that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot, *unless* there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it." *Id.* at 1199 (emphasis added). In 2020, California Governor Gavin Newsom signed Assembly Bill 2152 (known as "Bella's Act"), which replaced Health & Safety Code § 122354.5. The section continues to prohibit the sale of non-rescue animals in California with increased restrictions to prevent pet stores from selling dogs, cats, or rabbits all together. In part, the revised section provides: "A pet store shall not adopt out, sell, or offer for sale a dog, cat, or rabbit. This section does not prevent a pet store from providing space to display animals for adoption . . . ." Cal. Health & Safety Code § 122354.5(a).

20-CV-00527-RSH-DEB

for sale animals," and "pet store operator" as an individual or legal entity that "owns or operates a pet store, or both." *Id.* § 122350(h)–(j).

The record indicates that, of the Moving Defendants, only the Salinas Defendants own or operate "pet stores" as defined by the code. There is no dispute that Salinas Defendants sold puppies from Defendant Pet Connect in their pet stores. *See* ECF No. 227-3 ¶¶ 4, 6; ECF No. 227-4 ¶ 3. Although Defendant Pet Connect is registered as a 501(c)(3) organization (*see* ECF No. 225-4, Ex. B ¶ 2), there remains a genuine dispute of material fact as to whether it "obtain[ed] animals from breeders or brokers for compensation" in violation of the Code. *See* Cal. Health & Safety Code § 122350(h)–(j). As previously discussed, conflicting inferences may be drawn from the evidence in the record regarding the money exchanged in connection with the puppy deliveries. *See, e.g.*, ECF No. 228-8 ¶ 3; ECF No. 258-2 ¶ 2; ECF No. 248-13, Exs. 5, 15, 18; ECF No. 258-3 ¶ 5; Rothman Dep. at 107:16–108:2. Viewing the evidence in the light most favorable to the non-moving party, the Court denies summary judgment as to Plaintiffs' UCL claim against Salinas Defendants. *See LaLonde*, 204 F.3d at 959.

The Court also denies summary judgment as to Defendant SoCal Puppy. The record indicates the business license for SoCal Puppy described it as a "retail"; that SoCal Puppy distributed a flyer with each puppy purchase; and that certain Salinas Defendants were former and current owners and executives of SoCal Puppy. *See* ECF No. 248-13, Exs. 11– 12; ECF No. 258-1 ¶¶ 29–32. But factual questions remain regarding SoCal Puppy's operations, and SoCal Puppy failed to argue that it does not qualify as a "pet store," owner, or operator under the statute.[36] *See* ECF No. 228-1 at 7.

In contrast, Rothman Defendants, Mohrfeld, and Select have cited declarations and deposition testimony indicating that they did not own or operate pet stores—evidence which Plaintiffs have failed to rebut. *See* Rothman Dep. at 17:16–18, 18:3–6; Mohrfeld

---

[36]    SoCal Puppy simply denies that it violated Health & Safety Code § 122354.5 in the first place but offers no argument. *See* ECF No. 228-1 at 7.

1   Dep. at 11:14–12:8; ECF No. 225-4, Ex. A ¶ 3. *See also* ECF No. 225-1 at 10. The Court
2   thus turns to whether other forms of liability may attach.

3               **2.**   ***Aiding and Abetting Liability***

4          Even if the Health & Safety Code § 122354.5(a) does not directly apply to Rothman
5   Defendants, Mohrfeld, and Select, they may still be liable if they aided and abetted the
6   violation.[37] *See People ex rel. Harris v. Sarpas*, 225 Cal. App. 4th 1539, 1563 (2014)
7   (holding that "[l]iability under the UCL may be imposed against those who aid and abet
8   the violation"). For aiding and abetting liability to attach, a defendant must "know[] the
9   other's conduct constitutes a breach . . . and give[] substantial assistance or encouragement
10  to the other to so act." *Id.*

11         Here, there is ample evidence in the record that Rothman Defendants worked with
12  Salinas Defendants in obtaining and transporting puppies to sell at retail stores in
13  California. *See, e.g.*, ECF No. 248-13, Exs. 6–7, 9–10, 14, 19–22; ECF No. 258-2 ¶ 3. A
14  reasonable jury could find that this constitutes "substantial assistance or encouragement."
15  And though Rothman Defendants deny that the puppies were from puppy mills or that the
16  puppies were ever sold for compensation, contrary inferences may be drawn from the other
17  materials in the record. For example, there are emails indicating that there were payments
18  associated with the delivery of puppies, amounting to tens of thousands of dollars. *See* ECF
19  No. 248-13, Exs. 5, 15, 18. Again, it is for the jury to weigh the evidence and make
20  credibility determinations as to whether these dollar amounts were "shipping" costs or
21  money paid for puppies to sell at the retail pet stores. *See Anderson*, 477 U.S. at 255. The
22  Court thus concludes there is a genuine dispute of material fact as to whether Rothman

23
24
25

26  [37]   In the SAC, Plaintiffs allege that "all Defendants are knowingly and willfully acting
27  as accomplices to all other Defendants to evade various laws and defraud consumers into
    believing they are 'adopting' a 'rescue' animal, when in fact their purchases are supporting
28  the puppy mill industry of which Defendants are a part." ECF No. 93 ¶ 136.

Defendants were knowingly providing puppies to Salinas Defendants for compensation in violation of California law.

Mohrfeld and Select, on the other hand, argue that they cannot be liable for the conduct of other Defendants simply because Rothman was their employee. *See* ECF No. 225-1 at 14–16. Indeed, Plaintiffs appear to concede that Mohrfeld and Select were unaware of Rothman or Salinas Defendants' alleged conduct. *See* ECF No. 248-1 at 18. To the extent Plaintiffs argue otherwise, they have failed to identify any evidence to rebut the showing that Mohrfeld and Select lacked the requisite knowledge or intent. *See* ECF No. 225-1 at 12–13. Without knowledge, aiding and abetting liability cannot attach.

### 3.    *Vicarious Liability*

California courts have consistently held that "[t]he concept of vicarious liability has no application to actions brought under the Unfair Business Practices Act," and that "[a] defendant's liability must be based on his personal 'participation in the unlawful practices,' and 'unbridled control' over the practices that are found to violate sections 17200 or 17500." *Emery v. Visa Internat. Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002) (citing *People v. Toomey*, 157 Cal. App. 3d 1, 14 (1984)). *See Perfect 10*, 494 F.3d at 808 (citing *Emery*). The often-cited portion regarding the inapplicability of "vicarious liability" to UCL claims has resulted in conflicting case law regarding an employer's liability for a UCL violation by its employee. *Compare, e.g.*, *Dalton v. Anovos Prods.*, LLC, No. CV 19-4821-MWF-KS, 2020 WL 4288442, at *9 (C.D. Cal. Mar. 31, 2020) ("As for agency, Defendants are correct that 'vicarious liability has no application to actions brought under' the UCL . . . .") *with Zeff v. Greystar Real Est. Partners, LLC*, No. 20-CV-07122-EMC, 2021 WL 632614, at *8 (N.D. Cal. Feb. 18, 2021) ("Normal agency theory applies to UCL suits.") *and Monaco v. Bear Stearns Companies, Inc.*, No. CV0905438SJOJCX, 2013 WL 12114830, at *7 (C.D. Cal. Apr. 25, 2013) ("[P]ersons can be found liable for . . . . unfair business practices under normal agency theory.").

1     Upon review of the relevant case law, however, this Court concludes that California

2 law does not foreclose agency liability for a UCL claim.[38] In *People v. JTH Tax, Inc.*, 212

3 Cal. App. 4th 1219, 1242 (2013), the California Court of Appeal held that "persons can be

4 found liable for . . . unfair business practices under normal agency theory." The *JTH Tax*

5 court further clarified that "to the extent that *Toomey* or *Emery* hold otherwise . . . these

6 cases are mistaken." *Id.* (internal citations omitted).

7     Under the *doctrine of respondeat* superior, an employer is vicariously liable for an

8 employee's torts committed within the scope of employment. *John Y. v. Chaparral*

9 *Treatment Ctr., Inc.*, 101 Cal. App. 4th 565, 574 (2002) (citing *Perez v. Van Groningen &*

10 *Sons, Inc.*, 41 Cal.3d 962, 967 (1986)). *See Secci v. United Independant Taxi Drivers, Inc.*,

11 8 Cal. App. 5th 846, 855 (2017) ("A corporation may be held vicariously liable as a

12 principal for the torts of its agents."). "The determining factor in ascertaining whether an

13 employee's act falls within the scope of his employment . . . is not whether the act was

14 authorized by the employer, benefited the employer, or was performed specifically for the

15 purpose of fulfilling the employee's job responsibilities. Rather, the question is whether

16 the risk of such an act is typical of or broadly incidental to the employer's enterprise."

17 *Sunderland v. Lockheed Martin Aeronautical Sys. Support Co.*, 130 Cal. App. 4th 1, 9

18 (2005) (quoting *Yamaguchi v. Harnsmut*, 106 Cal.App.4th 472, 481–482 (2003)) (internal

19 edits and citations omitted). In other words, "[t]he employee's activities must be inherent

20 in, typical of or created by the work so that it is a foreseeable risk of the particular

21 employment." *Id.* (quoting *Tognazzini v. San Luis Coastal Unified School Dist.*, 86

22

23

24 [38]     The Ninth Circuit has not directly addressed whether agency theory applies to UCL

25 suits. *See Zeller v. Optavia*, LLC, No. 22-CV-434-DMS-MSB, 2022 WL 17858032, at *11
n.2 (S.D. Cal. Dec. 22, 2022) (noting that the Ninth Circuit has not ruled on this issue). In

26 *Perfect 10*, the Ninth Circuit dismissed the UCL claim on the grounds of "vicarious
liability" because the defendant credit card company "merely process[ed] credit card

27 payments" and did not itself participate in the unfair and unlawful business scheme in any
other way. *Perfect 10*, 494 F.3d at 809. Notably, however, this case predated *JTH Tax* and

28 did not involve a principal-agent relationship.

Cal.App.4th 1053, 1057 (2001)) (internal edits and citations omitted). Whether the tort occurred within the scope of employment is a question of fact, unless the facts are undisputed. *Id.*

Here, Mohrfeld and Select argue that there is no evidence to show that Rothman's alleged mislabeling of dogs as rescues was done within the course and scope of his duties as manager of Select. *See* ECF No. 225-1 at 15. However, Mohrfeld admitted in his deposition that he hired Rothman to be "in charge [of] how the [Select] runs," and that Rothman could use Select's trucks without authorization from anyone else and make purchases on Select's behalf. *See* Mohrfeld Dep. 20:23–21:1, 23:3–18, 64:3–5. Given that Select's business was brokering puppies for retail sale and profit, ECF No. 225-4, Ex. A ¶ 3, the Court concludes a triable issue exists as to whether Rothman was acting within the scope of his employment when working with Salinas Defendants or allegedly brokering puppies from puppy mills.[39]

However, vicarious liability does not extend to Mohrfeld in his personal capacity. An individual liability must be based on his "personal participation in the unlawful practices" and "unbridled control" over the practices that are found to violate section 17200. *See Toomey*, 157 Cal. App. 3d at 14. *See also Dangaard v. Instagram, LLC*, No. C 22-01101 WHA, 2022 WL 17342198, at *7 (N.D. Cal. Nov. 30, 2022) (holding that only individual owners of corporate defendants, not the corporation itself, must have personally participated in unlawful pratices to be held vicariously liable under the UCL). Here, there is no evidence that Mohrfeld knew—let alone approved, directed, or participated in—the alleged conduct. In fact, Plaintiffs have acknowledged that Mohrfeld had "no idea if . . . fraud or crimes are being committed on Select Puppies' behalf" and "no way of knowing

---

[39]     "'The scope of employment has been broadly interpreted' by California courts." *Peralta v. United States*, 475 F. Supp. 3d 1086, 1094 (C.D. Cal. 2020) (quoting *John Y.*, 101 Cal. App. 4th at 575). For *respondeat superior* liability to attach, all that is required is that the employee's tort be engendered by or arise from the employee's work. *Id.* (citing *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 298 (1995)).

if employees were selling puppies and labeling them as rescues when they were actually from breeders." *See* ECF No. 248-1 at 18.

Accordingly, on Plaintiffs' UCL claim based on Defendants' alleged violation of Health & Safety Code § 122354.5(a), the Court denies summary judgment as to Salinas Defendants, SoCal Puppy, Rothman Defendants, and Select and grants summary judgment in favor of Mohrfeld.

### B.   CLRA

In Plaintiffs' sixth cause of action, Plaintiff Gonzalez asserts a claim against Rothman Defendants, Mohrfeld, and Select for violation of the CLRA. ECF No. 93 at p. 26. Specifically, Plaintiff Gonzalez alleges that they "misrepresented to consumers in California, including [Gonzalez], that Defendants are selling 'rescue puppies' when in fact they are selling puppies from puppy mills." ECF No. 93 ¶ 154.

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a); *Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). This prohibition bars representations that "goods . . . have characteristics which they do not have" or "are of a particular standard, quality, or grade . . . if they are of another." Cal. Civ. Code §§ 1770(a)(5), (7). It likewise bars the omission of any material fact relating to those goods. *See LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997). "To state a claim under [Section 1770(a)(5) of the CLRA], a plaintiff must allege: (1) a misrepresentation; (2) reliance on that misrepresentation; and (3) damages caused by that misrepresentation." *In re Sony PS3 Other OS Litig.*, 551 Fed. App'x 916, 920 (9th Cir. 2014). Section 1770(a)(5) includes "both representations, per the explicit text of the statute, as well as omissions." *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 996 (N.D. Cal. 2013).

Here, there is no dispute that Gonzalez was looking to adopt a rescue puppy; she purchased Charlie from the pet store Town Puppies; Charlie was labeled as "rescue" from "Pet Connect Rescue" on his cage card; and Gonzalez mistakenly believed Plaintiff

PetConnect provided Charlie.[40] *See* ECF No. 225-4 at pp. 160–61, 166–67, 172. At the Hearing, counsel for Rothman Defendants conceded that Defendant Pet Connect likely provided Charlie to Town Puppies.[41]

In moving for summary judgment, Rothman Defendants, Mohrfeld, and Select contend that there was no misrepresentation to trigger liability under the CLRA. Specifically, Rothman Defendants argue that there is no evidence that any of the dogs transacted by Moving Defendants "was not a rescue animal obtained and sold legitimately." ECF No. 226-1 at 9. However, the misrepresentation at issue is not whether the dogs were legally obtained and sold, but whether they were sourced from "puppy mills or mass breeding operations" that Gonzalez would not have supported through her purchase. *See* ECF No. 248-6 ¶ 3.

### 1. *Rothman Defendants*

The evidence in the record shows that Rothman Defendants worked with Salinas Defendants in providing and transporting puppies to retail pet stores. *See, e.g.*, ECF No. 248-13, Exs. 6–7, 9–10, 14, 19–22; ECF No. 258-2 ¶ 3. Rothman's deposition testimony indicated that the puppies were "donated" to Defendant Pet Connect because they were "unsellable." ECF No. 225-4 at pp.204–05. Email communications between Rothman and Salinas discuss dollar amounts associated with these puppy deliveries and question the health conditions of the puppies. *See* ECF No. 228-8 ¶ 3; ECF No. 258-2 ¶ 2; ECF No. 258-3 ¶ 5; Rothman Dep. at 107:16–108:2; *see also* ECF No. 248-13, Exs. 5, 15, 18 (emails

---

[40]   Gonzalez further stated in a declaration that she "would never support puppy mills or mass breeding operations." *See* ECF No. 248-6 ¶ 3.

[41]   The evidence in the record also supports this. The paperwork pertaining to Charlie's purchase indicates that the "Pet Source" is "Pet Connect Rescue Inc." *See* ECF No. 248-13, Exs. 29–32. The "Chip #" 991001003379853 that appears on Charlie's purchase form from Town Puppies also appears in A&D Reports from Defendants Pet Connect and Select. *See id.* Further, in a declaration, Rothman stated that "[a]ll Pet Connect puppies, *including the puppy claimed by Sarah Gonzalez*, were donated." ECF No. 258-3 ¶ 5 (emphasis added).

referencing "invoices" for puppies). Plaintiffs have also presented evidence that Charlie was from Defendant Pet Connect and, shortly after purchase, suffered from serious health issues. *See* ECF No. 225-4 at p. 169–70, 175; ECF No. 248-6 ¶¶ 5, 11. These facts present a triable issue as to whether Charlie or any of the other puppies that Defendant Pet Connect came from a puppy mill or mass breeding operation.

### 2. *Mohrfeld and Select*

Mohrfeld and Select, for their part, argue that they made no representation to Plaintiff Gonzalez at all. They cite to Gonzalez's deposition testimony, indicating that she did not know whether Mohrfeld or Select posted properly filled out and truthful cage cards, made advertisements regarding any dogs, or provided Charlie to Town Puppies. *See* ECF No. 225-4 at pp. 158, 176–77. Gonzalez testified that she saw the cage card at the store, but she did not review any advertisements prior to purchasing Charlie. *Id.* at pp. 158, 176. Plaintiffs cite to A&D Reports that appear to show Charlie may have been brokered by Select, but there is no evidence that these reports were ever shown to Gonzalez or publicly available to consumers. *See* ECF No. 248-13, Exs. 30–32. Nor is there evidence that Mohrfeld or Select created or posted the cage cards. Plaintiffs fail to identify any other misrepresentation made by Mohrfeld and Select. Once again, Mohrfeld and Select's alleged liability appears to be based solely on an agency theory.[42]

A corporation can be liable under the CLRA for the representations made by its agents. *See LaChapelle v. Toyota Motor Credit Corp.*, 102 Cal. App. 4th 977, 991 (2002) (discussing agency liability in the context of the CLRA). But as with a UCL claim, personal liability under the CLRA must be based on a defendant's "personal participation in the unlawful practices" and "unbridled control over the practices." *Woodard v. Labrada*, No. EDCV16189JGBSPX, 2021 WL 4499184, at *30 (C.D. Cal. Aug. 31, 2021) (citing *Emery*,

---

[42]    Plaintiffs do not specifically allege in the SAC that Rothman Defendants, Mohrfeld, and Select aided and abetted one another in violating the CLRA. The Court notes that, even considering an accomplice liability theory, the result does not differ.

50

95 Cal. App. 4th at 960 and *Toomey*, 157 Cal. App. 3d at 15). *See also Prudencio v. Midway Importing, Inc.*, 831 F. App'x 808, 811 (9th Cir. 2020) (rejecting appellants' argument that a relaxed standard for vicarious liability permits their CLRA claim to proceed in the absence of allegations of personal participation and unbridled control).

Here, the analysis largely mirrors Plaintiffs' UCL claim above. The Court concludes a triable issue exists as to whether Rothman was acting within the scope of his employment when operating Defendant Pet Connect and whether there was, in fact, a misrepresentation as to the origin of the puppies it provided. There is thus a genuine dispute of material fact as to whether Select is liable for Rothman's conduct under an agency theory.[43] However, as previously discussed and acknowledged by Plaintiffs, there is no evidence of Mohrfeld's "personal participation" in the alleged misrepresentation. *See id.*; *see also* ECF No. 248-1 at 18.

Accordingly, on Plaintiff Gonzalez's CLRA claim, the Court denies summary judgment as to Rothman Defendants and Select, and grants summary judgment in favor of Mohrfeld.

## C. Fraudulent Deceit

In Plaintiffs' seventh cause of action, Plaintiff Gonzalez brings a fraudulent deceit claim under California law against Rothman Defendants, Mohrfeld, and Select. *See* ECF No. 93 at p. 27. This claim is based on the same conduct as Gonzalez's CLRA claim.

The California Civil Code recognizes causes of action for "fraudulent deceit," a type of "misrepresentation tort[]." *Metro. Bus. Mgmt., Inc. v. Allstate Ins. Co.*, 282 F. App'x 544, 546 (9th Cir. 2008); *see* Cal. Civ. Code §§ 1572, 1709–10. The elements of fraudulent deceit are (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or "scienter"); (3) intent to defraud, *i.e.*, to induce reliance;

---

[43]    Plaintiffs do not argue or cite any evidence suggesting that Select is liable for the other Rothman Defendants it did not employ.

(4) justifiable reliance; and (5) resulting damage. *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997), *as modified* (July 30, 1997).

In moving for summary judgment, Rothman Defendants, Mohrfeld, and Select argue that there is no evidence of a misrepresentation or justifiable reliance. *See* ECF No. 225-1 at 17; ECF No. 226-1 at 13. For the same reasons discussed above regarding Plaintiff Gonzalez's CLRA claim, there remain triable issues as to Rothman Defendants and Select. There are genuine disputes of material fact as to whether there Rothman Defendants made a misrepresentation regarding the origin of the puppies provided by Defendant Pet Connect, and whether Rothman's alleged unlawful conduct was within the scope of his employment at Select.[44] *See Secci*, 8 Cal. App. 5th at 855 ("A corporation may be held vicariously liable as a principal for the torts of its agents."). However, there is no argument or evidence that Mohrfeld himself made any misrepresentation to Gonzalez, or that liability may otherwise attach by piercing the corporate veil.[45]

---

[44]    Additionally, there are factual disputes as to whether Gonzalez justifiably relied on the alleged misrepresentation. *See* ECF No. 225-1 at 18. Mohrfeld and Select argue that Gonzalez could not have reasonably expected Charlie to be "rescue" given that she paid $2,000 for an eight-week old "designer breed Puggle" at a retail pet store. *Id.* Although Gonzalez admitted in her deposition that she believed the price was "a little high," she also testified that the employee explained the price and, in a subsequent declaration, stated she felt good about the purchase because Charlie appeared to be from a reputable rescue. *See* ECF No. 225-4 at p. 168; ECF No. 248-6 ¶ 4. Further, Gonzalez testified that she was interested in a small "rescue" dog, not specifically for a Puggle. ECF No. 225-4 at pp. 160–61, 166–67. The Court concludes that this is sufficient to raise a genuine dispute of material fact as to whether—given Charlie's breed, price, age, and location of sale—there was justifiable reliance. *See Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1194 (2014) (stating that the question of whether reliance is justifiable is, generally, one of fact but the issue may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts).

[45]    Indeed, Plaintiffs never allege that Select is the alter ego of Mohrfeld, nor do Plaintiffs specify any facts that would be relevant in determining whether the corporate veil can be pierced.

1    Therefore, on Gonzalez's fraudulent deceit claim, the Court denies summary

2    judgment as to Rothman Defendants and Select, and grants summary judgment in favor of

3    Mohrfeld.

4        **D.    Punitive Damages**

5    Plaintiffs seek punitive damages against Rothman Defendants, Mohrfeld, and Select

6    for their fraudulent deceit claim. ECF No. 93 ¶ 168. Plaintiffs allege that Defendants "acted

7    with malice and fraud, intentionally deceiving Plaintiff, . . . into believing [she] [was]

8    purchasing a 'rescue' animal, solely so that Defendants can continue to profit from selling

9    puppy mill puppies in violation of California law." *Id.* In light of the discussion above, the

10   Court concludes that factual disputes prevent granting summary judgment on punitive

11   damages against Rothman Defendants and Select.[46] *See* ECF No. 93 ¶ 168.

12   As the Ninth Circuit described in *In re First Alliance Mortgage Co.*:

13       Under California law, punitive damages are appropriate where a plaintiff
         establishes by clear and convincing evidence that the defendant is guilty of
14       (1) fraud, (2) oppression or (3) malice. Cal. Civ. Code § 3294(a). According
         to the definitions provided in section 3294(c), a plaintiff may not recover
15       punitive damages unless the defendant acted with intent or engaged in
         "despicable conduct." "The adjective 'despicable' connotes conduct that is so
16       vile, base, contemptible, miserable, wretched or loathsome that it would be
         looked down upon and despised by ordinary decent people." While a
17       defendant may be liable for punitive damages based on "despicable" conduct
         that merely involves a conscious disregard of the rights and safety of others,
18       rather than an affirmative intent to injure, there are "few situations in which
         claims for punitive damages are predicated on . . . conscious disregard of the
19       rights or safety of others and in which no intentional torts are alleged."
20
21
22   *In re First All. Mortg. Co.*, 471 F.3d at 998 (internal citations omitted).

23   For the same reasons discussed above, Court concludes there are factual issues as to

24   whether Rothman Defendants sourced puppies like Charlie from puppy mills and whether

25

26

27   ────────────

28   [46]   The state law claims against Mohrfeld do not survive summary judgment.

it was done intentionally to harm Gonzalez.[47] There is also a genuine dispute of fact as to whether Rothman's operation of Defendant Pet Connect was done within the scope of his employment at Select. The Court thus concludes that the issue of punitive damages as to Rothman Defendants and Select is properly one for the jury.

### E.   Common Law Claims

In Plaintiffs' ninth cause of action, Organizational Plaintiffs allege that all Defendants engaged in trademark infringement, unfair competition, and false advertising in violation of California common law. ECF No. 93 at ¶ 181. Plaintiffs conceded at the Hearing that this single claim really includes multiple causes of action. Moving Defendants did not, however, challenge the claim on this ground. Instead, their respective summary judgment motions asserted that there was no factual support for this claim. No Moving Defendant articulated the elements of the relevant state law cause or causes of action, much less analyzed why there was no triable issue of material fact regarding whether those elements were satisfied. The Court concludes that the Moving Defendants' cursory treatment of this claim in their briefing does not carry their burden as the moving party and denies summary judgment on this claim.

It remains the case, however, that this claim is not properly pleaded under Federal Rule of Civil Procedure 8(a)(2).[48] *See George v. Grossmont Cuyamaca Cmty. Coll. Dist. Bd. of Governors*, No. 22-CV-0424-BAS-DDL, 2022 WL 17330467, at *17–18 (S.D. Cal. Nov. 29, 2022) (dismissing certain counts of the complaint where plaintiffs failed to separate into a different count each cause of action or claim for relief). *See also, e.g.*, *Burke v. Custom Marine Grp.*, 847 F. App'x 578, 581 (11th Cir. 2021) (affirming dismissal on

---

[47]   Rothman Defendants fail to address the issue of punitive damages at all. *See* ECF No. 226-1; ECF No. 258.

[48]   Rule 8(a)(2) "requires that each claim in a pleading be supported by 'a short and plain statement of the claim showing that the pleader is entitled to relief . . . .'" *Landers v. Quality Communications, Inc.*, 771 F.3d 638, 640 (9th Cir. 2014) (quoting Fed. R. Civ. P. 8(a)(2)).

Rule 8 grounds where a single count contained "distinct theories of liability that involve different facts and should be asserted independently"). In the Proposed Pretrial Order to be submitted by the Parties, Plaintiffs shall select one theory—among the multiple state causes of action pleaded in their ninth cause of action—on which to proceed for purposes of trial.

## XI.   Defendants' Affirmative Defenses

Rothman Defendants, Salinas Defendants and SoCal Puppy further seek summary judgment on four applicable affirmative defenses: (1) other parties' use of the term "Pet Connect"; (2) the term "Pet Connect" has been registered to others; (3) acquiescence under 15 U.S.C. § 1115(b); and (4) Plaintiffs' own bad faith conduct in initiating this action. ECF No. 226-1 at 11; ECF No. 227-1 at 11; ECF No. 228-1 at 8. For the reasons discussed below, Court concludes that Defendants have failed to meet their burden under Rule 56. *See* Fed. R. Civ. P. 56(a).

### A.   Third Parties Use or Registration of Similar Marks

Defendants cite to four uses of the term "Pet Connect" by other businesses and 43 other companies that use a mark similar to the term "Pet Connect." *See* ECF No. 228-4, Exs. 3–4. Although third party use of a mark may support an argument that the mark is weak, it does not provide an affirmative defense in an infringement action. *See Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1200 n.7 (9th Cir. 2009) (quoting *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 820 (9th Cir. 1996)).

### B.   Acquiescence

Acquiescence, as a defense to trademark infringement, requires that (1) the senior user actively represented that it would not assert a right or a claim, (2) the delay between the active representation and assertion of the right or claim was not excusable, and (3) the delay caused the defendant undue prejudice. *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Est. Educ., Inc.*, 621 F.3d 981, 989 (9th Cir. 2010). Defendants fail to address any of these elements here.

Instead, Defendants merely refer to the fact that they never received a cease-and-desist letter from Plaintiffs, and Plaintiffs never contacted any governmental agency about

the alleged misuse of their marks. *See* ECF No. 226-1 at 12; ECF No. 227-1 at 10; ECF No. 228-1 at 9. The Court cannot conclude that such failures to act constitute an "active representation" that Plaintiffs would not assert the claims raised in the SAC. Accordingly, the Court denies summary judgment on Moving Defendants' acquiescence defense.

### C.   Bad Faith

Defendants claim in a conclusory manner that Plaintiffs' "sole purpose by initiating this action was to cause the California retail stores to close." ECF No. 226-1 at 12; ECF No. 227-1 at 11; ECF No. 228-1 at 9. Defendants provide no evidence of bad faith, and as the discussion above indicates, Plaintiffs' federal claims are not frivolous. Therefore, the Court denies summary judgment on Moving Defendants' bad faith defense.

## XII.   Evidentiary Objections

Moving Defendants raised various evidentiary objections to Plaintiffs' Statement of Facts (ECF No. 248-2), exhibits, and declarations in support of Plaintiffs' Cross Motion for Summary Judgment and Combined Opposition. *See* ECF Nos. 254-1, 258-1. Separately, Mohrfeld and Select object to 19 of Plaintiffs' exhibits as well as the declarations of Linda Acosta (ECF No. 248-4), Dylan Bokma (ECF No. 248-10), Mary Beth Champlain (ECF No. 248-3), Andrea Cunningham (ECF No. 248-7), Cheyenne Henry (ECF No. 248-9), and Chris Parrett (ECF No. 248-12) in their entirety. *See* ECF No. 254-2. For the reasons discussed below, these objections are overruled.

To the extent certain facts or exhibits are not discussed in the analyses of this Order, the Court has not relied on them in reaching its decision. On those grounds, Moving Defendants' evidentiary objections to those facts and exhibits are overruled as moot.

The Court also overrules Moving Defendants' objections to evidence on the grounds that it lacks foundation, calls for a legal conclusion, or is speculative, argumentative, vague, ambiguous, unintelligible, and/or prejudicial. *See Ward v. Crow Vote LLC*, No. SACV211110FWSDFMX, 2022 WL 17887530, at *3 (C.D. Cal. Oct. 7, 2022) ("'[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the

summary judgment standard itself' and unnecessary to consider here.") (quoting *Holt v. Noble House Hotels & Resort, Ltd.*, 370 F. Supp. 3d 1158, 1164 (S.D. Cal. 2019)); *Leichner v. United States*, No. EDCV132317JFWSS, 2019 WL 8112470, at *11 (C.D. Cal. Mar. 29, 2019) ("Objections based on relevance or lack of foundation are generally improper on summary judgment."), *report and recommendation adopted*, No. EDCV132317JFWSS, 2019 WL 8112503 (C.D. Cal. Aug. 14, 2019); *Holt*, 370 F. Supp. 3d at 1164 (". . . Federal Rule of Evidence 403 objections are unnecessary at the summary judgment stage because there is no jury that can be misled and no danger of confusing the issues."). Further, the Court does not consider the Parties' objections to the characterization of or purported misstatement of the evidence; instead, the Court consults the underlying evidence.

Remaining are Moving Defendants' hearsay objections to Plaintiffs' Exhibits 4, 9, 14, 15, 18, and 27, as well as general objections to the declarations of Gonzalez and Andrea Cunningham. The Court discusses each in turn.

### A.    Plaintiffs' Exhibit 4

Plaintiffs' Exhibit 4 contains screenshots of Defendant Pet Connect's website. ECF No. 248-18, Ex. 4. Rothman Defendants, Salinas Defendants, and SoCal Puppy object to the Exhibit on hearsay grounds, but do not specify which portions are at issue. The Court is not required to "comb through these documents, identify potential hearsay, and determine if an exception applies—all without guidance from the parties." *Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1124 (E.D. Cal. 2006).

Nevertheless, to the extent Defendants object to the statements on the website cited above, the Court finds that they are not being offered for the truth of the matter asserted. To the contrary, the Court considers these statements for the purpose of analyzing Plaintiffs' false advertising claim—which alleges that these statements are not true. Moving Defendants' objection is overruled.

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.   Plaintiffs' Exhibits 9, 14, 15, and 18

Mohrfeld and Select object to Plaintiffs' Exhibits 9, 14, 15, and 18, which are email chains involving Rothman Defendants and Salinas Defendants.[49] *See* ECF No. 254-2 at 18–19. However, the emails sent from Defendants are admissible non-hearsay as admissions by a party opponent under Federal Rule of Evidence 801(d)(2). The Court does not rely on any portion of the email chain to that are sent by third parties. Mohrfeld and Select's objections to these Exhibits are overruled.

### C.   Plaintiffs' Exhibit 27

Plaintiffs' Exhibit 27 is SoCal Puppy's business license certificate from the City of Escondido, California. ECF No. 248-13, Ex. 27. This document falls under the hearsay exception for public records. Fed. R. Evid. 803(8). The Court is "entitled to presume these tendered public records are trustworthy," and "the burden of establishing a basis for exclusion falls on the opponent of the evidence." *Johnson v. City of Pleasanton*, 982 F.2d 350, 352 (9th Cir. 1992). Moving Defendants offer no argument that these records are otherwise inauthentic or untrustworthy. As such, their objection to Exhibit 27 is overruled.

### D.   Gonzalez Declaration

Rothman Defendants, Salinas Defendants, and SoCal Puppy object to Gonzalez's Declaration (ECF No. 248-6) on hearsay grounds. ECF No. 258-1 at 32. Again, Defendants fail to identify which portions are at issue. In any case, the Court may consider hearsay evidence so long as the underlying evidence could be provided in an admissible form at trial. *See JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016); *Cherewick v. State Farm Fire & Cas.*, 578 F. Supp. 3d 1136, 1157 (S.D. Cal. 2022) (collecting cases). The contents of the declaration may be admissible through Gonzalez's

---

[49]   Rothman Defendants and Salinas Defendants dispute but do not object to the portions of these emails cited in Plaintiffs' Statement of Facts on evidentiary grounds. *See* ECF No. 258-1 ¶¶ 10–11, 13, 16–17, 19.

live testimony at trial. *See id.* Defendants' objection to Gonzalez's Declaration is thus overruled.

### E.    Cunningham Declaration

Andrea Cunningham is the co-founder and a volunteer for Not One Animal Harmed. ECF No. 248-7. Her declaration was cited in this Order only to the extent that it provided screenshots of SoCal Puppy's website. Mohrfeld and Select do not object to the portions of Cunningham's declaration that provides the screenshots. *See* ECF No. 254-2 at p. 7. Instead, their objections to her declaration are based on Plaintiffs' failure to identify her as a witness in their initial disclosures and portions regarding Cunningham's conversations with pet store employees. The Court does not rely on these conversations and otherwise finds that the objection is not material to its ruling. Mohrfeld and Select's objection is overruled as moot.

## XIII.  Default Judgment

Separately, Plaintiffs seek default judgment against Defendant Jason Duhammel ("Duhammel") in the amount of $334,389.00 pursuant to Federal Rule of Civil Procedure 55(b). ECF No. 224-1 at 10. Plaintiffs allege that Duhammel, who owned and operated Defendant Puppies4Less, could not be located be located at the time Plaintiffs filed the SAC.[50] ECF No. 93 ¶ 29; ECF No. 224-1 at 3. Plaintiffs subsequently located Duhammel's new pet store in Texas and served him there, but Duhammel did not respond. ECF No. 224-1 at 3; *see* ECF No. 126 (Proof of Service).

It is within the Court's discretion to enter default judgment following entry of default by the Clerk. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *see also PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) ("A defendant's

---

[50]    The corporate structure of Defendant Puppies4Less is unclear. Defendant Anita Chavira represented to the Court that she was the sole proprietor of Puppies4Less and is proceeding *pro se* as counsel of record. *See* ECF No. 71–72. There has been no further action from Defendants Chavira or Puppies4Less after Plaintiffs filed their SAC.

default does not automatically entitle the plaintiff to a court-ordered judgment."). The Ninth Circuit has identified several factors (collectively the "*Eitel* factors") that courts may consider before entering default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72.

Here, Plaintiffs argue that the *Eitel* factors weigh in their favor. ECF No. 224-1 at 6–7. The Court concludes, however, in its discretion, that default judgment is not appropriate at this time. The Ninth Circuit has cautioned that default judgments are "ordinarily disfavored," and "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472.

As discussed above, Plaintiff PetConnect's false designation of origin claim, all Plaintiffs' UCL claim, and Organizational Plaintiffs' federal false advertising claim remain pending against Duhammel. Even taking Plaintiffs' well-pleaded factual allegations pertaining to Duhammel as true, the Court finds that the merits of Plaintiffs' claims remain to be established at trial. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). A default judgment against Duhammel on these claims could lead to "logically inconsistent results" if the other Defendants ultimately prevail. *See J & J Sports Prods., Inc. v. Pagliaro*, No. 1:12-CV-001507-LJO, 2013 WL 4402808, at *2 (E.D. Cal. Aug. 15, 2013) (citing *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001)); *see also* Fed. R. Civ. P. 54(b) (providing that "when multiple parties are involved [in an action], the court may direct entry of a final judgment as to one or more, but fewer than all . . . parties *only if* the court expressly determines that there is no just reason for delay.") (emphasis added). Further, it

20-CV-00527-RSH-DEB

is unclear what prejudice Plaintiffs will suffer from the delay in resolving their claims against Duhammel.[51]

Accordingly, the Court denies Plaintiffs' Motion for Default Judgment without prejudice to renewal upon disposition of Plaintiffs' claims against other Defendants.

**XIV.  Order to Show Cause**

At the Hearing, the Court ordered Plaintiffs to show cause why the action should be not dismissed against Defendants Anita Chavira and John Duhammel based on Plaintiffs' failure to timely serve them with process as required by Federal Rule of Civil Procedure 4(m). On January 19, 2023, Plaintiffs filed a response. ECF No. 282. Reviewing that response, the Court concludes that dismissal is warranted. Rule 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." The rule further provides that "if the plaintiff shows good cause for the failure, the court must extent the time for service for an appropriate period."

Here, Anita Chavira and John Duhammel were both named as defendants for the first time in Plaintiffs' Second Amended Complaint, filed over two years ago on December 30, 2020. Plaintiffs never thereafter served either with process. Anita Chavira had previously sought and obtained leave to represent Puppies4Less, a sole proprietorship that had been named as a defendant in the First Amended Complaint, filed on April 6, 2020. ECF Nos. 16 (First Amended Complaint), 71 (Motion to Substitute), 72 (Order Granting Motion to Substitute). She thereafter failed to appear on behalf of Puppies4Less for a

---

[51]     "Where the parties are similarly situated the district court should withhold granting default judgment until the action is resolved on the merits against the non-defaulting defendants, and if the non-defaulting defendants prevail, the action should be dismissed against both the defaulting and non-defaulting defendants." *J & J Sports Prods.*, 2013 WL 4402808, at *2 (citing *Frow v. De la Vega*, 82 U.S. 552, 554 (1872)).

hearing scheduled on September 30, 2020. ECF No. 80. Three months later, Plaintiffs named her as a Defendant in their Second Amended Complaint.

Plaintiffs' response indicates that they have now located an address for both Anita Chavira and John Duhammel. Although Plaintiffs explain that previously they did not know where these two individuals were located, and that Chavira left town and did not provide a forwarding address, Plaintiffs' response does not establish that they took diligent efforts to locate and serve each of these two in a timely manner. Indeed, Plaintiffs' response does not detail any efforts whatsoever that Plaintiffs took to locate these two individuals in the two years prior to the Hearing. Accordingly, the Court dismisses the action without prejudice as to each of Anita Chavira and John Duhammel.

## XV. Conclusion

In sum, summary judgment is granted (1) in favor of Defendants Mohrfeld, Select, and SoCal Puppy on Plaintiffs' first cause of action; (2) in favor of Defendants Mohrfeld, Select, and SoCal Puppy on Plaintiffs' second cause of action; (3) in favor of all Defendants on Plaintiffs' third cause of action; (4) in favor of Rothman Defendants and Salinas Defendants on Plaintiffs' fourth cause of action; (5) in favor of Mohrfeld on Plaintiffs' fifth cause of action; (6) in favor of Mohrfeld on Plaintiffs' sixth cause of action; (7) in favor of Mohrfeld on Plaintiffs' seventh cause of action; and (8) for the tenth cause of action, in favor of all Defendants on the claims of Plaintiffs Gonzalez, Lucky Pup, and SCDR; and on the claim of Plaintiff PetConnect, in favor of Mohrfeld, Select, and SoCal Puppy. Summary judgment on Plaintiffs' tenth cause of action is granted in part and denied in part as to Rothman Defendants and Salinas Defendants as set forth above. Summary judgment is denied in all other respects.

For the foregoing reasons, the Court:

(1)   **DENIES** Plaintiffs' Cross Motion for Summary Judgment (ECF No. 248);

(2)   **GRANTS** in part and **DENIES** in part Mohrfeld and Select's Motion for Summary Judgment (ECF No. 225);

(3)   **GRANTS** in part and **DENIES** in part Rothman Defendants' Motion for Summary Judgment (ECF No. 226);

(4)   **GRANTS** in part and **DENIES** in part Salinas Defendants' Motion for Summary Judgment (ECF No. 227);

(5)   **GRANTS** in part and **DENIES** in part Defendant SoCal Puppy's Motion for Summary Judgment (ECF No. 228);

(6)   **DENIES** Plaintiffs' Motion for Default Judgment (ECF No. 224) without prejudice to renewal;

(7)   **OVERRULES** Moving Defendants' evidentiary objections to Plaintiffs' Statement of Facts, exhibits, and declarations (ECF No. 254-1, ECF No. 254-2, ECF No. 258-1); and

(8)   **DISMISSES** Defendants Anita Chavira and John Duhammel from this action without prejudice.

**IT IS SO ORDERED**.

Dated:  February 15, 2023

Hon. Robert S. Huie
United States District Judge